# CORNELL
LAW OFFICES OF ROSS CORNELL
— APC —

Ross Cornell, Esq. (SBN 210413)
Post Office Box 1989, Suite 305
Big Bear Lake, California 92315
Email: *rc@rosscornelllaw.com*
Phone: (562) 612-1708
Fax: (562) 394-9556

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ross Cornell,<br><br>        Plaintiff,<br><br>        v.<br><br>Office of the District Attorney,<br>County of Riverside and Does 1-100,<br>inclusive,<br><br>        Defendants. | Case No. 5:22-cv-789<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

# TABLE OF CONTENTS

I.    Introduction…………………………………………………………2

II.   Statement of Facts……………………………………………………..2

III.  The RCDA's Charges………………………………………………4

IV.   Authority to Issue the Requested Relief…………………………………5

V.    Arguments………………………………………………………6

    A.   Likelihood of Success on the Merits………………………………6

        i.    The ADA's Prohibition Against Retaliation
and Interference Constitutes Express Authorization
for this Court to Enjoin the Prosecution……………………6

        ii.   Cornell is Likely to Prevail on His Claims for
Retaliation and Interference under the ADA………………11

        iii.  The Federal Government Has Exclusive Federal
Jurisdiction Over Federal Proceedings……………………13

        iv.   The Prosecution is Based on a Flawed Assessment
of Article III Standing……………………………………..15

        v.    Private Enforcement Actions Are Protected
Activities Essential To Fulfilling the Purpose of the
ADA…………………………………………………………18

        vi.   The Prosecution Violates the First Amendment…………...19

    B.   The Prosecution is Causing Irreparable Harm……………………20

    C.   The Balance of Equities & Public Interest Weigh
Decidedly in Favor of an Injunction………………………………22

    D.   This Court Should Not Abstain from Enjoining the Prosecution…23

        i.    Principles of Comity Do Not Apply or
Have Been Abrogated By Congress………………………..23

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE

        ii.      Younger Should Not Be Invoked in this Case……………..24

    E.    Cornell Requests the Bond Requirement be Waived……………..25

VI.   Conclusion…………………………………………………………26

## **TABLE OF AUTHORITIES**

### **Cases**

*Alliance For The Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011)…………………………………………….6

*Amalgamated Clothing Workers v. Richman Bros. Co.*,
   348 U.S. 511 (1955)………..………………………………….......6

*Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531 (1987)………22

*Botosan v. Paul McNally Realty*, 216 F.3d 827 (2000)…………………..8

*Browder v. Gayle*, 142 F. Supp. 707 (Al. Dist. 1956)…………………..23

*Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128 (WDNY 2003)…….21, 22

*Civil Rights Education and Enforcement Center v.*
   *Hospitality Properties Trust*, 867 F.3d 1093
   (9th Cir. 2017)……………………………………………………4, 16

*Conn. Gen. Life Ins. Co. v. New Images*,
   321 F.3d 878 (9th Cir. 2003)……………………………………...25

*Denton v. City of Carrollton, Georgia*,
   235 F.2d 481 (5th Cir, 1956)……………………………………23

*Diamond D Const. Corp. v. McGowan*,
   282 F.3d 191 (9th  Cir. 2002)……………………………………24

*Dilworth v. Riner,* 343 F.2d 226 (1965)…………………..5, 7, 8, 10, 20, 23, 24

*D'Lil v. Best Western Encina Lodge & Suites*,
   538 F.3d 1031 (9th Cir. 2008)…………………………………16, 18

-ii-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Dombrowsi v. Pfister*, 380 U.S. 479 (1965)……………………………19, 20

*Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008)…………………14

*Edwards v. Brookhaven Sci. Assocs.*,
    390 F.Supp.2d 225 (E.D.N.Y 2005)……………………………………25

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*
    *(TOC), Inc.*, 528 U.S. 167 (2000)………………………………………14

*Gremillion v. NAACP*, 366 U.S. 293 (1961)………………………………19

*Hubbard v. United States,* 514 U.S. 695 (1995)…………………………21

*In re Loney*, 134 U.S. 372, 375 (1890)…………………………………...12

*Jorgensen v. Cassiday, 320 F.3d 906*, 919 (9th Cir. 2003)…………….....25

*Kelley v. Corr. Med. Servs.*, 707 F.3d 108 (5th Cir. 2013)………………..…...…24

*K.H. v. Antioch Unified Sch. Dist.*,
    424 F. Supp. 3d 699 (9th Cir. 2020)……………………….………...8

*La Marca v. Capella Univ.*, 2007 U.S. Dist. LEXIS 105047………...…9, 11

*Lindsey v. Mullane,* 2019 U.S. Dist. LEXIS 239354…………………16, 17

*McAlindin v. County of San Diego,* 192 F.3d 1226 (9th Cir. 1999)……...11

*Mitchum v. Foster*, 407 U.S. 225 (1972)…………………………….……6, 7

*Molski v. Evergreen Dynasty Corp.*,
    500 F.3d 1047 (9th Cir. 2007)…………………………..……………16

*Morrison v. Davis*, 252 F.2d 102 (5th Cir. 1958)………………..…….20

*NAACP v. Button*, 371 U.S. 415, 439 (1963)……………..………12, 19, 20

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX
PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
    779 F.3d 1036 (9th Cir. 2015)……………………………………..15

*People v. Bowman,* 156 Cal. App. 2d 784 (1958)………………..…………5

*People v. Hassan*, 168 Cal.App.4th 1306, 1318 (2008)…………………..14

*People v. Kelly* (1869) 38 Cal. 145………………………………………..13, 14

*Perez v. Ledesma*, 401 U.S. 82 (1971)………………………..…………24

*Pickern v. Holiday Quality Foods,*
    293 F.3d 1133 (9th Cir. 2002)……………………………….…………17

*Roberts v. United States Jaycees*, 468 U.S. 609 (1984)…………………19

*Santiago-Ramos v. Centennial P.R. Wireless Corp*,
    217 F.3d 46 (1st Cir. 2000)…………………………………..…….…..24

*Shotz v. City of Plantation*, 344 F.3d 1161 (11th Cir. 2003)…………...8, 9

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001)…………………………………………….5

*T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*,
    806 F.3d 451 (9th Cir. 2015) …………………………………..…11

*United States v. Gilliland*, 312 U.S. 86 (1841)………………………..20

*United States v. Horvath,* 492 F.3d 1075(9th Cir. 2007)………………..21

*United States v. Manning*, 526 F.3d 611 (10th Cir. 2008)………………..21

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982)…………………..23

*Whitaker v. Tesla Motors*, 985 F.3d 1173 (9th Cir. 2021)……..……..17

*Winter v. NRDC, Inc.,* 555 U.S. 7 (2008)…………………………..…….6

-iv-

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

*World Famous Drinking Emporium, Inc. v. City of Tempe*,
    820 F.2d 1079, 1082 (9th Cir. 1987)………………………………24

*Younger v. Harris*, 401 U.S. 37 (1971)……………………………………24

**<u>Statutes</u>**

Civil Rights Act of 1964 § 201(a)……………………………………..7

Civil Rights Act of 1964 § 203(c)………………………..……………7

Civil Rights Act of 1964 § 204(a)………………………………….7, 8, 10

Fed. R. Civ. P. 65………………………………………...………2, 5, 25

Penal Code § 115……………………………………………….4, 5, 25

Penal Code § 182……………………………………………….…..5

Penal Code § 6128………………………………………….4, 5, 25

18 U.S.C. § 1001……………………………………………….20

28 C.F.R. § 36.104…………………………………………….9

28 C.F.R. § 36.206…………………………………….9, 11, 12

28 C.F.R. § 36.501(a)…………………………………………….8

28 U.S.C. § 2283……………………………………….5, 6, 10

42 U.S.C. § 12101……………………………………...……..18, 23

42 U.S.C. § 12188………………………………………….5, 8, 17

42 U.S.C. § 12203…………………………………….8, 9, 11, 12

42 U.S.C. § 2000a-3……………………………………...….5, 26

42 U.S.C. § 2000e …………………………………...……..7

U.S. Const. art. 3, § 2……………………………………….13

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

# I.    __INTRODUCTION__

Defendant Office of the District Attorney, County of Riverside ("RCDA") has brought a criminal prosecution against Plaintiff Ross Cornell ("Cornell") and his paraplegic client Bryan Estrada ("Estrada") for filing lawsuits in federal court against Riverside County defendants under Title III of the American with Disabilities Act (42 U.S.C. § 12101) (the "ADA"). (Complaint ¶¶ 1, 3-8, 19). The prosecution alleges that three of Cornell's ADA lawsuits constitute false instruments under Cal. Penal Code § 115 and that the civil pleadings Cornell filed in federal court included allegations that constitute attorney deceit under Business and Professions Code § 6128. [1]  (Complaint ¶ 9, Ex. A).

Cornell hereby seeks a temporary restraining order under Fed. R. Civ. P. 65 to compel the RCDA to dismiss the Criminal Complaint with prejudice (Riverside County Superior Court Case No. RIF2201190) (the "Prosecution"), to compel the RCDA to retract its Press Release, to restrain the RCDA from interfering with Cornell's pending ADA lawsuits, and to restrain the RCDA from using the fruits of its investigation in further acts of retaliation or interference against Cornell.

# II.    __STATEMENT OF FACTS__

Cornell is an attorney in good standing duly licensed to practice law before all Courts of the State of California, including the Central District of California. (Complaint ¶ 2; Decl. of Ross Cornell (the "RC Decl.") ¶ 2).  Estrada lives, works and travels in and around Riverside County regularly, and together with Cornell has brought ADA lawsuits against Riverside County defendants.  (Complaint ¶¶ 2, 9, 19); RC Decl., ¶ 3; Decl. of Bryan Estrada (the "Estrada Decl.") ¶¶ 3-4). Cornell presently has a number of ADA lawsuits pending in the Central District of California, including on behalf of Estrada. (Complaint ¶¶ 2, 9, 14, 19, 30, 36, 49; Cornell Decl., ¶ 3; Estrada Decl., ¶ 3-4). Cornell has no prior record of arrest, no

---

[1] References to "ADA lawsuits" herein relate to Title III injunctive relief actions filed in federal court for the removal of barriers in public accommodations.

-2-

criminal record and no record of attorney discipline.  (Complaint ¶¶ 2, 10, 45 ; RC Decl., ¶ 4).

On March 10, 2022, the RCDA executed simultaneous arrests on Cornell and Estrada at their respective homes. (Complaint ¶¶ 10, 15, 38-46; RC Decl., ¶¶ 5-6; Estrada Decl., ¶¶ 5-9). Within hours of the arrests, the RCDA published a libelous press release against Cornell that disparaged Cornell in his profession as an attorney and made false and exaggerated claims about the Criminal Complaint. (Complaint ¶¶ 11, 15, 47-54, Ex. B; Cornell Decl., ¶¶ 8-10)

Cornell's prosecution is one of two recent meritless law enforcement actions by the RCDA against ADA attorneys and their clients. (Complaint ¶¶ 31-36, Ex. C; Cornell Decl., ¶ 11). In contrast to the lack of any prior history of the RCDA bringing criminal actions against lawyers to advance concerns under Section 115 or 6128, Cornell's protected activities under the ADA have been targeted for selective enforcement through a Criminal Complaint that threatens Cornell with multiple felony convictions. (Complaint, ¶¶ 7, 9, 31-36, 88, 94; Cornell Decl., ¶ 11).

The RCDA is and has been interfering with the exercise of rights protected by the ADA in connection with Cornell's current ADA lawsuits ongoing in the Central District (the "Current Cases"). (Complaint ¶¶ 1, 11, 14, 31, 37, 49-54, 68, 84, 87, 94, 96 Ex. B; Cornell Decl., ¶¶ 12-16, Ex. A - D). The RCDA's press release is presently online and actively soliciting communications from defendants in the Current Cases. (Complaint ¶¶ 11, 14, 47-55; Cornell Decl., ¶¶ 12-16, Ex. A - D). The RCDA has recently been in direct communication with some of the defendants in the Current Cases, and these efforts, coupled with the pending prosecution, have served their intended consequences of chilling and interfering with Current Cases. (Complaint ¶¶ 11, 14, 47-54; 81, 88, 94; Cornell Decl., ¶ 12-16, Ex. A-D).

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

1    Since the arrests, for fear of such uncertain and severe reprisals, even

2  Cornell's own clients have been unwilling to file ADA lawsuits against infringing

3  and unlawful public accommodations in their communities -- locations where they

4  have already encountered access barriers. (Estrada Decl., ¶ 11; Decl. of Adelfo

5  Cerame, Jr. (the "Cerame Decl.") ¶¶ 3-9).

6  ## III.   THE RCDA'S CHARGES

7    The RCDA's prosecution can be reduced to a single sentence: Cornell

8  filed allegedly deceptive ADA lawsuits. Counts 1, 3 and 5 of the Criminal

9  Complaint allege that Cornell's filing of ADA lawsuits constituted a

10 violation of California Penal Code § 115. The Penal Code § 115 charges

11 depend on acts of *filing* ADA lawsuits. (Complaint ¶ 2, Ex. A). Similarly, the

12 Criminal Complaint asserts Business and Professions Code § 6128 charges

13 against Cornell based entirely on the content of *filed* documents, as follows:

14 > Count 2 Overt Act Nos. 1, 2, 4, 5 and 6; Counts 4 and 6 Overt
15 > Act Nos. 1, 3, 4 and 5: ("*filing* over 57 Americans with
   > Disabilities Act ("ADA") lawsuits," "*filing* ADA lawsuits,"
16 > "*filing* an ADA lawsuit," "*claiming and maintaining*" facts in
17 > an ADA lawsuit, and "*filing* a notice of settlement")
   > *Id.*(emphasis added).
18
19 The only other Section 6128 charges relate to "…visiting the location … on

20 only one occasion, if at all, to conduct a drive by…". *Id.*  In making this *ex*

21 *post facto* attack on Estrada's standing, the Prosecution misinterprets

22 controlling Ninth Circuit case law which permits "tester standing" and

23 clarifies that Estrada's motivation in visiting a location is irrelevant. *Civil*

24 *Rights Education and Enforcement Center v. Hospitality Properties Trust*,

25 867 F.3d 1093 (9th Cir. 2017) ("*CREEC*"); (*see also* Complaint ¶¶ 23-28,

26 55, 62).  Critically, standing was never challenged in the underlying ADA

27 lawsuits and appears untimely at this post-dismissal stage. (Cornell Decl., ¶ 17).

28 As discussed *infra,* Even if Estrada's motivation was solely to investigate a

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

business for ADA compliance, he is still not deprived of standing as a matter of law. (Complaint ¶¶ 23-28, 55, 62).  In any event, the RCDA's fictional implication that Estrada "never visited" the facilities relates to the allegations made *in* the pleadings.

Likewise, the conspiracy charge under Penal Code 182(a)(1) depends on alleged criminal violations of Sections 115 and 6128.  In the absence of intent to commit the crimes set forth in Section 115 or 6128, there is no conspiracy. *People v. Bowman,* 156 Cal. App. 2d 784 (1958) ("in the crime of Criminal Conspiracy … a necessary element is the existence in the mind of the perpetrators of the specific intent to commit the crimes … unless such intent so exists, the crime is not committed.").

## IV.   AUTHORITY TO ISSUE THE REQUESTED RELIEF

This Court is authorized to issue injunctive and declaratory relief pursuant to Fed. R. Civ. P. 65 and 42 U.S.C. § 12188, which incorporates the remedies set forth in 42 U.S.C. § 2000a-3(a) and which constitute express authorization to stay the Prosecution under 28 U.S.C. § 2283 as a matter of law (*see* section V(A)(i), *infra*).  Here, an injunction is appropriate to restrain the RCDA's abusively invoked state criminal process, to prohibit the RCDA's ongoing violations of the anti-retaliation and anti-interference provisions of the ADA, to prevent an impermissible chilling over federal civil rights advocacy, and to give effect to Cornell's "federal right of not being prosecuted in first instance." *Dilworth v. Riner,* 343 F.2d 226, 231 (1965).

The standard for issuing a temporary restraining order is "substantially identical" to that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

*Winter v. NRDC, Inc.,* 555 U.S. 7, 20 (2008).  In the Ninth Circuit, a preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor.  *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). Plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction. *Winter, id.*

## V.     ARGUMENTS

### A.     Likelihood of Success on the Merits

#### i.     *The ADA's Prohibition Against Retaliation and Interference Constitutes Express Authorization for this Court to Enjoin the Prosecution*

The federal Anti-Injunction Act states in pertinent part as follows:

> "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.

This case meets the Act of Congress exception. An Act of Congress conferring jurisdiction for the federal court to stay proceedings in  state court does not need to expressly refer to Section 2283, nor does the language of the authorizing statute need to refer specifically to the subject matter of federal stays of state court proceedings. *Amalgamated Clothing Workers v. Richman Bros. Co*., 348 U.S. 511, 516 (1955); *Mitchum v. Foster*, 407 U.S. 225, 238 (1972). Instead, to be excepted from Section 2283:

> "[A]n Act of Congress must have created a specific and uniquely federal right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding ... [the test] is whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal

court of equity, could be given its intended scope only by the stay of a state court proceeding." *Mitchum v. Foster*, 407 U.S. at 237–38.

Like the instant case, such a scenario was presented in *Dilworth v. Riner*, 343 F.2d 226, 230 (1965). In *Dilworth*, a group of black activists were told by a local restaurant that they would only be served if they moved to the section "reserved for Negroes." They refused to move or leave  and were then incarcerated and charged with criminal violation of the Mississippi Code for something akin to breach of the peace. *Dilworth*, *id*. at 228. The activists filed a federal civil rights action under the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (the "Act") seeking a temporary restraining order enjoining the state prosecution as retaliatory. The activists' request for temporary restraining order was denied by the district court. *Id.*

On appeal, the *Dilworth* Court began with the observation that the Act had been held constitutional. Next, the *Dilworth* Court identified the statutory basis for the rights claimed by the activists:  Section 201(a) of the Act set forth their right to the full and equal enjoyment of public accommodations without discrimination; Section 203(c) set forth their right to be free from punishment for pursuing their right under Section 201(a); and Section 204(a) set forth their right to an injunction. Finally, the *Dilworth* Court articulated the uniquely federal right, enforceable in a federal court of equity, that would be frustrated if the state court proceeding was not enjoined:

> "[t]he right to public accommodations on a non-discriminatory basis is a federal right the claim to which, Congress has said, shall not be the subject matter of punishment. There is nothing in this express interdiction which could be construed as meaning that appellants may be punished by prosecution in a state trial court so long as they may later vindicate their right not to be punished in a state appellate court or in the United

-7-

States Supreme Court. They may simply not be punished and prosecution is punishment." *Dilworth, id*. at 231.

*Dilworth* is closely analogous to the instant case, both of which arose in the context of public accommodations and federal anti-retaliatory civil rights laws. *Dilworth* held that the equitable remedies available under Section 204(a) of the Act constituted express authorization for the district court to enjoin criminal prosecution for engaging in protected activities as a civil rights activist. As discussed below, Section 204(a) is the *exact statute* that Title III of the ADA refers to for remedies available in cases of retaliation under 42 USC §§ 12203 and 12188 – the remedial provision available to Cornell here. Such close similarity between *Dilworth* and the instant case makes sense in that "[t]he remedies for violations of the ADA and the Rehabilitation Act are coextensive with each other and are linked to Title VI of the Civil Rights Act of 1964." *K.H. v. Antioch Unified Sch. Dist*., 424 F. Supp. 3d 699 (9th Cir. 2020). Thus, the *Dilworth* analysis is equally applicable in the instant case.

To state the obvious, the ADA is in act of Congress. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835-36 (2000) ("[t]he ADA is a valid exercise of congressional power under section 5 of the Fourteenth Amendment."). The ADA provides the right under which Estrada, through his attorney Cornell, filed the underlying ADA lawsuits. 28 C.F.R. § 36.501(a). The ADA's anti-retaliation and anti-interference provisions contain "explicit rights-creating language." *Shotz v. City of Plantation*, 344 F.3d 1161, 1167 (11th Cir. 2003) (citing 42 U.S.C. § 12203(a)). The ADA "… specifically identifies a protected class and expressly confers on that class a right not to be retaliated against." *Shotz* at 1168. "[T]he anti-retaliation provision not only unequivocally confers on those whom it protects a federal right to be free from retaliation, but also imposes a

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

correlative duty on all individuals to refrain from such conduct." *Id*. "Filing [a] complaint for alleged disability discrimination under the ADA is unquestionably a protected activity under the statute." *La Marca v. Capella Univ.*, 2007 U.S. Dist. LEXIS 105047, *50.

Cornell's rights under the ADA arise from his providing legal representation in Estrada's ADA lawsuits. His conduct in engaging in ADA protected activities on Estrada's behalf unequivocally confers on him a right not to be retaliated against or interfered with. Correspondingly, the ADA conveys on the RCDA – a "public entity" – a duty to refrain from interference, intimidation, coercion, harassment and threats against Cornell for engaging in ADA protected activities. 28 C.F.R. § 36.104 (public entity "means any department, agency, special purpose district, or other instrumentality of a State or States or local government.").

Cornell's right not to be retaliated against, threatened or interfered with is expressly set forth in the ADA as follows:

> "No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.  28 C.F.R. § 36.206(b).

Similar prohibitory language is found at 42 U.S.C. § 12203(b):

> "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act."

The ADA also expressly identifies the remedies available to redress retaliatory conduct to include injunctive relief in 42 U.S.C. § 12203(c):

> "[t]he remedies and procedures available under sections 107, 203, and 308 of this Act [42 USCS §§ 12117, 12133, 12188] shall be available to aggrieved persons for violations of subsections (a) and (b), with respect to title I, title II and title III [42 USCS §§ 12111 et seq., 12131 et seq., 12181 et seq.], respectively."

Moreover, Section 12188, applicable to ADA Title III, *explicitly incorporates the remedies provision at issue in Dilworth* – Section 204(a) of the Civil Rights Act of 1964:

> "Availability of remedies and procedures. The remedies and procedures set forth in **section 204(a) of the Civil Rights Act of 1964** (42 U.S.C. 2000a-3(a)) are the remedies and procedures this title provides. (internal citations omitted) (emphasis added).

In turn, Section 204(a) provides as follows:

> "Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 203, a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved …."

Just like in *Dilworth*, the remedies available to Cornell are found in Section 204(a). Hence, just like in *Dilworth,* Section 204(a) provides express authorization under 28 U.S.C. § 2283 for this Court to enjoin the Prosecution *as a matter of law*.

Unless the Prosecution is restrained, the ADA's prohibitions on retaliation and interference cannot not be given their intended scope. Cornell's uniquely conferred federal right to engage in ADA protected activities on Estrada's behalf and to be free from retaliation and interference for doing so is a right that Congress has said *shall not be* subject to violation by public entities. There is nothing in this expressly created right which could be construed as meaning that the RCDA can

-10-

threaten Cornell with incarceration via prosecution through state court proceedings so long as he may later 'try and vindicate his right not to be threatened' in a subsequent appellate proceeding. Cornell's right is a *federal right* the claim to which, Congress has said, simply cannot be the subject of threats by public entities. Here, the Prosecution and its attendant threat of felony incarceration *is* the ADA violation.

ii.    ***Cornell is Likely to Prevail on His Claims for Retaliation and Interference under the ADA***

Public entities are prohibited from retaliating against or interfering with the exercise of protected activities under the ADA. 42 U.S.C. § 12203; 28 C.F.R. § 36.206. To establish a *prima facie* retaliation claim, Plaintiff must show (1) that he was engaged in an activity protected under the ADA; (2) that Defendant subjected him to an adverse action; and (3) that there was a causal relationship between the protected activity and the adverse action." *La Marca* , *id. at* \*49.  The burden then shifts to Defendant to show a "legitimate, non-retaliatory explanation for the adverse action. Plaintiff then must demonstrate that Defendant's explanation for the action is 'mere pretext.' *La Marca*, *id*.  "[T]he standard for the 'causal link' is but-for causation." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist*., 806 F.3d 451, 473 (9th Cir. 2015) (citations omitted).

Cornell's retaliation case is straightforward. Pursuing rights under the ADA constitutes a protected activity. *See, e.g., McAlindin v. County of San Diego,* 192 F.3d 1226, 1238 (9th Cir. 1999) (confirming that "vigorously asserting  his rights under the ADA" constitutes protected activity). Filing a complaint for alleged disability discrimination under the ADA "is unquestionably a protected activity…."  *La Marca, id.* at 50. The Prosecution, together with the RCDA's investigatory activities, Cornell's arrest, and the RCDA's press release constitute "adverse actions" against

-11-

Cornell, and the causation is direct. "But for" Cornell filing the protected ADA lawsuits, the RCDA would not have acted. Thus, Cornell has established a *prima facie* case for retaliation and the burden shifts to the RCDA to establish a legitimate, non-retaliatory justification for their adverse actions. *La Marca*, *id*.

Here, as discussed *infra,* the object of Sections 115 and 6128 are to regulate the integrity of public records and attorney conduct. However, because the manifest purpose of state law is limited to protecting the integrity of *state* and not *federal* proceedings, the Prosecution is a pretext and the RCDA's interests in regulating federal processes are insufficient to overcome the protections afforded to Cornell's protected activities.  The RCDA "… may not, under the guise of prohibiting professional misconduct, ignore constitutional rights."  *NAACP v. Button*, 371 U.S. 415, 439 (1963). Nonetheless, the *effects* of the RCDA's conduct are predictable. To disparage Cornell in his profession with broad public accusations of "fraud" and to prosecute him for filing ADA lawsuits causes damage to Cornell, interferes with Current Cases, and chills advocacy among disabled plaintiffs and their attorneys.

Cornell is also likely to prevail on his claim for interference under 42 U.S.C. § 12203(b) and 28 C.F.R. § 36.206(b).  The mere *threat* of prosecution by the RCDA is an interference arising from Cornell's exercise of rights granted or protected by the ADA, as is the *actual* Prosecution and its attendant threats of felony incarceration. Cornell has been subjected to intimidation, coercion, threats and harassment as a result of the Prosecution which, together with interference by the RCDA in connection with Current Cases, violate the ADA. (Complaint ¶¶ 1, 8, 11-18,  47-56, 80-84, 87-90; RC Decl. ¶¶ 12-17, Ex. A-D).  For all of these reasons, Cornell is likely to prevail on the merits of his ADA claims for retaliation and interference.

-12-

### iii.   *The Federal Government Has Exclusive Federal Jurisdiction Over Federal Proceedings*

Under U.S. Const. art. 3, § 2, the power to regulate the administration of the federal courts, to regulate persons acting in federal proceedings, and to prescribe penalties for the violation of duties arising from federal processes lies with the federal government. The U.S. Supreme Court has stated that the power of punishment in a judicial proceeding "belongs peculiarly to the government in whose tribunals that proceeding is had." *In re Loney*, 134 U.S. 372, 375 (1890). For example, a criminal defendant alleged to have made false statements to a federal court is accountable to the federal government only, as the act took place "within the exclusive jurisdiction of the courts of the United States … and cannot, therefore, be punished" in the courts of the state.  *Id*.  Interference by state authorities with the operations of the federal tribunals has been found to impede the federal court's administration of justice and is an "exceptional circumstance of peculiar urgency" justifying federal intervention in state court process. *Id*.

These principles were confirmed by the California Supreme Court over a century and a half ago in *People v. Kelly* (1869) 38 Cal. 145. The *Kelly* Court dealt with an appeal by a criminal defendant who had been convicted in state court for making false oaths before a federal officer.  In holding that the state had no authority to enforce the federal criminal law, the *Kelly* Court stated:

> "…[T]he matters from which the charge now before us arises are alleged to have occurred under and in the course of the execution of the laws of the United States. Those laws required certain things to be done. Congress had the right to prescribe how they should be done, to regulate the duties of all persons who acted under the law, and to prescribe penalties for the violation of such duties. In such case, if acts are done which, if

-13-

transacted under the laws of this State, would have constituted offenses under the provisions of our Criminal Code, yet, being done in pursuance of the laws of another Government (having the sole power to regulate the whole proceeding), authorizing the act to be done, prescribing the mode, imposing the duty, and affixing the penalty for the violation of it, *the acts cannot be regarded as having been done under the sanction of the laws of this State, so as to subject the parties to punishment under those laws.*" *Kelly, id.* at 150-51 (emphasis added).

The *Kelly* analysis was reaffirmed in *People v. Hassan*, 168 Cal.App.4th 1306, 1318 (2008). *Hassan* involved a criminal prosecution under state law for submitting false statements in a federal immigration investigation. In ruling that the statements made in a federal proceeding cannot serve as the basis for a state prosecution, the Court stated:

"Analogously here, as in *Kelly*, we are concerned with false documents provided in connection with a federal immigration investigation. Several federal laws potentially criminalize the presentation of false or fraudulent documents in connection with that investigation … [a]s in *Kelly*, it is unclear whether the language [of the state statute] refers only to state or local proceedings or whether it also applies to federal proceedings. The ambiguity is resolved by limiting [the state statute] to its manifest purpose to protect the integrity of ***state*** and ***not federal*** proceedings. That avoids a construction in which the federal criminal law is simply enforced by the state law. Because the documents appellant provided ICE were produced pursuant to the laws of the United States which were the sole source of authorization for the ICE investigation, the integrity of the federal proceeding is protected by the federal law." (internal citations omitted) (emphasis added).

Here, the integrity of federal proceedings *vis-à-vis* the content of Cornell's ADA lawsuits – all of which arose under federal law and were filed exclusively in federal court – is protected by the federal law.

-14-

### iv.    *The Prosecution is Based on a Flawed Assessment of Article III Standing*

As discussed below, the Prosecution is based on a misunderstanding of ADA law.  For example, Counts One and Two and the overt acts alleged therein are all firmly rooted in the RCDA's belief that the ADA requires some type of motive, intent or "proper purpose" behind a visit to a particular public accommodation and in bringing an ADA lawsuit based on that visit.  However, established precedent holds otherwise.

The Ninth Circuit "take[s] a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039-1040 (9th Cir. 2008). District courts make decisions about the application of the rules of standing at the time the actions commences under the facts of the operative complaint. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000); *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1044 (9th Cir. 2015). Hence, standing issues are properly raised before the sitting court during the pendency of an underlying ADA lawsuit, not now in a post-dismissal prosecution in state court.

Despite this, the Prosecution alleges activities that clearly relate to Article III standing: (1) that filing over 57 ADA lawsuits for business locations plaintiff never intended to patronize or intended to return to patronize is an overt act in furtherance of a conspiracy to defraud the Court; (2) that filing ADA lawsuits against businesses the plaintiff never used, never intended to use, and never intended to return to use is an overt act in furtherance of the same alleged conspiracy; (3) that plaintiff's act in visiting a business on one occasion, if at all, to conduct a drive by of the business stands as evidence of the claimed conspiracy; and (4) that

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

claiming and maintaining that plaintiff encountered ADA barriers at the businesses evidences the alleged conspiracy. (Complaint ¶ 9, Ex. A).  For the reasons set forth below, the RCDA's allegations on each of the points above is contrary to controlling Ninth Circuit authority. (Complaint ¶ 62).

> 1. "<u>Filing over 57 ADA lawsuits</u>." In asserting Estrada's history of filing ADA lawsuits is evidence of a crime, the RCDA disregards *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031 (9th Cir. 2008) (rejecting adverse credibility determination regarding sincerity of intent to return based on history of ADA litigation). To the contrary, "[f]or the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." *Molski v. Evergreen Dynasty Corp*., 500 F.3d 1047, 1062 (9th Cir. 2007).

> 2. <u>Never "Used," "Intended to Use or Patronize" or "Intended to Return to Use or Patronize</u>." Whether or not Estrada ever intended to "use" or "patronize" the businesses at issue in his ADA lawsuits is irrelevant to the issue of standing.  Contrary to the legal fiction underlying the Prosecution, "Title III [of the ADA] provides remedies for 'any person' subjected to illegal disability discrimination," and therefore, "anyone who has suffered any invasion of the legal interest protected by Title III may have standing, regardless of his or her motivation in encountering that invasion," whether or not they ever intended to use or patronize the business as a bona fide customer. *CREEC* at 1101. In fact, in the ADA context, a disabled plaintiff who visits a business for the sole purpose of collecting evidence about ADA noncompliance without an independent desire to patronize the business still has legitimate standing to bring an ADA action. *Lindsey v. Mullane,* 2019 U.S. Dist. LEXIS 239354.

-16-

Thus, there is no requirement that Estrada allege or prove he was a "customer" or "patron," or that he ever "used," "intended to use," or intended to "return to use or patronize" the business whose access barriers he seeks to have removed.  His motivation in encountering or returning to a business location for the purposes of standing in an ADA lawsuit filed in federal court is irrelevant, and he does not have to allege a non-litigation reason to visit or return to the businesses he sued. *Lindsey*, *Id*. at *11.

       3.    "<u>Visiting a business on one occasion</u>."  Written expressly into the ADA statute, the futility doctrine provides that a disabled plaintiff is not obligated to engage in futile gestures in order to demonstrate standing to remove barriers related to his disability. *Pickern v. Holiday Quality Foods,* 293 F.3d 1133, 1136 (9th Cir. 2002); *see* 42 U.S.C. 12188(a)(1). This includes the futile gesture of "re-visiting" a business at which he has already encountered access barriers as a prerequisite to filing suit. Whether Estrada brought his ADA lawsuits predicated on "one visit" to a business is irrelevant insofar as a single incident of discrimination is a sufficient basis for standing to bring an action for injunctive relief under the ADA, and multiple encounters of the same barrier is not required.  42 U.S.C. § 12188(a)(1); *Pickern, id*.

       4.    "<u>Having encountered ADA violations</u>." In order to satisfy standing requirements, Plaintiff can allege two theories: that he actually encountered a barrier that deterred him *or* that he has an intent to return that is thwarted by his knowledge of an access barrier. *Chapman, id.* at 944. Alleging that the disabled plaintiff uses a wheelchair for mobility, that he visited the defendant's premises, that he personally encountered a barrier related to his disability, and that the barrier deters him from returning are sufficient to establish injury-in-fact for purposes of standing. *Whitaker v. Tesla Motors*, 985 F.3d 1173 (9th Cir. 2021).

-17-

The RCDA's views on these issues as set forth in the Criminal Complaint obviously cannot be reconciled with the foregoing authorities. The RCDA's vaguely alleged "standing fraud" relies on a flawed assessment of standing that illustrates why the RCDA and state criminal courts cannot serve as the final arbiter on what is required to maintain an ADA claim.  That duty falls more appropriately on the federal trial and appellate courts that preside over and consider ADA cases on a daily basis. Furthermore, if a particular section in the ADA statute needs to be changed to comport with the RCDA's beliefs, that is not accomplished through the prosecution of disabled advocates and their attorneys engaged in Protected Activities.  Such a change would have to be ratified through an appropriate act of Congress.  That the RCDA attempts to take these matters into its own hands and effectively try to rewrite both the ADA statute and Court of Appeal decisions regarding standing is an invasion of the sovereignty of the federal courts and further demonstrates why injunctive relief is needed.

### v. *Private Enforcement Actions Are Essential to Fulfilling the Purpose of the ADA*

The ADA is intended "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b); (*see also* Complaint ¶¶ 23-30). Private plaintiffs play a critical role in enforcing the ADA, particularly in the area of public accommodations. *Id*; *see* 42 U.S.C. § 12188(a)(1). While the ADA authorizes private lawsuits, its "provision for injunctive relief only removes the incentive for most disabled persons who are injured by inaccessible places of public accommodation to bring suit." *D'Lil v. Best W. Encina Lodge & Suites,* 538 F.3d 1031, 1040 (9th Cir. 2008) (internal quotations omitted). Thus, "most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled…." *Id.* While

such plaintiffs are sometimes disparaged as so-called "serial" or "high-volume" litigants – or as "criminals" by the RCDA here – they are in fact a necessary component of ADA enforcement. As courts in California have said, serial litigation "may indeed be necessary and desirable" to yield the ADA's promise of equal access for the disabled. *Id.*

### vi.    *The Prosecution Violates the First Amendment*

An individual's freedom to speak and to petition the government for the redress of grievances is subject to vigorous protection from interference by the State. *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). The Supreme Court has described the right to petition as "among the most precious of the liberties safeguarded by the Bill of Rights." *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) (quoting *United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222, 19 L. Ed. 2d 426, 88 S. Ct. 353 (1967)). The RCDA's charges implicate Cornell's first amendment rights of expression and petition. Neither Section 115 or Section 6128 were intended to abridge these important constitutional rights, but as applied in the Prosecution they operate as the kind of interference by the state that is "subject to vigorous protection." *Roberts, id.* at 622.. Regulatory measures cannot be employed in purpose or in effect to stifle, penalize, or curb the exercise of First Amendment rights. *Gremillion v. NAACP*, 366 U.S. 293, 297 (1961). While the state does have an interest in regulating attorney conduct, here the RCDA has only invoked criminal prosecution selectively.  The state may not, under the guise of prohibiting alleged professional misconduct, ignore constitutional rights. *NAACP v. Button*, 371 U.S. 415, 439 (1963). The RCDA's pretextual concerns are insufficient to overcome such a significant encroachment upon Cornell's personal liberty and federal rights. *Button, id.* at 421-22; *see also Dombrowsi v. Pfister*, 380 U.S. 479, 486 (1965) (criminal prosecution abridging first amendment rights shows irreparable injury).

-19-

### B.  <u>The Prosecution is Causing Irreparable Harm</u>

The RCDA's act of prosecuting Cornell for engaging in protected activities under the ADA presumptively gives rise to genuine and irretrievable damage. "[T]he policy against interference with state criminal proceedings is … a rule to which there may be exceptions based on genuine and irretrievable damage." *Dilworth v. Riner*, 343 F.3d 226, 231-32 (5th Cir. 1965) (referencing *Morrison v. Davis*, 252 F.2d 102 (5th Cir. 1958), *cert. den*., 356 U.S. 968 (treating threatened prosecutions for claiming civil rights as being in this category of damage)). The RCDA's prosecution causes irreparable injury insofar as "the threat of sanctions may deter … almost as potently as the actual application of sanctions. . . ."  *NAACP v. Button*, 371 U.S. at 421-22; *Dilworth v. Riner*, 343 F.3d at 231-32.  The assumption that defense of a criminal prosecution will assure ample vindication of constitutional rights is unfounded when criminal statutes have an overbroad sweep, and "the hazard of loss or substantial impairment of those precious rights may be critical." *Dombrowsi v. Pfister*, 380 U.S. 479, 486 (1965).

The Prosecution also conflicts with clearly stated federal policy intended to prevent a chilling effect from threatening criminal prosecutions based on zealous advocacy. Congress enacted 18 U.S.C. § 1001(a) to establish criminal penalties for making false statements in connection with federal processes. *United States v. Gilliland*, 312 U.S. 86, 93 (1841). Section 1001(b) provides an exception: Section 1001(a) does not apply statements, representations, writings or documents submitted by a party or counsel to a judge without regard to the purpose or nature of the submission. *Id*. The exception is recognized by the Ninth Circuit as a protection against criminal prosecution under Section 1001(a). *United States v. Horvath,* 492 F.3d 1075, 1081 (9th Cir. 2007).

-20-

The exception was discussed at length in *United States v. Manning*, 526 F.3d 611 (10th Cir. 2008) where congressional purpose was made clear: criminal prosecution for statements made in the course of adversarial litigation would chill vigorous advocacy, thereby undermining the adversarial process. *Id.* at 617-18. The Supreme Court has remarked on its "serious concern that the threat of criminal prosecution under the capacious provisions of § 1001 will deter vigorous representation of opposing interests in adversarial litigation…" *Hubbard v. United States,* 514 U.S. 695, 717 (1995)(Scalia, J., concurring).

This chilling effect is real, not conjectural or theoretical, and it constitutes an irreparable harm. In *Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128 (WDNY 2003)*,* migrant farm workers were being chilled in their exercise of rights under the Fair Labor Standards Act by retaliatory threats of being reported for prosecution under U.S. immigration laws. The *Centeno* Court found that a preliminary injunction was appropriate to enjoin the chilling effect of the criminal threats. "[R]etaliation and the resulting weakened enforcement of federal law can itself be irreparable harm in the context of a preliminary injunction application," and should issue even in the absence of a likelihood of success on the merits where the request for relief establishes sufficiently "serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships" tips decidedly in its favor. *Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128, 135-37 (WDNY 2003). Like in *Centeno,* the concerns over chilling effects in the instant case are as serious as the existence of questions going to the merits. Cornell and Cornell's clients, who have previously filed ADA lawsuits regarding business locations in their communities where they have already encountered barriers, are presently

being chilled by the Prosecution.  Cornell Decl. ¶ 17; Estrada Dec. ¶¶ 1-11; Cerame Decl. ¶¶ 1-9.

### C. The Balance of Equities and Public Interest Weigh Decidedly in Favor of an Injunction

The court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987).  Here, like in *Centeno*, Cornell has established the merits of his retaliation and interference claims and the balance of hardships tips in his favor. Without an injunction, Cornell's right to be free from the threat of prosecution, to be free from retaliation and interference, to be free to petition the courts to offer constitutionally protected speech in support of a redress of grievances, to be free to engage in necessary ADA advocacy in the future, and to be free from being falsely pilloried for engaging in Protected Activities will continue to suffer irreparable harm. Indeed, absent an injunction, the protections of federal law become meaningless. As Cornell, Estrada and other disabled plaintiffs and their lawyers wait for a state-court determination, the remedial purpose of the ADA will be thwarted by the chilling effect of the Prosecution.

On the other hand, the RCDA faces little in the way of hardship if an injunction issues.  All that will be required through injunctive relief is that the RCDA stop its unlawful retaliatory activities. This is not going to force the RCDA to incur costs or lose money; if anything, it will stop the RCDA from wasting additional taxpayer dollars on their misguided cause. Moreover, there is no First Amendment right for the RCDA to engage in retaliatory conduct. *Centeno, id.* at 139.  Importantly, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."

*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). The public interest analysis requires the Court to consider "whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Id.*

Here, the contrary is true –the public interest would be *served* by the requested injunction. While embittered defendants in ADA lawsuits may prefer that ADA lawyers be prosecuted, and while the RCDA may desire to reduce the number of ADA lawsuits affecting its constituents, the federal courts are still the gatekeepers here, and they are much better suited at analyzing the merits of standing and other requirements in each claim before them. The ADA itself is a "clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1) ("Findings and Purpose"). That Congress intended to accomplish this important purpose through the mechanism of private enforcement weighs decidedly in favor of an injunction.

**D.** **This Court Should Not Abstain from Enjoining the Prosecution**

**i.** *Principles of Comity Do Not Apply or Have Been Abrogated By Congress*

The policy against interference with state criminal proceedings is a rule to which "there may be exceptions based on genuine and irretrievable damage." *Dilworth, id.* at 232. Prosecutions arising from the assertion of federal civil rights are within this category of irretrievable damage. *See Denton v. City of Carrollton, Georgia*, 235 F.2d 481 (5th Cir, 1956). Moreover, courts have held that principles of comity do not apply where the plaintiff is being deprived of constitutional civil rights, and that federal courts have a heavy responsibility to protect those rights. *Browder v. Gayle*, 142 F. Supp. 707, 714 (Al. Dist. 1956).  Comity "is also a rule that may be abrogated by the Congress." *Dilworth, id.* at 233 (Civil Rights Act "plainly

-23-

abrogates the comity rule with respect to injunctions against state proceedings…").  Principles of comity are abrogated where –as here and in *Dilworth* – the Court is specifically empowered to issue injunctive relief to prevent retaliation.

### ii. *Younger Should Not Be Invoked in this Case*

There are several exceptions under which the Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971) should not restrict a federal court's power to issue injunctions over criminal proceedings in state court. These apply where a prosecution is abusively invoked without any hope of ultimate success, but only to discourage the assertion of constitutionally protected rights (*see World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1082 (9th Cir. 1987)), in cases of proven harassment or prosecutions undertaken in bad faith without hope of obtaining a valid conviction (*see Perez v. Ledesma*, 401 U.S. 82, 85 (1971), or where the prosecution is animated by a retaliatory, harassing, or other illegitimate motive. *Diamond D Const. Corp. v. McGowan*, 282 F.3d 191, 199 (9th  Cir. 2002).

Such circumstances are present here as is evidenced by the RCDA's comments in the Press Release.  *Santiago-Ramos v. Centennial P.R. Wireless Corp*, 217 F.3d 46, 55 (1st Cir. 2000) (comments reflecting animus by key decisionmakers).  The Press Release intimates that the purpose of the Prosecution is related to the number of Cornell's ADA lawsuits as opposed to the RCDA's pretextual regulatory goals.  Although the Criminal Complaint relates only to three specific ADA lawsuits, the Press Release makes clear the Prosecution's motivation is to quell additional ADA lawsuits by Cornell and his clients. *See Kelley v. Corr. Med. Servs.*, 707 F.3d 108, 117 (5th Cir. 2013) (reasonable factfinder could conclude pretextual reason for adverse action against person who "had engaged in ADA-protected conduct

one too many times.").  Cornell contends that the RCDA's retaliatory animus violates the ADA.

There is no true intent to accomplish its pretextual goals where the RCDA attempts to reach into purely federal processes and apply state law in a manner that conflicts with federal policies.  Moreover, the fact that the only enforcement actions brought by the RCDA alleging criminal charges against lawyers under Sections 115 and 6128 have been against *ADA lawyers* is evidence of selective enforcement and retaliatory animus prohibited by the ADA. *See Edwards v. Brookhaven Sci. Assocs.*, 390 F.Supp.2d 225, 233 (E.D.N.Y 2005) (retaliating party never investigated similar circumstances of conduct by others); (*see also* Cornell Decl., ¶ 17). Here, there is sufficient evidence to conclude that the RCDA has been "animated by a retaliatory, harassing, or other illegitimate motive." Furthermore, the overly aggressive nature of Cornell and Estrada's arrests, the RCDA's history of meritless actions against ADA lawyers, the libelous nature of the Press Release, and the ongoing interference with Current Cases all evidences the RCDA's bad faith, harassment, intimidation and malice.  (Complaint ¶¶ 10-11, 31-56)

### E.    Cornell Requests the Bond Requirement be Waived

Fed. R. Civ. P. 65(c) requires a security bond before an injunction can issue.  The court has "wide discretion in setting the amount of the bond." *Conn. Gen. Life Ins. Co. v. New Images*, 321 F.3d 878, 882 (9th Cir. 2003). The court has discretion to determine whether any security is required at all and "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday, 320 F.3d 906*, 919 (9th Cir. 2003).  In addition, the ADA at provides that the remedies set forth in 42 U.S.C. §

2000a-3(a) are the remedies available for violations of Title III's anti-retaliation provisions.  Section 2000a-3(a) specifically states:

> Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the civil action without the payment of fees, costs, or security.

Cornell contends that there is no realistic likelihood of financial harm to the RCDA and requests the court authorize the requested temporary restraining order without the payment of a security.

## VI.      CONCLUSION

Federal policies and protections cannot operate as hollow and ineffectual when protected activities are targeted by state prosecutors. Cornell's Protected Activities are entitled to the protections of federal law. Without this Court's intervention, the RCDA will continue to threaten, interfere with and cause harm to Cornell and the Current Cases on a daily basis and to chill efforts to investigate and pursue future ADA lawsuits as demonstrated through the arguments and declarations submitted herein. For all of these reasons, Cornell requests that the temporary restraining order and preliminary injunction be granted.

Respectfully submitted,


Dated:  May 9, 2022          **LAW OFFICES OF ROSS CORNELL, APC**


By:  /s/ *Ross Cornell*
          Ross Cornell