**CALLAHAN & BLAINE, APLC**
David J. Darnell (SBN 210166)
ddarnell@callahan-law.com
Gaurav K. Reddy (SBN 259496)
greddy@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for Plaintiffs Ross Cornell and
Bryan Estrada

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ross Cornell, an individual, and Bryan Estrada, an individual;<br><br>       Plaintiffs,<br><br>   v.<br><br>Office of the District Attorney, County of Riverside, and Does 1-100, inclusive;<br><br>       Defendants. | Case No. 5:22-cv-00789 JWH (SHKx)<br><br>[Assigned to Hon. John W. Holcomb]<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>For Violations of:<br>1.  U.S. Const. Art. III, Sec. 2<br>2.  U.S. Const. Art VI, Sec. 2<br>3.  U.S. Const. Amend. I<br>4.  42 U.S.C. § 12203<br>5.  28 C.F.R. § 36.206<br><br>Action Filed:  May 9, 2022<br>Trial Date:     None set |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

## I.  NATURE OF THE ACTION

1.     This is an action against the Riverside County District Attorney's Office (the "RCDA") for declaratory and injunctive relief regarding a criminal prosecution brought against Plaintiffs that violates U.S. Const. Art. 1, § 2, U.S. Const. Art 6, § 2, and U.S. Const. Amend. I, and that constitutes unlawful retaliation, interference, coercion, intimidation and harassment in violation of the Americans with Disabilities Act (42 U.S.C. § 12203 and 28 C.F.R. § 36.206) (the "ADA").  As demonstrated below, the RCDA's criminal prosecution has been brought maliciously in bad faith with no chance of success on the merits and no hope of a conviction.

2.     At the same time, the mere filing of this frivolous action has impermissibly caused the chilling of legally protected civil rights advocacy and caused damage to Cornell, Estrada, and to ongoing ADA lawsuits.  This action seeks declaratory and injunctive relief as expressly authorized by the ADA on the grounds that the criminal prosecution is wrongfully directed at litigation activities that are privileged, protected, and in fact encouraged under ADA, the U.S. Constitution, and established precedent.  Accordingly, the RCDA's prosecution is not only misguided, but it also directly conflicts with these mandates, and is therefore barred and preempted.

## II.  PARTIES

3.     Plaintiff Ross Cornell ("Cornell") is an attorney in good standing duly licensed to practice law before all the Courts of the State of California, including the Central District of California.  Cornell is attorney of record for Plaintiff Bryan Estrada in a number of civil lawsuits filed in the Central District of California to remedy violations of the ADA at public accommodations and commercial facilities in and around Riverside County.  Cornell is the attorney of record on behalf of Estrada and others in ADA barrier removal cases now pending in the Central District.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

4. Plaintiff Bryan Estrada ("Estrada"; together with Cornell, the "Plaintiff") is a resident of Homeland, California, and works as an employee of the City of Riverside at offices located in the downtown Riverside area. He is paraplegic and requires the use of a wheelchair for mobility purposes. He is also a civil rights advocate and, by and through his legal representative Cornell, he has filed disability discrimination lawsuits in federal court against owners and operators of business locations in my community under the ADA for the purpose of removing mobility access barriers. He is currently the plaintiff in a number of ongoing ADA lawsuits filed in federal court with Cornell as his legal representative.

5. Defendant Office of the District Attorney, County of Riverside is a public entity that is responsible for the unlawful conduct and acts of retaliation, intimidation, threats, coercion, harassment, and interference against Plaintiffs as alleged herein. Defendant Office of the District Attorney, County of Riverside is referred to herein as the "RCDA."

6. Defendant Does 1 through 100, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiffs. When their true names and capacities are ascertained, Plaintiffs will amend this complaint by inserting their true names and capacities herein. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that the unlawful acts against Plaintiffs herein alleged were proximately caused by those Defendants.

## III. <u>JURISDICTION AND VENUE</u>

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 1343(a)(3), and 28 U.S.C. §§ 1343(a)(4) for violations of the ADA and pursuant to Article III of the United States Constitution for the Constitutional violations alleged herein.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants are located in this district, because Plaintiffs participated in the investigation and filing of ADA lawsuits in this district, and because the causes of action herein arose in this district.

**IV.    SUMMARY OF THE CASE**

9.      In an unprecedented chilling of protected civil rights advocacy and in violation of the anti-retaliation and anti-interference provisions of the Americans with Disabilities Act (42 U.S.C. § 12203; 28 C.F.R. 36.206), the RCDA has criminally charged Plaintiffs for filing meritorious ADA lawsuits against owners and operators of public accommodations in Riverside County who have violated the ADA by failing to provide adequate accommodations for disabled individuals.

10.     The criminal charges against Plaintiffs are based on the content of pleadings in ADA lawsuits Plaintiffs filed and in connection with Plaintiffs' encouragement, assistance, investigation, preparation, filing, resolving and otherwise participating in these legitimate and Constitutionally-protected ADA lawsuits (the "Protected Activities").  A true and correct copy of the felony complaint against Plaintiffs is attached hereto as **Exhibit A** (the "Criminal Complaint").

11.     Pursuant to the Criminal Complaint, the RCDA orchestrated and executed aggressive SWAT-style arrests against Plaintiffs despite the non-violent nature of the charges, despite Cornell being an officer of the Court, despite Cornell having no criminal record or prior history of arrest, despite Cornell having no record of attorney discipline as a member in good standing of the State Bar of California, and despite the nature of the Protected Activities.

12.     Within hours of the arrests, the RCDA published a libelous press release disparaging Cornell in his professional reputation as an attorney.  A true and correct copy of the RCDA's press release against Cornell is attached hereto as **Exhibit B** (the "Press Release").  The Press Release and the RCDA's conduct

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

provoked defamatory radio and print news stories disparaging Cornell that were widely disseminated in the days following the arrests.

13.    Plaintiffs' conduct in engaging in the Protected Activities is protected under federal law. *McAlindin v. County of San Diego,* 192 F.3d 1226, 1238 (9th Cir. 1999) (vigorously asserting rights under the ADA constitutes protected activity)*; Hashimoto v. Dalton,* 118 F.3d 671, 679-80 (9th Cir. 1997).

14.    The RCDA's conduct constitutes unlawful **retaliation** against Plaintiffs for having engaged in the Protected Activities.

15.    The RCDA's conduct constitutes unlawful **interference** with ADA lawsuits filed by Plaintiffs and currently pending in the federal courts of this District (the "Current Cases").

16.    The RCDA's charges, arrest, Press Release, investigation, and prosecution constitutes unlawful **harassment** of Plaintiffs for engaging in the Protected Activities.

17.    The RCDA's conduct constitutes unlawful **intimidation** of Plaintiffs in connection with the Protected Activities.

18.    The Criminal Complaint and the RCDA's conduct constitute unlawful **threats** of prosecution and of felony convictions against Plaintiffs for engaging in the Protected Activities.

19.    The RCDA's conduct is intended to **coerce** Plaintiffs to abandon and/or to abstain from the Protected Activities. This intended chilling effect lies at the heart of and is the core intention of the RCDA's prosecution. The RCDA's conduct directly conflicts with federal law and clear statements of Congressional purpose regarding: (1) protections against prosecution for parties and their attorneys regarding the content of federal pleadings *in general*, (2) the threatened abridgment of protected activities under the ADA, (3) unlawful retaliation and interference by public entities regarding the exercise of rights guaranteed by the ADA, (4) the federal government's exclusive jurisdiction over its own processes, (5) the federal

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

preemption doctrine that prohibits state laws from conflicting with federal law, and (6) First Amendment freedoms of speech and to petition for redress of grievances.

## V.   FACTUAL BACKGROUND

### A.   Plaintiffs' ADA Lawsuits

20.     Estrada is a paraplegic civil rights advocate who, by and through his legal representative Cornell, has filed disability discrimination lawsuits against owners and operators of public accommodations and commercial facilities in the Central District of California pursuant to Title III of the ADA.

21.     Estrada resides in Homeland, California and works as an employee of the City of Riverside at offices located in the downtown Riverside area.

22.     Estrada travels by car outfitted with hand controls regularly in, around, and throughout Riverside County in his daily life and as part of his normal routines.

23.     The ADA's purpose is the creation of a "national mandate for the elimination of discrimination against individuals with disabilities … to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities … [and] to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities."  42 U.S.C. § 12101.

### B.   The Necessity of Private Enforcement of the ADA

24.     The ADA constitutes a broad, sweeping statutory framework intended to, among other things, provide equal access for all people. To further that far-reaching remedial goal, Title III of the ADA provides:

> [n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.  42 U.S.C. § 12182(a).

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

25.     In order to effectuate this purpose, the ADA authorizes private enforcement actions by disabled plaintiffs pursuant to 42 U.S.C. § 12188, which permits the federal courts to issue injunctive relief orders requiring defendants to alter facilities to make them readily accessible to and usable by individuals with disabilities.  Eliminating discrimination against individuals with disabilities under the ADA largely relies on private enforcement.  Private plaintiffs play a critical role in enforcing the ADA, particularly in the area of public accommodations, which includes a large number of entities. *See* 42 U.S.C. § 12188(a)(l).

26.     Even the United States government acknowledges that its limited resources do not allow it to "investigate every place of public accommodation in the country to determine if it is in compliance with the ADA."  *Brief for the United States as Amicus Curaie*, p. 2, *Chapman v. Pier I Imports*, 631 F.3d 939 (2010) ("Chapman Amicus"); *see also* Samuel R. Bagenstos, The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation, 54 UCLA L. Rev. 1, 4 (2006) ("Indeed, the U.S. Department of Justice has devoted only a small cadre of lawyers to disability rights enforcement ....") (internal quotations and citations omitted).  Effective enforcement of Title III, therefore, requires "a combination of suits by the United States and litigation by individuals with disabilities who are aware of and encounter violations in their local communities."  Chapman Amicus, at 2.

27.     However, even though the ADA authorizes private lawsuits, its "provision for injunctive relief only removes the incentive for most disabled persons who are injured by inaccessible places of public accommodation to bring suit."  *D'Lil v. Best W. Encino Lodge & Suits*, 538 F.3d 1031, 1040 (9th Cir. 2008) (internal quotations omitted).  As a result, "most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled ...." *Id*.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

28.     While such plaintiffs have sometimes been disparaged –including by the RCDA here – they are in fact a necessary component of ADA enforcement.  As courts in California have stated, "[f]or the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA."  *Id*. (citing *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007)).

29.     Commentators have noted that the activities of a relatively small number of high-volume litigants is the result of the "highly complex, detailed, and contextual" nature of the ADA's rules, and the need for lawyers to specialize in order to viably prosecute such cases.  Bagenstos, at 13.  Yet, even in light of the advocacy of so-called serial or high-volume litigants, "a strong consensus is emerging among experts that the ADA's public accommodations title is underenforced."  Bagenstos, at 4 ("The ADA's public accommodations title is massively underenforced …").

30.     On information and belief, the ADA is massively under-enforced in Riverside County, in part due to the RCDA's misguided views on the statute as demonstrated herein and the resulting chilling effect that the RCDA's prosecutorial actions against ADA plaintiffs have (and will continue to have) on protected enforcement activities under the ADA.  Some of the rampant discrimination against persons with mobility disabilities in Riverside County is also likely the result of "benign neglect, apathy and indifference" on the part of the owners and operators of public accommodations and commercial facilities.  The ADA recognizes that such apathy and indifference is a form of unlawful discrimination.  *Parr v. L & L Drive-Inn Restaurant*, 96 F. Supp. 2d 1065 (D. Hawaii 2000).  Whatever the cause, many Riverside County businesses are slow to comply with the ADA's requirements regarding removal of barriers effecting people with mobility disabilities, the removal of which is easily accomplishable without undue burden or expense.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

31.     Since 2019, Plaintiffs have brought dozens of ADA lawsuits that resulted in specific remedial changes and disability access improvements being made in compliance with the ADA at locations throughout Riverside County and elsewhere to the benefit of Estrada, the disabled community, and the general public, all of which is consistent with the purpose of the private enforcement provisions of the ADA.  Plaintiffs also presently have Current Cases pending in this District that seek additional remedial changes and improvements as authorized by the ADA.

32.     Moreover, because of the Prosecution and related actions by the RCDA, efforts to identify and remedy ADA violations through private enforcement actions brought by Cornell's clients, including Estrada, have been and will continue to be thwarted.  Since Plaintiffs' arrest through today's date, they have not filed any new ADA lawsuits.

33.     Plaintiffs have investigated and prepared more than two dozen potential ADA cases on behalf of Estrada.  These cases are ripe and have been vetted through a third party investigator, who has verified the ADA violations.  While Estrada is ready to file these lawsuits, Plaintiffs are being forced to withhold these cases from filing because of our fear of further reprisal by the RCDA.  Accordingly, the Prosecution and the associated actions by the RCDA are creating a situation in which known ADA violations are being allowed to continue all over Riverside County.

C.     **The County's Bad Faith Prosecution**

34.     Since at least April 2019, the RCDA has evidenced a pattern of bringing meritless legal actions against mobility disabled plaintiffs and their legal representatives in what amounts to a campaign of intimidation, coercion, threats, interference, and retaliation for filing ADA enforcement actions against ADA plaintiffs and their counsel in Riverside County.

35.     An example of one such meritless legal action by the RCDA was set forth in Riverside County Case Number RIC1902577, which was brought under the

- 8 -

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

guise of "ADA abuse" and which alleged that mobility disabled plaintiffs and their lawyers targeted small businesses in Riverside County with lawsuits that amounted to extortion (the "Rutherford Action").

36. In the Rutherford Action, the RCDA alleged that two litigants, two law firms, and four attorneys engaged in an unlawful business practice in violation of the unfair competition law (the UCL) (Bus. & Prof. Code, § 17200, *et. seq.*), by filing and pursuing approximately 120 "fraudulent ADA lawsuits," "falsely accusing" Riverside County businesses and individuals of violating the ADA in order to "extort monetary settlements" from the defendants in the ADA lawsuits.

37. The Rutherford Action was dismissed by the Superior Court with prejudice, a decision that was upheld by the Fourth Appellate District Court on December 23, 2020. A true and correct copy of the Rutherford appellate opinion is attached hereto as **Exhibit C**.

38. On March 8, 2022, undaunted by the state courts' determination that the Rutherford Action could not proceed under the UCL, and in furtherance of its objective of continuing chilling of disability rights advocacy, the RCDA filed the Criminal Complaint against Plaintiffs.

39. Despite the fact that all of Plaintiffs' ADA lawsuits were filed exclusively in federal court, the Criminal Complaint pays no heed to federal law that protects Plaintiffs from criminal prosecution in connection with federal pleadings. Forcing Plaintiffs to incur the burden and expense of defending the criminal prosecution in state court in disregard of federal protections is contrary to the plain language of the ADA and the will of Congress. 42 U.S.C. § 12203; 28 C.F.R. § 36.206; 18 U.S.C. § 1001(b).

40. The RCDA's conduct and the Criminal Complaint violate Plaintiffs' Constitutional rights of free speech and petition, conflict with federal law that protects filing ADA lawsuits and investigative conduct related thereto, undermine clearly stated Congressional intent regarding matters exclusively within federal

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 9 -

jurisdiction, and ignore federal law intended to protect parties and their attorneys from prosecution arising from the content of federal pleadings.

### D.    The Unreasonably Aggressive Arrests

41.    At or about 7:00 a.m. on March 10, 2022, at the direction of and/or with the participation of the RCDA, Plaintiffs were arrested at their respective homes by teams of law enforcement personnel.

42.    Law enforcement officers entered Estrada's home with guns drawn and riot shields up.  Estrada was removed from his morning shower, arrested, and made to wait naked outside while his home was ransacked by law enforcement.

43.    Estrada's mobile phone and computer were seized, his domestic partner was detained and harassed, and he was interrogated for hours by law enforcement without an attorney present.

44.    The following image shows law enforcement's siege on Estrada's home as captured by Estrada's home security camera at the time of his arrest:



FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

45.    Cornell was simultaneously awoken at home by a team of gun-wielding tactical law enforcement personnel banging on the door of his home and shouting into a loudspeaker outside in his residential neighborhood.

46.    Cornell was arrested and taken into custody while his home was searched by law enforcement.  Cornell was never contacted by the RCDA prior to the arrest.

47.    Cornell was transported fifty miles in handcuffs, was booked at the criminal jail in downtown Riverside (where he was forced to strip naked), was blood and DNA tested, and was shuffled between holding cells with other criminal arrestees for hours until bonding out of custody.

48.    Despite the non-violent nature of the charges set forth in the Criminal Complaint, despite Cornell having no criminal record, no record of attorney discipline, and no prior history of arrest, and despite Cornell being an officer of the Court and a member in good standing of the State Bar of California, the RCDA did not contact Cornell to notify him of the charges or request that he or Estrada volunteer themselves for arrest.

49.    The RCDA orchestrated and executed their simultaneous aggressive arrests to intentionally prevent Estrada from obtaining the benefit of consultation with his attorney during his interrogation by police.  Why the RCDA believed that heavily armed SWAT-style arrests were necessary or appropriate against civil rights attorneys and their disabled clients for charges related to alleged misrepresentations in court pleadings remains to be determined, but is suggestive of animus and malice.

**E.    <u>The Libelous Press Release</u>**

50.    Within hours of the arrest, the RCDA published a false and defamatory press release on its website broadcasting the arrest and allegations of widespread and sweeping "fraud and deceit" against Cornell, knowing full well that Cornell has ADA lawsuits on file in the Central District of California.  This press release was issued for the sole purpose of besmirching Cornell, interfering with Current Cases

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

and with civil rights advocacy in general, and causing damage to Cornell's professional reputation as a lawyer.[1]

51.   A true and correct recitation of content from the Press Release is set forth below:[2]

> "RIVERSIDE – Two men, including an attorney, have been charged by the DA's Office with filing fraudulent lawsuits against small business owners in Riverside County pertaining to alleged violations of the Americans with Disabilities Act (ADA) and conspiring to deceive involved parties during the litigation of those lawsuits ... Cornell … of Big Bear; and … Estrada … of Homeland, have been charged with six felonies including conspiracy and filing a false document. Cornell has been an attorney in California since 2000. Both defendants were arrested the morning of March 10.
>
> The defendants have filed more than 60 lawsuits against individuals and small businesses in Riverside County since 2019 alleging they were violating the ADA. The investigation showed that the defendants had specifically targeted the small businesses they sued as well as making misrepresentations in the legal documents they filed. To obtain monetary settlements, Estrada claimed to have been denied access to the businesses they sued.
>
> Similar fraudulent lawsuits alleging ADA violations have been going on for years.
>
> The Riverside County District Attorney's Office supports accessibility rights for disabled persons but strongly maintains that ADA laws should not be manipulated solely for financial benefit as alleged in this case."

52.   Despite the fact that the Criminal Complaint alleged violations with respect to only <u>three</u> specific ADA cases that were voluntarily settled and resolved

[1]   https://rivcoda.org/community-info/news-media-archives/two-men-including-an-attorney-charged-with-filing-fraudulent-american-with-disabilities-act-lawsuits

[2]   Personal identifying information published in the Press Release has been redacted.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

several years ago, the Press Release grossly exaggerated the scope of the charges in an intentional ploy to interfere with Current Cases, to disparage Cornell in his professional capacity as an attorney, to create the impression of widespread "fraud," to harass Plaintiffs, and for the purpose of tarnishing Cornell's professional reputation.

53.     The RCDA made blatant misrepresentations in the Press Release:

> "The Riverside County District Attorney's Office supports accessibility rights for disabled persons but strongly maintains that ADA laws should not be manipulated **solely** **for financial benefit** as alleged in this case" (emphasis added).

54.     Webster's Dictionary Online defines "solely" as follows: "not involving … anything else."  In other words, the RCDA broadly announced and disseminated its false representation that the ADA lawsuits filed by Plaintiffs resulted in a financial benefit "and nothing else."

55.     In fact, the three ADA lawsuits that are the subject of the Criminal Complaint each resulted in written settlement agreements pursuant to which the defendants agreed to remediate specific disability access barriers.  Other ADA lawsuits have resulted in disability access improvements with absolutely no financial benefit –  actually resulting in unreimbursed costs incurred in securing the necessary ADA compliance "and nothing else."  The RCDA's statement is thus false and misleading, and amounts to trade libel.

56.     At least fifty (50) Riverside County ADA lawsuits resulted in written settlement agreements whereby the settling defendants authorized Cornell to advise the public that the parties had achieved "satisfactory settlements … under which remedial work will be completed at the facility in the interest of justice and fairness."  The three lawsuits that form the basis for the Criminal Complaint were among them.  Accordingly, the RCDA's allegation that the ADA lawsuits consisted of "fraud and deceit" and were brought "solely for financial benefit" is totally and

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

completely without merit or foundation, by the admissions of the parties to those actions.

57. The RCDA's bias and animus towards Plaintiffs and the Protected Activities is evidenced by the RCDA's malicious retaliation and criminal threats against Plaintiffs, its plain effort to inflict emotional distress on Plaintiffs, its disparagement of Plaintiffs in public writings, its broadcasting and disseminating false and exaggerated press releases about fictional "ADA fraud," its arrest, detention, and prosecution of Plaintiffs, and its actions causing Plaintiffs to expend financial resources to defend against the RCDA's retaliation, intimidation, and coercion.

58. Libelous press releases and SWAT-style arrests of disabled persons and attorneys for loosely alleged non-violent crimes committed in the context of protected federal civil rights advocacy are unjustified and portray animus and bias. Moreover, the motivation for the RCDA's conduct is highly suspect in light of the impending June 2022 election for the office of District Attorney in Riverside and the seeming effort by the RCDA to generate media attention.

59. The RCDA's conduct herein has been disgraceful and is plainly below the standard expected of public officers in the pursuit of justice. *People v. Davenport*, 13 Cal. App. 632, 642-43 (3d Dist. 1910) ("everyone familiar with the execution of the criminal law knows that … the district attorney must …. be mindful of the rights of the defendant and endeavor to maintain that equipoise of judgment and demeanor so becoming to one engaged in the pursuit and administration of justice.").

## F.    The Criminal Complaint Has No Chance of Success on the Merits

60. The RCDA oversteps its bounds by intruding into areas of exclusive federal jurisdiction. Congress is vested with the power to implement the restrictions and protections it deems necessary for the furtherance of federal policies. This includes (1) the implementation of criminal penalties arising from alleged deception

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

in federal processes, (2) protections against the prosecution of parties and their attorneys in connection with alleged deceptive content federal pleadings, (3) protections against retaliation and interference by public entities arising from Protected Activities, and (4) protections of First Amendment rights.

61.     The RCDA's effort to criminalize the filing of ADA lawsuits is a flagrant violation of the anti-retaliation and anti-interference provisions of the ADA, is contradictory to clear congressional intent behind the ADA and its enforcement scheme, is predicated on a self-serving, incomplete and inaccurate assessment of Article III standing, and violates exclusive federal jurisdiction, the supremacy clause, the ADA, and Plaintiffs' First Amendment freedoms of speech and petition.

62.     The ADA constitutes express authorization for the Court to enjoin the Prosecution under 28 U.S.C. § 2283.  *Dilworth v. Riner*, 343 F.2d 226, 230 (1965).

## FIRST CAUSE OF ACTION

### Violations of Article III of the U.S. Constitution

### *Exclusive Federal Jurisdiction*

### (By Plaintiffs Against All Defendants)

63.     Plaintiffs incorporate by reference the foregoing paragraphs of this First Amended Complaint as though fully set forth herein.

64.     The ADA lawsuits filed by Cornell on behalf of Estrada were federal processes with no connection to the state of California.  They were filed exclusively in federal court and alleged causes of action that arose under federal question jurisdiction.

65.     Standing arises under Article III of the Constitution and is interpreted and applied by federal courts according to federal standards.  The alleged "false statements" that form the basis of the Criminal Complaint relate to the content of federal court pleadings and improperly attempt to raise Article III standing issues in a manner inconsistent with binding Ninth Circuit authorities:

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- ***Chapman v. Pier 1 Imps**. (U.S.), Inc*., 631 F.3d 939, 944: "An ADA plaintiff can establish standing to sue for injunctive relief either by demonstrating deterrence," **or** "by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility."  Thus, "[d]emonstrating an intent to return to a noncompliant accommodation is but **one way** for an injured plaintiff to establish Article III standing to pursue injunctive relief." *Id.* at 949 (emphasis added).  "A disabled individual . . . suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there." *Id*.

- ***Civil Rights Educ. & Enft Ctr. v. Hosp. Properties Tr.***, 867 F.3d 1093, 1102 (9th Cir. 2017):  "We also conclude that motivation is irrelevant to the question of standing under Title III of the ADA."

- ***Gordon v. Virtumundo, Inc***., 575 F.3d 1040, 1069 (9th Cir. 2009):  "There are a few areas in which our developing statutory law has embraced the concept of permitting claims by those who insert themselves in the controversy for the express purpose of creating a lawsuit … we accord standing to individuals who sue defendants that fail to provide access to the disabled in public accommodation as required by the [ADA], even if we suspect that such plaintiffs are hunting for violations just to file lawsuits.") (Gould, J., concurring).

- ***Doran v. 7-Eleven, Inc***., 524 F.3d 1034,1042, fn. 5 (9th Cir. 2008): "Once a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III to bring his claim for injunctive relief forward."

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

- ***Lindsay v. Mulne***, No. 2:19-cv-01166-VAP-GJSx, 2019 WL 13026400, at 49 (C.D. Cal. Nov. 21, 2019):  "[I]n the ADA context, a tester who enters a business and, without an independent desire to patronize that business, poses as a patron, and collects evidence about noncompliance with the ADA has standing to bring an ADA action."

- ***Johnson v. Alhambra & O Assocs***., No. 2:19-CV-00103-JAM-DB, 2019 WL 2577306, at *3 (E.D. Cal. June 24, 2019):  "[A]n ADA plaintiff's motivations are irrelevant to the standing inquiry."  (Internal citations omitted.)

66.     The protections afforded to Plaintiffs for filing the ADA lawsuits arise under federal statutes.  The power to regulate the administration of the federal courts, including litigation procedures and the content of pleadings, is exclusively within the jurisdiction of the federal courts and is regulated by federal law as set forth in the Federal Rules of Civil Procedure.

67.     The power of punishment for offering false statements in a federal judicial proceeding belongs to the government in whose tribunals that proceeding is had.  *In re Loney*, 134 U.S. 372, 375 (1890).  California courts affirm the exclusive role of the federal courts in matters arising from the laws of the United States as exercised in federal tribunals.  When criminal charges arise that are alleged to have occurred in the course of the execution of the laws of the United States, the acts cannot subject the parties to punishment under state law.  *People v. Hassan*, 168 Cal. App. 4th 1306, 1318 (2008) (quoting *People v. Kelly*, 38 Cal. 145, 150-51 (1869)).

68.     The RCDA exceeds the scope of its power and authority by ignoring the protections of 18 U.S.C. § 1001(b), 42 U.S.C. § 12203 and 28 C.F.R. § 36.206, by attempting to prosecute under state laws inapplicable to federal processes, and by violating Article III in its effort to usurp the power of the federal authorities to regulate the content of pleadings and conduct of proceedings in federal court.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

69.     Under the doctrine of exclusive federal jurisdiction, the RCDA's retaliatory and coercive conduct chills the exercise of zealous civil rights advocacy and undermines and interferes with the adversarial process.  The RCDA's conduct is unconstitutional and cannot be permitted to continue.

70.     The RCDA improperly invades exclusive federal jurisdiction by, *inter alia*:

    a.      Prosecuting Plaintiffs for the Protected Activities in contradiction to protections afforded by 18 U.S.C. § 1001(b);

    b.      Prosecuting Plaintiffs for the Protected Activities in violation of 42 U.S.C. § 12203; and

    c.      Prosecuting Plaintiffs for the Protected Activities in violation of 28 C.F.R. § 36.206.

71.     The RCDA's harassment, interference intimidation, threats and coercion against Plaintiffs continues by virtue of the criminal prosecution, is ongoing, and will continue until the RCDA is restrained by an order of this Court.

## SECOND CAUSE OF ACTION

### Violations of Article V, Section 2 of the U.S. Constitution

#### *Supremacy Clause – Federal Preemption*

#### (By Plaintiffs Against All Defendants)

72.     Plaintiffs incorporate by reference the foregoing paragraphs of this First Amended Complaint Complaint as though fully set forth herein.

73.     The RCDA's conduct violates Article VI, Section 2 of the United States Constitution, which establishes that the federal Constitution, and federal law generally, takes precedence over state laws.

74.     The Supremacy Clause prohibits states from interfering with the federal government's exercise of its constitutional powers and from assuming any functions that are exclusively entrusted to the federal government.  It declares the Constitution, laws, and treaties of the federal government to be the supreme law of

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

the land to which judges in every state are bound regardless of state law to the contrary.

75.     Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law.  Such a conflict arises when compliance with both federal and state regulations is a physical impossibility or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

76.     Congressional purpose in this respect is plainly stated in 18 U.S.C. § 1001(b), 42 U.S.C. § 12203, and 28 C.F.R. § 36.206.  18 U.S.C. § 1001(b) excepts Plaintiffs from and protects them against criminal prosecution based on the content of pleadings filed in federal court for the purpose of preventing a chilling effect on zealous advocacy.  Moreover, 42 U.S.C. § 12203 and 28 C.F.R. § 36.206 specifically protect Plaintiffs for engaging in Protected Activities under the ADA for the purpose of affecting Congress's intended sweeping remedial and societal changes intended by the ADA with the necessity of private enforcement.

77.     Cal. Penal Code § 115 and Cal. Bus. & Prof. Code § 6128 as applied by the RCDA in the Criminal Complaint conflict with 18 U.S.C. § 1000(b).  Therefore, Section 1001(b) preempts the RCDA's prosecution of Cornell under Cal. Penal Code § 115 and Cal. Bus. & Prof. Code § 6128 as applied in this case.

78.     Cal. Penal Code § 115 and Cal. Bus. & Prof. Code § 6128 conflict with 42 U.S.C. § 12203 and 28 C.F.R. § 36.206 as applied by the RCDA in the Criminal Complaint because the ADA prohibits retaliation and interference with Cornell in connection with the Protected Activities.  Therefore, 42 U.S.C. § 12203 and 28 C.F.R. § 36.206 preempt the RCDA's prosecution of Plaintiffs under Cal. Penal Code § 115 and Cal. Bus. & Prof. Code § 6128 as applied in this case.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

79.     The RCDA's violations of federal law are ongoing, are causing irreparable harm, and will continue until the RCDA is restrained by an order of this Court.

## THIRD CAUSE OF ACTION

**Violations of the Americans with Disabilities Act**

**42 U.S.C. § 12203 – Retaliation**

**(By Plaintiffs Against All Defendants)**

80.     Plaintiffs incorporate the prior allegations of this First Amended Complaint by reference as if fully set forth herein.

81.     The ADA makes it unlawful to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a).

82.     The ADA further renders it unlawful "to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed … any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

83.     The Protected Activities constitute Plaintiffs' exercise of rights protected by the ADA and are thus entitled to the protections of 42 U.S.C. § 12203.

84.     The RCDA's conduct constitutes unlawful retaliation against Plaintiffs for engaging in the Protected Activities in violation of Section 12203(a).  The RCDA's conduct also constitutes unlawful coercion, intimidation, threats and interference with the exercise of Plaintiffs' protected rights under the ADA in violation of Section 12203(b).

85.     The Criminal Complaint brought by the RCDA has no chance of success on the merits and was brought for malicious purpose of harassing and intimidating Plaintiffs, of coercing Plaintiffs to stop prosecuting ADA enforcement

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

actions against Riverside County defendants, to threaten Plaintiffs in their liberty and professions, to chill the advocacy of ADA plaintiffs in Riverside County, and to retaliate against Plaintiffs for bringing ADA lawsuits against Riverside County defendants.

86.     The conduct of the RCDA, including the Criminal Complaint and all investigative and prosecutorial activities related thereto, have been materially adverse to Plaintiffs, whose Protected Activities were the direct and proximate but-for cause of the Criminal Complaint and the RCDA's conduct.  Current Cases have been and are being detrimentally affected by the RCDA's conduct.

87.     The RCDA's conduct was and is in bad faith and for a malicious purpose in violation of Section 12203.  The RCDA's conduct is part of a policy and practice of unlawful retaliation, coercion, threats, intimidation, interference, and harassment by the RCDA disabled plaintiffs and their attorneys, is continuing, and will continue unless and until enjoined by an order of this Court.

## FOURTH CAUSE OF ACTION

### Violations of 28 C.F.R. § 36.206 – Interference

### (By Plaintiffs Against All Defendants)

88.     Plaintiffs incorporate the prior allegations of this First Amended Complaint by reference as if fully set forth herein.

89.     Plaintiffs' Protected Activities are entitled to the protections of 28 C.F.R. § 36.206.  28 C.F.R. § 36.206 states as follows:

> (a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part;

> (b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

(c) Illustrations of conduct prohibited by this section include, but are not limited to:

(1) Coercing an individual to deny or limit the benefits, services, or advantages to which he or she is entitled under the Act or this part;

(2) Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation;

(3) Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights; or

(4) Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this part.

90.    The RCDA's conduct constitutes unlawful retaliation by a public entity against Plaintiffs for engaging in the Protected Acts in violation of Section 36.206(a).  The RCDA's conduct constitutes unlawful coercion, intimidation, threats, and interference with Plaintiffs' exercise of protected rights under the ADA in violation of Section 36.206(b).

91.    The Criminal Complaint brought by the RCDA has no chance of success on the merits and was brought for malicious purpose of harassing and intimidating Plaintiffs, of coercing Plaintiffs to stop prosecuting ADA enforcement actions against Riverside County defendants, to publicly defame Plaintiffs, to threaten Plaintiffs in their liberty and profession, to chill the advocacy of ADA plaintiffs in Riverside County, to threaten Plaintiffs with felony convictions, to

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

interfere with Current Cases and to retaliate against Plaintiffs for bringing ADA lawsuits against Riverside County defendants.

92.      The conduct of the RCDA, including the Criminal Complaint and all investigative and prosecutorial activities related thereto, have been materially adverse to Plaintiffs, whose Protected Activities were the direct and proximate but-for cause of the Criminal Complaint and the RCDA's conduct.

93.      Plaintiffs and the Current Cases have been and are being detrimentally affected by the RCDA's conduct, which will continue unless and until enjoined by an order of this Court.

## FIFTH CAUSE OF ACTION

### Violations of U.S. Const., Amend. I

### (By Plaintiffs Against All Defendants)

94.      Plaintiffs incorporate the prior allegations of this First Amended Complaint by reference as if fully set forth herein.

95.      The First Amendment guarantees "the right of the people … to petition the Government for a redress of grievances."  As such, the First Amendment protects Plaintiffs' rights to free speech and petition for redress of grievances as it relates to the ADA lawsuits Plaintiffs filed in federal court.

96.      The RCDA's prosecution of Plaintiffs violates the First Amendment.

97.      The Criminal Complaint brought by the RCDA has no chance of success on the merits and was brought for malicious purpose of harassing and intimidating Plaintiffs, of coercing Plaintiffs to stop prosecuting ADA enforcement actions against Riverside County defendants, to publicly defame Plaintiffs, to threaten Plaintiffs in their liberty and professions, to chill the advocacy of ADA plaintiffs in Riverside County, to threaten Plaintiffs with felony convictions, to interfere with Current Cases, and to retaliate against Plaintiffs for bringing ADA lawsuits against Riverside County defendants.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

98.     The conduct of the RCDA, including the Criminal Complaint and all investigative and prosecutorial activities related thereto, have been materially adverse to Plaintiffs, whose Protected Activities were the direct and proximate but-for cause of the Criminal Complaint and the RCDA's conduct.  Plaintiffs and the Current Cases have been and are being detrimentally affected by the RCDA's conduct.

99.     The RCDA's conduct is performed in bad faith and for a malicious purpose.  The RCDA's conduct is part of a policy and practice of unlawful retaliation, coercion, threats, intimidation, and harassment by the RCDA of disabled plaintiffs and their attorneys, is continuing, and will continue unless and until enjoined by an order of this Court.

## **PRAYER FOR RELIEF**

Plaintiffs pray to this Court for declaratory relief, preliminary and permanent injunctive relieve, and all other appropriate relief including, but not limited to, the following:

1.     A judicial declaration pursuant to 28 U.S.C. § 2201(a) that the Prosecution violates the ADA;

2.     Issuance of a preliminary and permanent injunction ordering the RCDA to stay the Prosecution of Plaintiffs;

3.     Issuance of a preliminary and permanent injunction ordering the RCDA to dismiss the Prosecution with prejudice;

4.     Issuance of a preliminary and permanent injunction ordering the RCDA to retract its press release concerning Cornell;

5.     Issuance of a preliminary and permanent injunction restraining and enjoining the RCDA from interfering with Plaintiffs' pending lawsuits under the ADA;

6.     Issuance of a preliminary and permanent injunction restraining and enjoining the RCDA from using the fruits of its investigation in further acts of

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

retaliation or interference against Plaintiffs;

      7.    For the payment of attorneys' fees and costs incurred by Plaintiffs herein; and

      8.    For any other and/or further relief deemed appropriate by this Court.

Dated: May 26, 2022          **CALLAHAN & BLAINE, APLC**

By: */s/ Gaurav K. Reddy*
Gaurav K. Reddy
Attorney for Plaintiffs Ross Cornell and
Bryan EstradaAttorneys for Plaintiffs
Ross Cornell and Bryan Estrada

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**EXHIBIT A**

**CASH BOND
RECOMMENDED:**
DEF#1  $30,000.00
DEF#2  $30,000.00
Warrant:
Warrant:

MICHAEL A. HESTRIN
DISTRICT ATTORNEY

AGENCY#: DAR2020-118-001/RDA

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAR 0 9 2022

K. Vasquez  *KV*

DSR

MAR 1 0 2022

R

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF RIVERSIDE
### (Riverside)

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff,

v.

BRYAN EDUARDO ESTRADAIBARRA
AKA: BRYAN EDUARDO ESTRADA-IBARRA
DOB: ▓▓▓▓▓

ROSS CORNELL
DOB: ▓▓▓▓▓

Defendant(s).

D.A.# 396576

CASE NO. RIF 2 2 01190

FELONY COMPLAINT

### COUNT 1

That the above named defendant(s) BRYAN EDUARDO ESTRADAIBARRA AND ROSS CORNELL committed a violation of Penal Code section 115, a felony, in that on or about 9/1/2020, in the County of Riverside, State of California, the defendant(s) did willfully, unlawfully, and knowingly procure and offer a false and forged instrument, to wit: ADA lawsuit, Bryan Estrada v. Corona Animal Hospital, et al., Central District case no. 5:20-cv-01797, which instrument, if genuine, might be filed, registered, and recorded, under any law of this state and the United States. [16/2/3 prison]

### COUNT 2

That the above named defendant(s) BRYAN EDUARDO ESTRADAIBARRA AND ROSS CORNELL committed a violation of Penal Code section 182, subdivision (a)(1), a felony, in that on or about 9/1/2020, in the County of Riverside, State of California, the defendant(s) did willfully and unlawfully conspire together and with another person and persons whose identity is unknown to commit the crime of, attorney deceit and collusion with intent to deceive the court or any party, in violation of Business and Profession Code section 6128, subdivision (a), a felony, and that pursuant to and for the purpose of carrying out the objects and purposes of the aforesaid conspiracy, the said defendants and/or defendant and other uncharged co-conspirators thereafter committed the following overt act and acts at and in the County of Riverside: [16/2/3 or variable prison]

Overt Act No. 1

November 7, 2019 to March 8, 2022 – filing over 57 Americans with Disabilities Act ("ADA") lawsuits for business locations Estrada never intended to patronize or intended to return to patronize

Overt Act No. 2

February 27, 2020 – March 8, 2022 – filing ADA lawsuits against other veterinary clinics Estrada never took a pet for services, intended to take a pet for services or intended to return to take a pet for services

Overt Act No. 3

November 7, 2019 to March 8, 2022 – visiting the location of 1565 Yorba Street, Corona, CA 92882 on only one occasion, if at all, to conduct a drive by of the business known as Corona Animal Hospital

Overt Act No. 4

September 1, 2020 – filing an ADA lawsuit, Central District case no. 5:20-cv-01797, and representing that said ADA lawsuit was being presented for a proper purpose, that said ADA lawsuit contained claims warranted by existing law, and that the factual contentions contained in said ADA lawsuit had evidentiary support

Overt Act No. 5

September 1, 2020 – March 8, 2022 – claiming and maintaining that Estrada personally encountered ADA barriers, in June of 2020, at the business located at 1565 Yorba Street, Corona, CA 92882 and known as Corona Animal Hospital

Overt Act No. 6

October 19, 2020 – filing a notice of settlement in Central District case no. 5:20-cv-01797, after taking money from the business known as Corona Animal Hospital to settle that ADA lawsuit

COUNT 3

· That the above named defendant(s) BRYAN EDUARDO ESTRADAIBARRA AND ROSS CORNELL committed a violation of Penal Code section 115, a felony, in that on or about 11/13/2020, in the County of Riverside, State of California, the defendant(s) did willfully, unlawfully, and knowingly procure and offer a false and forged instrument, to wit: ADA lawsuit, Bryan Estrada v. Park Lane Mobile Homes, et al., Central District case no. 5:20-cv-02362, which instrument, if genuine, might be filed, registered, and recorded, under any law of this state and the United States.  [16/2/3 prison]

COUNT 4

That the above named defendant(s) BRYAN EDUARDO ESTRADAIBARRA AND ROSS CORNELL committed a violation of Penal Code section 182, subdivision (a)(1), a felony, in that on or about 11/13/2020, in the County of Riverside, State of California, the defendant(s) did willfully and unlawfully conspire together and with another person and persons whose identity is unknown to commit the crime of attorney deceit and collusion with intent to deceive the court or any party, in violation of Business and Profession Code section 6128, a felony, and that pursuant to and for the purpose of carrying out the objects and purposes of the aforesaid conspiracy, the said defendants and/or defendant and other uncharged co-conspirators thereafter committed the following overt act and acts at and in the County of Riverside: [16/2/3 or variable prison]

Overt Act No. 1

November 7, 2019 to March 8, 2022 – filing over 57 Americans with Disabilities Act ("ADA") lawsuits for business locations Estrada never intended to patronize or intended to return to patronize

Overt Act No. 2

November 7, 2019 to March 8, 2022 – visiting the location of 3900 S. Temescal Street, Corona, CA 92879 on only one occasion, if at all, to conduct a drive by of the business known as Park Lane Mobile Homes

Overt Act No. 3

November 13, 2020 – filing an ADA lawsuit, Central District case no. 5:20-cv-02362, and representing that said ADA lawsuit was being presented for a proper purpose, that said ADA lawsuit contained claims warranted by existing law, and that the factual contentions contained in said ADA lawsuit had evidentiary support

Overt Act No. 4

November 13, 2020 – claiming and maintaining that Estrada personally encountered ADA barriers, in June of 2020, at the business located at 3900 S. Temescal Street, Corona, CA 92879 and known as Park Lane Mobile Homes

Overt Act No. 5

April 5, 2021 – filing a notice of settlement in Central District case no. 5:20-cv-02362, after taking money from the business known as Park Lane Mobile Homes to settle that ADA lawsuit

## COUNT 5

That the above named defendant(s) BRYAN EDUARDO ESTRADAIBARRA AND ROSS CORNELL committed a violation of Penal Code section 115, a felony, in that on or about 11/18/2020, in the County of Riverside, State of California, the defendant(s) did willfully, unlawfully, and knowingly procure and offer a false and forged instrument, to wit: ADA lawsuit, Bryan Estrada v. Ultra Imports Auto Parts, et al., Central District case no. 5:20-cv-02403, which instrument, if genuine, might be filed, registered, and recorded, under any law of this state and the United States.  [16/2/3 prison]

## COUNT 6

That the above named defendant(s) BRYAN EDUARDO ESTRADAIBARRA AND ROSS CORNELL committed a violation of Penal Code section 182, subdivision (a)(1), a felony, in that on or about 11/18/2020, in the County of Riverside, State of California, the defendant(s) did willfully and unlawfully conspire together and with another person and persons whose identity is unknown to commit the crime of attorney deceit and collusion with intent to deceive the court or any party, in violation of Business and Profession Code section 6128, subdivision (a), a felony, and that pursuant to and for the purpose of carrying out the objects and purposes of the aforesaid conspiracy, the said defendants and/or defendant and other uncharged co-conspirators thereafter committed the following overt act and acts at and in the County of Riverside: [16/2/3 or variable prison]

### Overt Act No. 1

November 7, 2019 to March 8, 2022 – filing over 57 Americans with Disabilities Act ("ADA") lawsuits for business locations Estrada never intended to patronize or intended to return to patronize

### Overt Act No. 2

November 7, 2019 to March 8, 2022 – visiting the location of 12490 Magnolia Avenue, Riverside, CA 92503 on only one occasion, if at all, to conduct a drive by of the business known as Ultra Imports Auto Parts

### Overt Act No. 3

November 18, 2020 – filing an ADA lawsuit, Central District case no. 5:20-cv-02403, and representing that said ADA lawsuit was being presented for a proper purpose, that said ADA lawsuit contained claims warranted by existing law, and that the factual contentions contained in said ADA lawsuit had evidentiary support

### Overt Act No. 4

November 18, 2020 – claiming  and maintaining that Estrada personally encountered ADA barriers, in June of 2020, at the business located at 12490 Magnolia Avenue, Riverside, CA 92503 and known as Ultra Imports Auto Parts

Overt Act No. 5

March 15, 2021 – filing a notice of settlement in Central District case no. 5:20-cv-02403, after taking money from the business known as MCA Realty to settle that ADA lawsuit

## MARSY'S LAW

Information contained in the reports being distributed as discovery in this case may contain confidential information protected by Marsy's Law and the amendments to the California Constitution Section 28. Any victim(s) in any above referenced charge(s) is entitled to be free from intimidation, harassment, and abuse. It is unlawful for defendant(s), defense counsel, and any other person acting on behalf of the defendant(s) to use any information contained in the reports to locate or harass any victim(s) or the victim(s)'s family or to disclose any information that is otherwise privileged and confidential by law. Additionally, it is a misdemeanor violation of California Penal Code § 1054.2a(3) to disclose the address and telephone number of a victim or witness to a defendant, defendant's family member or anyone else. Note exceptions in California Penal Code § 1054.2a(a) and (2).

## DISCOVERY REQUEST

Pursuant to Penal Code section 1054.5, subdivision (b), the People are hereby informally requesting that defense counsel provide discovery to the People as required by Penal Code section 1054.3.

I declare under penalty of perjury upon information and belief under the laws of the State of California that the foregoing is true and correct.

Dated: March 8, 2022

Michael A. Hestrin
District Attorney

By: Timothy S. Brown
Deputy District Attorney

jm

**<u>EXHIBIT B</u>**



(http://rivcoda.org/)

THE OFFICE    VICTIM SERVICES    BUREAU OF INVESTIGATION    RESOURCES    CRIME PREVENTION UNIT    DANGERS OF FENTANYL    COMMUNITY INFO

# News/Media/Archives

## NEWS / MEDIA / ARCHIVES



### Two men, including an attorney, charged with filing fraudulent American with Disabilities Act lawsuits

RIVERSIDE – Two men, including an attorney, have been charged by the DA's Office with filing fraudulent lawsuits against small business owners in Riverside County pertaining to alleged violations of the Americans with Disabilities Act (ADA) and conspiring to deceive involved parties during the litigation of those lawsuits.

Ross Christopher Cornell, DOB: ███████, of Big Bear; and Bryan Eduardo Estrada, DOB: ███████ █, of Homeland, have been charged with six felonies including conspiracy and filing a false document. Cornell has been an attorney in California since 2000. Both defendants were arrested the morning of March 10.

The defendants have filed more than 60 lawsuits against individuals and small businesses in Riverside County since 2019 alleging they were violating the ADA. The investigation showed that the defendants had specifically targeted the small businesses they sued as well

**Archive**

**2022 (http://rivcoda.org/community-info/news-media-archives/acat/2/yeararchive/2022)**

8 (http://rivcoda.org/community-info/news-media-archives/acat/2/yeararchive/2022)
2022, March

(http://rivcoda.org/community-info/news-media-archives/acat/2/archive/3-2022)

3 (http://rivcoda.org/community-info/news-media-archives/acat/2/archive/3-2022)
2022, February

(http://rivcoda.org/community-info/news-media-archives/acat/2/archive/2-2022)

2 (http://rivcoda.org/community-info/news-media-archives/acat/2/archive/2-2022)
2022, January

(http://rivcoda.org/community-info/news-media-archives/acat/2/archive/1-2022)

3 (http://rivcoda.org/community-info/news-media-archives/acat/2/archive/1-2022)

**2021 (http://rivcoda.org/community-info/news-media-archives/acat/2/yeararchive/2021)**

37 (http://rivcoda.org/community-info/news-media-

as making misrepresentations in the legal documents they filed. To obtain monetary settlements, Estrada claimed to have been denied access to the businesses they sued.

Similar fraudulent lawsuits alleging ADA violations have been going on for years.

The Riverside County District Attorney's Office supports accessibility rights for disabled persons but strongly maintains that ADA laws should not be manipulated solely for financial benefit as alleged in this case.

Anyone with information about this case involving defendants Cornell and Estrada is asked to contact DA Senior Investigator John Gubernat at johngubernat@rivcoda.org (mailto:johngubernat@rivcoda.org). Please include your name and telephone number.

The case, RIF2201190, is being prosecuted by Deputy District Attorney Timothy Brown of the DA's Felony Prosecution Unit.

### # # #

archives/acat/2/yeararchive/2021)

**2020 (http://rivcoda.org/community-info/news-media-archives/acat/2/yeararchive/2020-1)**

30 (http://rivcoda.org/community-info/news-media-archives/acat/2/yeararchive/2020-1)

**2019 (http://rivcoda.org/community-info/news-media-archives/acat/2/yeararchive/2019-1)**

39 (http://rivcoda.org/community-info/news-media-archives/acat/2/yeararchive/2019-1)

---

**Documents to download**

📄 NEWS RELEASE -- Two men, including an attorney, charged with filing fraudulent American with Disabilities Act lawsuits (/DesktopModules/EasyDNNNews/DocumentDownload.ashx?portalid=0&moduleid=867&articleid=179&documentid=134)

---

Like 3       Tweet   Share       Share       Print



**EXHIBIT C**

## *People v. Rutherford*

Court of Appeal of California, Fourth Appellate District, Division Two

December 23, 2020, Opinion Filed

E073700

**Reporter**

2020 Cal. App. Unpub. LEXIS 8539 *; 2020 WL 7640848

THE PEOPLE, Plaintiff and Appellant, v. JAMES RUTHERFORD et al., Defendants and Respondents.

**Notice:** NOT TO BE PUBLISHED IN OFFICIAL REPORTS. *CALIFORNIA RULES OF COURT, RULE 8.1115(a)*, PROHIBITS COURTS AND PARTIES FROM CITING OR RELYING ON OPINIONS NOT CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED, EXCEPT AS SPECIFIED BY *RULE 8.1115(b)*. THIS OPINION HAS NOT BEEN CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED FOR THE PURPOSES OF *RULE 8.1115*.

**Subsequent History:** Time for Granting or Denying Review Extended *People v. Rutherford, 2021 Cal. LEXIS 2189 (Cal., Mar. 24, 2021)*

Review denied by *People v. Rutherford, 2021 Cal. LEXIS 2550 (Cal., Apr. 14, 2021)*

**Prior History:**  [*1] APPEAL from the Superior Court of Riverside County, No. RIC1902577, Sunshine S. Sykes, Judge.

**Disposition:** Affirmed.

## Core Terms

lawsuits, litigation privilege, violations, fraudulent, derivative, borrowed, communications, defendants', civil action, pursuing, alleges, unfair competition, judicial proceedings, perjury, proceedings, extortion, predicate, demurrer, criminal prosecution, business practice, deceit, unfair, criminal statute, parties, courts, voters, theft, cause of action, remedies, public prosecutor

**Counsel:** Michael A. Hestrin, District Attorney, Emily R. Hanks and Timothy S. Brown, Deputy District Attorneys, for Plaintiff and Appellant.

The Civil Justice Association of California and Fred J. Hiestand as Amicus Curiae on behalf of Plaintiff and

Appellant.

Bremer Whyte Brown & O'Meara, Benjamin L. Price and Courtney M. Serrato for Defendants and Respondents James Rutherford and The Association for Equal Access.

Callahan & Blaine, Daniel J. Callahan, David J. Darnell and Drew Harbur for Defendants and Respondents Law Offices of Babak Hashemi, Babak Hashemi, Manning Law, Joseph R. Manning, Michael J. Manning and Craig Cote.

**Judges:** FIELDS, J.; McKINSTER, Acting P. J. concurred. RAPHAEL, J., Concurring.

**Opinion by:** FIELDS, J.

## Opinion

I. INTRODUCTION

In this civil action, the People allege in their complaint that defendants and respondents, comprised of two litigants, two law firms, and four attorneys[1] (collectively, defendants), engaged in an unlawful business practice, in violation of the unfair competition law (the UCL) (*Bus. & Prof. Code, § 17200, et. seq.*), by filing and pursuing approximately 120 "fraudulent ADA lawsuits," falsely accusing Riverside County [*2] businesses and individuals of violating the Americans with Disabilities Act (the ADA) (*42 U.S.C. § 12181, et. seq.*), in order to extort monetary settlements from the defendants in the ADA lawsuits. The People seek to enjoin defendants

---

[1] Defendants and respondents are James Rutherford, an individual, The Association for Equal Access ("A4EA"), an unincorporated entity founded by Rutherford, two law firms, The Law Offices of Babak Hashemi ("Hashemi Law") and Manning Law, APC ("Manning Law"), and four attorneys, Babak Hashemi, Joseph R. Manning Jr., Michael J. Manning, and Craig Cote.

from filing and pursuing fraudulent ADA lawsuits, along with civil penalties of not less than $1,000,000 from each defendant, and "full restitution" to the victims of defendants' unfair "ADA lawsuit scheme."

The trial court sustained defendants' general demurrer to the People's complaint (*Code Civ. Proc., § 430.10, subd. (e)*), without leave to amend, and entered a judgment of dismissal on the ground that the litigation privilege (*Civ. Code, § 47, subd. (b)*) protected defendants' communications in filing and pursuing the ADA lawsuits. In this appeal, the People claim their UCL claim falls outside the scope of the privilege because it alleges that defendants violated three criminal statutes, each more specific in their operation than the privilege: *Penal Code section 484* (theft by false pretenses), *Penal Code section 523* (extortion by writing), and *Business and Professions Code section 6128, subdivision (a)* (deceit and collusion by attorneys). The People also claim that the privilege does not apply because they were not a party to the ADA lawsuits. We agree that the litigation privilege applies to the People's UCL claim, and we affirm the judgment **[*3]** of dismissal.

## II. FACTS AND PROCEDURE

### A. *The Allegations of the People's Complaint*[2]

James Rutherford is a plaintiff in approximately 120 lawsuits, filed in federal court, alleging ADA violations against "Riverside County individuals and/or businesses" (the ADA lawsuits). A4EA, an unincorporated entity founded by Rutherford, is a plaintiff in approximately 26 of the 120 ADA lawsuits in which Rutherford is also a plaintiff. Hashemi Law, and attorney Babak Hashemi, filed the approximate 26 ADA lawsuits in which Rutherford and A4EA are plaintiffs. Manning Law, and attorneys Joseph R. Manning, Jr., Michael J. Manning, and Craig Cote, filed the approximate 94 ADA lawsuits in which only Rutherford is plaintiff. Manning Law "typically" files ADA lawsuits on behalf of Rutherford, and Hashemi Law files ADA lawsuits on behalf of Rutherford and A4EA.

Defendants have collectively filed "some 323 lawsuits"—

approximately 300 in federal court, alleging ADA violations, and approximately 23 in state court, alleging violations of the Unruh Civil Rights Act (the Unruh Act) (*Civ. Code, § 51 et seq.*). The 300 federal court lawsuits also alleged violations of the Unruh Act, and include the 120 ADA lawsuits in which Rutherford, or Rutherford **[*4]** and A4EA, are plaintiffs.

The ADA lawsuits generally contain the "same boilerplate allegations." Each alleges that: Rutherford is a California resident with a qualified ADA disability (see *42 U.S.C. § 12102(2)*); Rutherford attempted to visit the businesses of the defendant(s) in the ADA lawsuits on certain dates or in given months; when Rutherford attempted to visit the businesses, he encountered at least one "'architectural barrier,'" for example, a non-ADA compliant handicap parking space, signage, curb ramp, or access route; as a result of these barriers, Rutherford was "deterred from patronizing" the businesses and "suffered difficulty, humiliation and/or frustration"; following his first attempted visit, and despite the architectural barriers and ADA violations, Rutherford intended to return to the businesses in order to avail himself of their goods and services and to ensure that they complied with the ADA. In each ADA lawsuit, Rutherford and A4EA sought injunctive relief to remedy the ADA violations, plus "mandatory minimum" damages of at least $4,000 for each alleged Unruh Act violation.

Rutherford did not visit any of the businesses sued in the ADA lawsuits "for good faith purposes"; rather, he **[*5]** visited each business for the sole purpose of initiating a federal ADA lawsuit against it. Rutherford also had no "good faith intention" to return to any of the businesses, and he did not return to any of the businesses after the ADA lawsuit against each business was filed. Rutherford was never "denied, by way of any architectural barriers, full access and/or full enjoyment at any of the businesses sued" in any of the ADA lawsuits, based on his claimed disabilities. Rutherford had been observed "on multiple occasions, walking and ambulating without difficulty," and engaging in behavior "inconsistent with the claims" in the ADA lawsuits. None of the businesses sued in the ADA lawsuits have any record of Rutherford entering their businesses, including video evidence, purchase or appointment records, or verbal or written complaints concerning the alleged ADA or Unruh Act violations. A4EA is controlled by Rutherford, has "no more than a few members," is "nothing more than a website," and was "used" by defendants "to increase fear and exact settlements" from the defendants sued in the ADA lawsuits.

---

[2] In keeping with our standard of review of the order sustaining the demurrer, we assume the truth of the complaint's well-pleaded, nonconclusory factual allegations. (*Blank v. Kirwan (1985) 39 Cal.3d 311, 318, 216 Cal. Rptr. 718, 703 P.2d 58*; *PGA West Residential Assn. Inc. v. Hulven Internat., Inc., (2017) 14 Cal.App.5th 156, 164, fn. 3, 168, 221 Cal. Rptr. 3d 353*.) We summarize those factual allegations in this section.

2020 Cal. App. Unpub. LEXIS 8539, *5

The complaint thus alleges that Rutherford lacked standing to file and maintain the ADA lawsuits, **[*6]** and that defendants were fully aware of Rutherford's lack of standing, and his ability to fully ambulate without aid, when each ADA lawsuit was filed. "Defendants colluded, conspired and/or otherwise agreed to engage in an ADA lawsuit scheme, designed to defraud, extract and/or extort money settlements from Riverside County individuals and businesses, based on the fraud, misrepresentations and false allegations contained in each and every one of the federal ADA lawsuits."

Based on defendants' pursuit and filing of the ADA lawsuits, the complaint alleges two causes of action against each defendant: the first for engaging in unfair competition in violation of *Business and Professions Code section 17200* (the UCL claim), and the second for making false and misleading statements in violation of *Business and Professions Code section 17500*. As part of its UCL claim, the complaint alleges that, by filing and pursuing the ADA lawsuits, each defendant violated *Penal Code sections 484* (grand theft) and 523 (extortion by writing).

The complaint further alleges that Hashimi Law, Manning Law, and the four attorney defendants[3] violated *Business and Professions Code sections 6106* (attorney's commission of any act involving moral turpitude, dishonesty, or corruption constitutes a cause for disbarment or suspension) and 6128 (attorney deceit or collusion, **[*7]** with intent to deceive the court or any party, is a misdemeanor), along with former rules 1-120 and 3-200 of the Rules of Professional Conduct.[4] The complaint seeks to enjoin defendants from engaging in the "unlawful, unfair, and fraudulent business practices" of filing and pursuing false ADA lawsuits; to impose a civil penalty of not less than $1,000,000 on each defendant, and "full restitution" to the victims of defendants' "ADA lawsuit scheme."

B. *Defendants' Demurrer and the Trial Court's Ruling*

---

[3] See footnote 1, *ante.*

[4] References to rules are to the Rules of Professional Conduct. Former rule 3-200 prohibited a California bar member from seeking, accepting, or continuing employment if the member knew or had reason to know that the objective of the employment was to bring an action or assert a position in litigation without probable cause. Former rule 1-200 prohibited a member of the California bar from knowingly assisting, soliciting, or inducing any violation of the rules or the State Bar Act. (*Bus. & Prof. Code, § 6000 et. seq.*)

Defendants filed a general demurrer to the complaint, that is, they claimed it failed to state a cause of action. (*Code Civ. Proc., § 430.10, subd. (e)*.) They argued that their alleged conduct and statements in filing and pursuing the ADA lawsuits were "absolutely protected by California's litigation privilege."[5] The People opposed the demurrer.

Following a hearing, the trial court concluded that it was very clear that the litigation privilege protected defendants' communications made in, and in furtherance of, the ADA lawsuits, and there was no reasonable possibility that the complaint could be amended to state a cause of action. The court thus sustained the demurrer, without leave to amend, and entered judgment dismissing the complaint. The People filed **[*8]** this timely appeal.

III. DISCUSSION

A. *Standard of Review*

A general demurrer to a complaint is properly sustained when the complaint fails to state facts sufficient to constitute a cause of action. (*Code Civ. Proc., § 430.10, subd. (e)*; see *Wittenberg v. Bornstein (2020) 51 Cal.App.5th 556, 566, 265 Cal. Rptr. 3d 192*.) Our review of the resulting judgment of dismissal is de novo. (*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc. (2017) 2 Cal.5th 505, 512, 213 Cal. Rptr. 3d 568, 388 P.3d 800*.)

In determining whether the complaint states a cause of action, we assume the truth of its well-pleaded factual allegations, but not contentions, deductions, or conclusions of fact or law. (*Aubry v. Tri-City Hospital Dist. (1992) 2 Cal.4th 962, 967, 9 Cal. Rptr. 2d 92, 831 P.2d 317*; *Blank v. Kirwan, supra, 39 Cal.3d at p. 318*.) We affirm the judgment of dismissal "'if any one of the

---

[5] Defendants alternatively claimed that their actions and communications in filing and pursuing the ADA lawsuits constituted protected petitioning activity under the First Amendment and the *Noerr-Pennington* doctrine, and that the second cause of action did not state a claim because they did not engage in any "advertising," as that term is used in *Business and Professions Code section 17500*. The trial court did not rule on these alternative grounds for the demurrer, given its conclusion that the litigation privilege applied to the entire complaint. We also do not reach these issues, given our conclusion that the litigation privilege applies to the People's UCL claim, and given that the People have abandoned their False Advertising Law (FAL) claim (*Bus. & Prof. Code, § 17500*). See footnote 6, *post.*

several grounds of demurrer is well taken.'" (*Wiseman Park, LLC v. Southern Glazer's Wine & Spirits, LLC (2017) 16 Cal.App.5th 110, 116, 223 Cal. Rptr. 3d 802*.)

On appeal, the plaintiff has the burden of showing that the facts pleaded in the complaint are sufficient to establish every element of the cause of action, and to overcome the legal grounds on which the trial court sustained the demurrer. (*Martin v. Bridgeport Community Assn., Inc. (2009) 173 Cal.App.4th 1024, 1031, 93 Cal. Rptr. 3d 405*.) The People have not met this burden. As we explain, the litigation privilege applies to the People's complaint, and the People have not shown that an exception to the privilege applies.

B. *The Litigation Privilege, Overview*

The litigation privilege, codified at *Civil Code section 47, subdivision (b)*, "states the long-established rule that publications made in the course of a judicial proceeding are absolutely privileged." (*Albertson v. Raboff (1956) 46 Cal.2d 375, 379, 295 P.2d 405* [*9] [former *Civ. Code, § 47(2)*].) The privilege has been given "broad application." (*Silberg v. Anderson (1990) 50 Cal.3d 205, 211, 266 Cal. Rptr. 638, 786 P.2d 365*.) Although it was originally enacted to immunize defendants from liability for the tort of defamation, the privilege currently applies to all communications, whether or not they amount to publications, and to all torts except malicious prosecution. (*Id. at p. 212*.)

The "usual formulation" is that the privilege applies "to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." (*Silberg v. Anderson, supra, 50 Cal.3d at p. 212*.) "The privilege 'is not limited to statements made during a trial or other [judicial or quasi-judicial] proceedings, but may extend to steps taken prior thereto, or afterwards.'" (*Action Apartment Assn., Inc. v. City of Santa Monica (2007) 41 Cal.4th 1232, 1241, 63 Cal. Rptr. 3d 398, 163 P.3d 89* (*Action Apartment Assn.*).)

The privilege serves important public policies. Its principal purpose is to afford litigants and witnesses "the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Silberg v. Anderson, supra, 50 Cal.3d at p. 213*.) The privilege also promotes the effectiveness of judicial proceedings and the administration of justice by encouraging "'open channels of communication and the presentation of evidence,'" and by enabling attorneys to

"zealously protect their clients' interests" without the threat of subsequent derivative tort actions. (*Id. at pp. 213-214*.) "'[It] is desirable to create an absolute privilege . . . not because we desire to protect the shady practitioner, but because **[*10]** we do not want the honest one to have to be concerned with [subsequent derivative tort] actions . . . .'" (*Id. at p. 214*.)

The privilege also serves to promote the finality of judgments: "[I]n immunizing participants from liability for torts arising from communications made during judicial proceedings, the [privilege] places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result." (*Silberg v. Anderson, supra, 50 Cal.3d at p. 214*.) "For our justice system to function, it is necessary that litigants assume responsibility for the complete litigation of their cause during the proceedings. To allow a litigant to attack the integrity of evidence after the proceedings have concluded, except in the most narrowly circumscribed situations, such as extrinsic fraud, would impermissibly burden, if not inundate, our justice system." (*Ibid.*)

Although the privilege is held to be "absolute in nature" to effect its purposes (*Silberg v. Anderson, supra, 50 Cal.3d at p. 215*), it is "not without limit." (*Action Apartment Assn., supra, 41 Cal.4th at p. 1242*.) In *Action Apartment Assn.*, our Supreme Court noted that the privilege does not apply in *criminal prosecutions* for perjury **[*11]** (*Pen. Code, § 118, et seq.*), subornation of perjury (*Pen. Code, § 127*), and filing a false crime report (*Pen. Code, § 148.5*). (*Action Apartment Assn., at p. 1246*.) Likewise, the privilege does not apply in criminal prosecutions or State Bar disciplinary proceedings for soliciting attorney business through runners or cappers (*Bus. & Prof. Code, §§ 6152-6153*), or for violating *Business and Professions Code section 6128*, which, as relevant here, makes it a misdemeanor for an attorney to engage in deceit or collusion with the intent to deceive the court or any party. (*Action Apartment Assn., at p. 1246*.)

The court in *Action Apartment Assn.* noted that these particular exceptions to the privilege "ha[ve] been guided by the 'rule of statutory construction that particular provisions will prevail over general provisions.'" (*Action Apartment Assn., supra, 41 Cal.4th at p. 1246*; *Civ. Code, § 1859*.) "Each of the above mentioned statutes is more specific than the litigation privilege and would be [rendered] significantly or wholly

inoperable if its enforcement were barred when in conflict with the privilege. The crimes of perjury and subordination of perjury would be almost without meaning if statements made during the course of litigation were protected from prosecution for perjury by the litigation privilege. The misdemeanors established by *Business and Professions Code section 6128* evince a legislative intent that certain attorney conduct not be protected from prosecution by the litigation privilege." **[\*12]**  (*Action Apartment Assn., at p. 1246*.)

"In all of the above examples," the court "found exceptions to the litigation privilege based on irreconcilable conflicts between the privilege and other coequal state laws." (*Action Apartment Assn., supra, 41 Cal.4th at p. 1247*; see *Hagberg v. California Federal Bank (2004) 32 Cal.4th 350, 361, 7 Cal. Rptr. 3d 803, 81 P.3d 244* ["*Section 47(b)*, of course, does not bar a criminal prosecution that is based on a statement or communication, when the speaker's utterance encompasses the elements of a criminal offense. (See, e.g., *Pen. Code, §§ 118* [perjury], 148.5 [false report of criminal offense].)"].) There is, however, no "exception for criminal prosecutions . . . inherent in the litigation privilege itself." (*Action Apartment Assn.*, p. 1246.)

Apart from whether the privilege applies in particular criminal prosecutions, the privilege has been held applicable in derivative civil actions based on allegations that the defendants violated a criminal statute, or committed perjury or fraud, in a prior action. (See, e.g., *Ribas v. Clark (1985) 38 Cal.3d 355, 358-359, 364-365, 212 Cal. Rptr. 143, 696 P.2d 637* [privilege applied in derivative civil action based on attorney's alleged violations of *Pen. Code §§ 631*, *637*, & *637.2* (invasion of privacy) in prior action]; *Steiner v. Eikerling (1986) 181 Cal.App.3d 639, 642-643, 226 Cal. Rptr. 694* [privilege applied in derivative civil action based on defendants' submission of forged and falsified will in prior probate proceeding]; *Herterich v. Peltner (2018) 20 Cal.App.5th 1132, 1141-1142, 229 Cal. Rptr. 3d 744* [privilege protected the defendant's malicious or fraudulent communications **[\*13]** in prior probate proceeding in derivative civil action for damages]; and *Doctors' Co. Ins. Servs. v. Superior Court (1990) 225 Cal.App.3d 1284, 1300, 275 Cal. Rptr. 674* [privilege applied in derivative civil action based on the defendant's alleged subordination of perjury in prior action].)

In other derivative civil actions, courts have held that the privilege *does not apply* if the action is based on a statute that is more specific in its operation than the

privilege, on the ground that the more specific statute would be rendered wholly or substantially inoperable if the privilege applied. (See, e.g., *Komarova v. National Credit Acceptance, Inc. (2009) 175 Cal.App.4th 324, 337-340, 95 Cal. Rptr. 3d 880* [privilege did not apply in civil action for damages for violations of Rosenthal Fair Debt Collection Practices Act (the Rosenthal Act) (*Civ. Code, § 1788 et seq.*)]; *People v. Persolve, LLC (2013) 218 Cal.App.4th 1267, 1275-1276, 160 Cal. Rptr. 3d 841* [privilege did not apply in People's UCL for violations of the Rosenthal Act and federal Fair Debt Collection Practices Act (*15 U.S.C. § 1692 et seq.*) (*Persolve*)]; *Banuelos v. LA Investment, LLC (2013) 219 Cal.App.4th 323, 328-335, 161 Cal. Rptr. 3d 772* [privilege did not apply to claim for retaliatory eviction under *Civ. Code, § 1942.5*]; and *People ex rel. Alzayat v. Hebb (2017) 18 Cal.App.5th 801, 807-808, 827-828, 226 Cal. Rptr. 3d 867* [privilege did not apply in People's qui tam action against plaintiff's employer for violating the Insurance Frauds Prevention Act (*Ins. Code, § 1871 et seq.*)].)

In contrast, courts have found that the privilege *does apply* in UCL actions that do not involve statutory violations more specific than the privilege. (See, e.g., *Rubin v. Green (1993) 4 Cal.4th 1187, 1193-1204, 17 Cal. Rptr. 2d 828, 847 P.2d 1044* (*Rubin*) [privilege barred UCL **[\*14]**  action against attorney and capper for wrongful solicitation of litigation against plaintiff in prior action]; *People ex rel. Gallegos v. Pacific Lumber Co. (2008) 158 Cal.App.4th 950, 955-956, 958-959, 70 Cal. Rptr. 3d 501* (*Gallegos*) [privilege barred People's UCL action for intentional misrepresentations and concealment of material facts in administrative proceedings under the California Environmental Quality Act (CEQA) (*Pub. Resources Code, § 21000 et seq.*)].)

C. *The Litigation Privilege Applies to the People's UCL Claim*

The People argue that their UCL claim—their first cause of action alleging that defendants engaged in unfair competition (*Bus. & Prof. Code, § 17200*), by filing and pursuing the false and fraudulent ADA actions—falls outside the scope of the litigation privilege.[6] They argue

---

[6] The People do not claim that their second cause of action against defendants for violating *Business and Professions Code section 17500* (FAL claim) in connection with the ADA lawsuits is exempt from the litigation privilege. Instead, the People confine their discussion to their UCL claim. Accordingly, we consider the People's FAL claim forfeited or abandoned. (*Sierra Palms Homeowners Assn. v. Metro Gold*

Case 5:22-cv-00789-JWH-SHK   Document 18   Filed 05/26/22   Page 42 of 47   Page ID #:215

Page 6 of 11
2020 Cal. App. Unpub. LEXIS 8539, *14

that their UCL claim is predicated on three criminal statutes, each more specific than the privilege: *Penal Code sections 484* (grand theft) and 523 (extortion through writing), and *Business and Professions Code section 6128, subdivision (a)* (attorney deceit or collusion with intent to mislead court or any party is a misdemeanor). They further argue that the applications of these three predicate statutes would be "significantly undermined" if the privilege barred their UCL claim. We conclude that the privilege bars the People's UCL claim.

We begin by noting that "[t]he UCL sets out three different kinds of business acts or practices that may constitute **[*15]** unfair competition: the unlawful, the unfair, and the fraudulent. (*Bus. & Prof. Code, § 17200*.)" (*Rose v. Bank of America, N.A. (2013) 57 Cal.4th 390, 394, 159 Cal. Rptr. 3d 693, 304 P.3d 181*.) "By proscribing 'any unlawful' business practice, '[*Business and Professions Code] section 17200* "borrows" violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable.'" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 180, 83 Cal. Rptr. 2d 548, 973 P.2d 527*.) "[B]y borrowing requirements from other statutes, the UCL does not serve as a mere enforcement mechanism [of the other statutes]. [Rather, the UCL] provides its own distinct and limited equitable remedies for unlawful business practices, using other laws only to define what is 'unlawful.'" (*Rose v. Bank of America, N.A., at p. 397*.)

In their UCL claim, the People allege that defendants engaged in all three types of unfair competition. They claim defendants committed an unfair, unlawful, *and* fraudulent business practice—by violating *Penal Code sections 484* and *523*, and *section 6128 of Business and Professions Code*—in filing and pursuing the ADA lawsuits. That is, they claim that defendants committed the crimes of theft and extortion by writing, and that the attorney defendants also committed or consented to commit fraud or deceit, with the intent to mislead the court or the defendants in the ADA lawsuits.[7]

---

*Line Foothill Extension Construction Authority (2018) 19 Cal.App.5th 1127, 1136, 228 Cal. Rptr. 3d 568*.)

[7] *Penal Code section 484* defines the crime of theft as including the taking of personal property of another "by any false or fraudulent representation or pretense." *Penal Code section 523* criminalizes, as a form of extortion (*Pen. Code, § 519*), sending a letter or a writing to a person threatening to expose or impute to the person a "deformity, disgrace, or crime." (*Pen. Code, § 519*.) *Section 6128 of the Business and*

By their UCL claim, the People are *not* enforcing the three predicate criminal statutes that provide the basis of their UCL claim. (*Rose v. Bank of America, N.A., supra, 57 Cal.4th at p. 397*.) Rather, **[*16]** they are pursuing a civil enforcement action for injunctive relief, civil penalties, and restitution, based on defendants' unfair, unlawful, and fraudulent business practice of violating the three predicate criminal statutes in filing and pursuing the ADA lawsuits. The People do not dispute, and it is clear, that all of the factual allegations underlying their UCL claim fall within the "usual formulation" of the litigation privilege. (*Silberg v. Anderson, supra, 50 Cal.3d at p. 212*.) Instead, they argue their UCL claim is excepted from the privilege because the predicate statutes underlying it are more specific than the privilege, and the operation of these statues would be substantially undermined if the privilege applied to their UCL claim.

When the "borrowed" statute underlying a UCL claim is more specific than the privilege, the conduct "specifically prohibited" by the borrowed statute is excepted from the privilege. (*Persolve, supra, 218 Cal.App.4th at p. 1276*.) But here, the crimes of theft (*Pen. Code, § 484*) and extortion by writing (*Pen. Code, § 523*) are not more specific than the privilege because they can be committed in many contexts, not only in a judicial proceeding or to achieve the objects of the litigation. (See *Silberg v. Anderson, supra, 50 Cal.3d at p. 212*.) Nor, as we later explain, would the operation of these statutes be substantially **[*17]** undermined by the application of the privilege to the People's UCL claim. (Cf. *Persolve, supra, at p. 1275* [The Rosenthal Act and the federal Fair Debt Collection Practices Act would be rendered "significantly inoperable" and "negated" if they "did not prevail over the privilege where the two conflict."].)

Although our Supreme Court has noted that the litigation privilege does not apply to a *criminal prosecution* for violation of *Business and Professions Code section 6128* (*Action Apartment Assn., supra, 41 Cal.4th at p. 1246*), the People are not criminally prosecuting defendants for violating this statute. Rather, the People's UCL claim amounts to a derivative civil action against defendants based on fraudulent communications that defendants made in, or in furtherance of, the filing and pursuit of their ADA

---

*Professions Code*, *subdivision (a)*, provides in relevant part that, "Every attorney is guilty of a misdemeanor who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party."

lawsuits. (*Silberg v. Anderson, supra, 50 Cal.3d at p. 212*.) The People's UCL claim is precisely the type of derivative civil action that the privilege was intended to preclude. (See *id. at pp. 216-218*; *Rubin, supra, 4 Cal.4th at pp. 1193-1204*.)

*Rubin* is instructive. There, a co-owner of a mobilehome park, Rubin, sued one of the park's residents, Green, and Green's attorneys, for various torts including interfering in the park owners' contractual relations with park residents, and for committing an unfair business practice (*Bus. & Prof. Code, § 17200*) by unlawfully soliciting the park's residents to sue the park's owners in a prior [*18] lawsuit, in violation of *Business and Professions Code sections 6152* and *6153*. (*Rubin, supra, 4 Cal.4th at p. 1191-1192, 1196-1197, 1200*.) The *Rubin* court held that the litigation privilege barred Rubin's tort and UCL claims. (*Id. at pp. 1196-1197*.) It reasoned that the privilege protected the defendants' factual misrepresentations to the park residents, together with their other communications made during, and in furtherance of, their filing of the prior lawsuit, even if their conduct amounted to unlawful attorney solicitation. (*Id. at p. 1196*.)

In rejecting Rubin's argument that the privilege did not bar his UCL claim, the *Rubin* court noted that our Courts of Appeal had, in various cases, "rejected the claim that a plaintiff may, in effect, 'plead around' absolute barriers to relief by relabeling the nature of the action as one brought under the unfair competition statute." (*Rubin, supra, 4 Cal.4th at p. 1201*.) The court further reasoned that, because the defendants' conduct was "clearly communicative and otherwise within the scope" of the privilege, permitting "the same communicative acts to be the subject of an injunctive relief proceeding" under the UCL would "upset the carefully constructed balance between 'the freedom of an individual to seek redress in the courts and the interest of a potential defendant in being free from unjustified litigation [*19] . . . .'" (*Id. at pp. 1202-1203*.)

The *Rubin* court's reasoning applies to the People's UCL claim. Even if defendants committed theft, extortion, and deceit or fraud (*Pen. Code, §§ 484, 523*; *Bus. & Prof. Code, § 6128*) in filing and pursuing the ADA lawsuits, permitting the People's UCL claim would undermine the purposes of the privilege. (*Rubin, supra, 4 Cal.4th at pp. 1193-1204*; *Silberg v. Anderson, supra, 50 Cal.3d at p. 212*.) Additionally, the availability of criminal, civil, and State Bar sanctions for fraudulent conduct in judicial proceedings supports taking an "expansive view of the privilege in civil actions,"

including in this action. (*Hagberg v. California Federal Bank, supra, 32 Cal.4th at pp. 371-372*; *Rubin, at pp. 1198-1199, 1203-1204*; *Silberg v. Anderson, at pp. 218-219* ["[I]n a good many cases of injurious communications, other remedies aside from a derivative suit . . . will exist and may help deter injurious [communications] during litigation. Examples of these remedies include criminal prosecution for perjury . . . or subordination of perjury . . . ."].)[8]

------------------------

[8] At oral argument, the People asked this court to, at minimum, allow their UCL claim to proceed against the attorney defendants based on the attorney's alleged misdemeanor violations of *section 6128, subdivision (a), of the Business and Professions Code* in filing and pursuing the ADA lawsuits. As they did in their briefing, the People maintain that *Business and Professions Code section 6128* is more specific than the litigation privilege. We agree. As our Supreme Court has observed, "The *misdemeanors* established by *Business and Professions Code section 6128* evince a legislative intent that certain attorney conduct not be protected *from prosecution* by the litigation privilege." (*Action Apartment Assn., supra, 41 Cal.4th at p. 1246*, added italics.) But as we have noted, the People, by their UCL claim, are not prosecuting the attorney defendants for any misdemeanor violations of *Business and Professions Code section 6128*. Rather, the People are seeking to hold all of the defendants civilly liable under the UCL based on their alleged fraud and deceit in filing and pursuing the ADA lawsuits.

This is a critical distinction. As we have noted, courts have held that the litigation privilege does not apply to a UCL claim that is based on a "borrowed" statute that is more specific than the privilege, but only if the more specific statute would be rendered wholly or substantially inoperable if the privilege applied. (See, e.g., *Persolve, supra, 218 Cal.App.4th at p. 1276* ["Where, as here, the 'borrowed' statute is more specific than the litigation privilege *and the two are irreconcilable*, unfair competition law claims based on conduct specifically prohibited by the borrowed statute are excepted from the litigation privilege." (Italics added.)].) The privilege and *Business and Professions Code section 6128* are not irreconcilable. That is, the latter statute will not be rendered wholly or substantially inoperable by applying the privilege to the People's UCL claim, to the extent the UCL claim is based on the attorney defendants' alleged violations of the statute. Indeed, People may criminally prosecute the attorney defendants for their alleged misdemeanor violations of *Business and Professions Code section 6128* in filing and pursuing the ADA lawsuits. The attorney defendants are also subject to State Bar disciplinary proceedings for the same alleged misdemeanor violations. Further, allowing the People's *derivative* UCL action to proceed against the attorney defendants based on their alleged violations of the statute in the ADA lawsuits would undermine one of the principal

The People argue that, "if affirmed, the trial court's order will immunize respondents' criminal fraud scheme and frustrate the People's enforcement of criminal laws designed to protect against attorney deceit, extortion, and theft." We respectfully disagree. As noted, defendants' alleged misconduct is not immunized by application of [*20] the litigation privilege to this lawsuit. There remains the availability of criminal charges[9] and other remedies for defendants' alleged fraudulent conduct that would not conflict with the privilege, including State Bar sanctions and civil sanctions in the ADA lawsuits themselves. As courts have also recognized, the unavailability of derivative civil liability, in a subsequent civil suit, for fraudulent conduct in litigation is "'"the necessarily harsh result in extending a privilege to false and fraudulent statements made in the course of a judicial proceeding. We accept that result, however, on account of the overriding importance of the competing public policy in favor of enhancing the finality of judgments and avoiding unending postjudgment derivative litigation—a policy which places the obligation on parties to ferret out the truth while they have the opportunity to do so *during* litigation."'" (*Herterich v. Peltner, supra, 20 Cal.App.5th at p. 1142*.) The "privilege extends to fraudulent statements, even when made to a court, if they were made in furtherance of litigation." (*Id. at p. 1141*; *Flatley v Mauro (2006) 39 Cal.4th 299, 322, 46 Cal. Rptr. 3d 606, 139 P.3d 2* ["The litigation privilege has been applied in 'numerous cases' involving 'fraudulent communication or perjured testimony.'"].)

We also reject the People's claim [*21] that privilege should not apply here because their UCL claim is based on statutory predicate offenses. The People maintain that UCL claims based on statutory predicate offenses, like theirs, "do not offend the primary purpose of the litigation privilege" because they are "'equitable in nature; damages cannot be recovered.'" But *all* UCL actions are equitable in nature; the remedies are limited to injunctive relief and restitution. (*Prakashpalan v. Engstrom, Lipscomb & Lack (2014) 223 Cal.App.4th 1105, 1133, 167 Cal. Rptr. 3d 832*.) Additionally, *all derivative* UCL actions—those based on communications made in, or in furtherance of, a prior

purposes of the privilege: promoting the effectiveness of judicial proceedings by encouraging attorneys to "zealously protect their clients' interests" without fear of subsequent derivative actions. (*Silberg v. Anderson, supra, 50 Cal.3d at p. 214*.)

[9] We note the People are not pursuing criminal charges against defendants by this action.

judicial proceeding—undermine free and open access to the courts and the finality of judgments, unless the action is based on a statute that is more specific than the privilege, and the statute would be vitiated or significantly undermined if the privilege applied. (See, e.g., *Persolve, supra, 218 Cal.App.4th at p. 1275*.)

*D. The Privilege Applies to the People's UCL Claim, Even Though the People Were Not a Party to the ADA Lawsuits and Are Suing Defendants on Behalf of the Public*

Lastly, the People claim the litigation privilege "must yield" to their UCL claim because they were not a party to the ADA lawsuits, and they are not a private litigant but are representing the public in their UCL [*22] claim. They argue, "if criminal conduct is tailored to coincide with a judicial proceeding," and if prosecutors are barred from pursuing UCL actions to enjoin such conduct, then "not only have [the underlying criminal] statutes been rendered significantly inoperable, but the purpose of the [UCL] will also have been thwarted." They stress that the UCL is broad and was intended "'to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur.'" (*People v. McKale (1979) 25 Cal.3d 626, 632, 159 Cal. Rptr. 811, 602 P.2d 731*.) In effect, the People ask this court to create an exception to the privilege where a UCL action, based on criminal predicate statutes, is brought by a law enforcement agency that was not a party to the prior action in which the underlying privileged communications were made. Following our Supreme Court in *Action Apartment Assn.*, and the Court of Appeal in *Gallegos*, we decline to do so.

In *Action Apartment Assn.*, the plaintiffs, a group of landlords, sued the City of Santa Monica, claiming the litigation privilege preempted the City's "Tenant Harassment" ordinance. (*Action Apartment Assn., supra, 41 Cal.4th at pp. 1237, 1239*.) Among other things, the ordinance authorized the City to seek civil and criminal penalties against a landlord for *suing a* [*23] *tenant* to recover possession of a rental unit when the landlord lacked a reasonable factual or legal basis for the suit. (*Id. at p. 1237*.) The court in *Action Apartment Assn.* agreed with the plaintiffs that the privilege preempted this part of the ordinance: "Whether actions pursuant to this provision of [the ordinance] are brought by the City, a third party, or a tenant, such actions alleging that a landlord had improperly filed an action to recover possession of rental housing would severely restrict landlords' freedom of access to the courts." (*Id. at p. 1243*.)

2020 Cal. App. Unpub. LEXIS 8539, *23

The *Action Apartment Assn.* court squarely rejected the City's suggestion that any claims brought by parties not involved in the underlying litigation, including claims brought by government entities, are not barred by the privilege. (*Action Apartment Assn., supra, 41 Cal.4th at p. 1247*.) The court acknowledged that, in *Rubin*, it "*stated in dictum* 'that the policy underlying the unfair competition statute can be vindicated by multiple parties other than plaintiff,' including the Attorney General, district attorneys, certain city attorneys, and 'members of the public who, unlike plaintiff, are not adversaries in collateral litigation involving the same attorneys.'" (*Ibid.*, citing *Rubin, supra, 4 Cal.4th at p. 1204*, italics added.) But the **[\*24]** court expressly "decline[d] to recognize a broad exception to the litigation privilege for any party who did not participate in the underlying litigation," because "[a]n exception to the litigation privilege for all suits brought by parties who were not involved in the underlying litigation would be antithetical to the privilege's purposes. . . . Derivative litigation brought by parties who did not participate in the underlying litigation, like litigation brought by parties who did participate, would pose an external threat of liability that would deter potential litigants, witnesses, and others from participating in judicial proceedings." (*Id. at pp. 1247-1248*.)

The Court of Appeal reached the same conclusion in *Gallegos*. There, the People brought a UCL action against Pacific Lumber Co. for its alleged fraudulent representations and concealments of facts in prior administrative proceedings under CEQA. (*Gallegos, supra, 158 Cal.App.4th at pp. 954-956*.) The company's fraud allegedly resulted in it obtaining administrative approval for an increased rate of timber harvesting, as well as decreased environmental mitigation requirements on the company's timberlands. (*Id. at pp. 954-955*.) The People sought civil penalties and other relief under the UCL to prevent the company **[\*25]** "from realizing profits on timber harvested pursuant to [the company's] allegedly fraudulently obtained" plans and approvals. (*Id. at p. 956*.) The *Gallegos* court affirmed the order sustaining the company's general demurrer to the UCL complaint on the ground that the litigation privilege applied. (*Id. at pp. 954, 959*.)

Following *Action Apartment Assn.*, the *Gallegos* court rejected the People's claim that the privilege did not apply to their UCL complaint because they (1) were not a party to the underlying CEQA proceedings, and (2) are a government entity, suing on behalf of the public rather than a private litigant. (*Gallegos, supra, 158 Cal.App.4th at pp. 960-961*.) For the same reasons, we

reject the People's argument that the privilege does not apply to their UCL claim, and that their UCL claim is not truly a derivative suit because they were not a party to the ADA lawsuits and are suing defendants on behalf of the public. As we have explained, the People's UCL claim is precisely the type of derivative civil action that the privilege was intended to preclude. (*Action Apartment Assn., supra, 41 Cal.4th at pp. 1247-1248*.)

Lastly, in *Action Apartment Assn.*, our Supreme Court acknowledged that the Legislature could create exceptions to the litigation privilege for parties and nonparties to prior judicial proceedings. (*Action Apartment Assn., supra, 41 Cal.4th at p. 1247*.) **[\*26]** The People's supporting amicus curiae claims that the *voters* created an exception to the litigation privilege *for public prosecutors* in UCL actions when, in 2004, the voters approved Proposition 64 (Gen. Elec. (Nov. 2, 2004)). We disagree.

Proposition 64 revised the UCL's standing requirements to provide that *private plaintiffs* can no longer bring UCL claims on behalf of themselves or the public, unless they "suffered injury in fact and . . . lost money or property as a result of . . . unfair competition." (*Bus. & Prof. Code, § 17204*, as amended by voters, Prop. 64, *§ 3*, eff. Nov. 3, 2004.) But we discern no intent and purpose in the voters' enactment of Proposition 64 to exempt UCL actions, brought by public prosecutors, from the litigation privilege.

As our Supreme Court has explained, "'[i]n 2004, the electorate substantially revised the UCL's standing requirement; where once private suits could be brought by "any person acting for the interests of itself, its members or the general public" (former *§ 17204*, as amended by Stats. 1993, ch. 926, *§ 2*, p. 5198), now private standing is limited to any "person who has suffered injury in fact and has lost money or property" as a result of unfair competition (*§ 17204*, as amended by Prop. **[\*27]** 64, as approved by voters, Gen. Elec. (Nov. 2, 2004) *§ 3*; see *Californians for Disability Rights v. Mervyn's, LLC [(2006)] 39 Cal.4th [223,] 227-228, 46 Cal. Rptr. 3d 57, 138 P.3d 207* . . . ). The intent of this change was to confine standing to those actually injured by a defendant's business practices and to curtail the prior practice of filing suits on behalf of "'clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant . . . .'" (*Californians for Disability Rights, at p. 228*, quoting Prop. 64, § 1, subd. (b)(3).)'" (*Kwikset Corp. v. Superior Court (2011) 51 Cal.4th 310, 320-321, 120 Cal. Rptr. 3d 741, 246*

*P.3d 877*.)

Amicus curiae argues that the "intent and purpose" of Proposition 64 was *actually* to "clarify and strengthen the unique role of public prosecutors in enforcing the UCL to protect the public from 'shakedown' lawsuits" like defendants' ADA lawsuits. But Proposition 64 did not change the standing requirements for public prosecutors to bring UCL claims. Nor did it in any way concern the litigation privilege or amend *Civil Code section 47, subdivision (b)*.

Amicus curiae points to nothing in the provisions of Proposition 64, or in its ballot summary or arguments, to support its claim. (See *B.M. v. Superior Court (2019) 40 Cal.App.5th 742, 753, 253 Cal. Rptr. 3d 426* [in determining intent of voter initiative, a court looks to the provisions of the initiative and may also look to the ballot materials in support of its passage].) We discern no voter intent and purpose, either **[*28]** in the language of Proposition 64 or in its ballot summary and arguments, to repeal or limit the litigation privilege of *Civil Code section 47, subdivision (b)*, when a public prosecutor brings a derivative UCL claim against a defendant based on communications that the defendant made in or in furtherance of a prior judicial proceeding.[10] For the reasons explained, the litigation privilege applies to the People's UCL claim.

IV. DISPOSITION

The judgment of dismissal is affirmed. Defendants shall recover their costs on appeal. (*Cal. Rules of Court, rule 8.278*.)

**Concur by:** RAPHAEL, J.

# Concur

RAPHAEL, J., Concurring.

I respectfully concur separately because I think we

cannot reject this lawsuit because it is based on communications protected by the litigation privilege, as we do, without holding more broadly that an unfair competition law (UCL) lawsuit cannot be maintained in the face of a litigation privilege bar. It does not work to try to distinguish *People v. Persolve, LLC (2013) 218 Cal.App.4th 1267, 160 Cal. Rptr. 3d 841* (*Persolve*), which allowed a UCL lawsuit founded on privileged communications. We must either follow *Persolve* or disagree with it.

The reason for the exception to the *Civil Code, section 47, subdivision (b)* (*section 47(b)*) litigation privilege for statutes more specific than the privilege is that we presume that the legislature would not have enacted a statute where the privilege would **[*29]** preclude nearly all its uses. But the UCL is wide ranging, creating a civil cause of action for conduct that is unfair, unlawful, or fraudulent. "The UCL . . . is not necessarily 'more specific than the litigation privilege and would [not] be significantly or wholly inoperable if its enforcement were barred when in conflict with the privilege.'" (*People ex rel. Gallegos v. Pacific Lumber Co. (2008) 158 Cal.App.4th 950, 962, 70 Cal. Rptr. 3d 501*.) Consequently, we cannot infer that the legislature meant for the UCL itself to trump the privilege, so it does not fall into the exception.

*Persolve*, however, held that we are to examine whether the statute "borrowed" by the UCL in a case is more specific than the litigation privilege, and, if so, the UCL lawsuit can go forward just as a case based directly on that borrowed statute could. (*Persolve, supra, 218 Cal.App.4th at p. 1276*.) One of the borrowed statutes in this case is *Business and Professions Code section 6128* (*section 6128*), which criminalizes certain types of attorney deceit. As *section 6128* is more specific than the privilege, it "evince[s] a legislative intent" that prosecution of the conduct is not barred by the privilege. (*Action Apartment Assn, Inc. v. City of Santa Monica (2007) 41 Cal.4th 1232, 1246, 63 Cal. Rptr. 3d 398, 163 P.3d 89*.) Under a straightforward application of *Persolve*, this UCL lawsuit would *not* be barred to the extent it relies on ("borrows") *section 6128*.

By holding this lawsuit *is* barred without rejecting *Persolve*, today's opinion suggests **[*30]** that, among statutes that are more specific than the privilege, some can serve as a predicate for a UCL lawsuit but some cannot. I do not see basis for distinguishing in this way among the statutes that are more specific than the privilege.

---

[10] We note the Legislature is quite capable of expressing its intent to exempt public prosecutors from the application of a law where it desires to do so. For example, *Code of Civil Procedure section 425.16, subdivision (d)*, exempts public prosecutors from anti-SLAPP lawsuits. It provides as follows: "This section shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor."

2020 Cal. App. Unpub. LEXIS 8539, *30

The principal reason today's opinion offers for distinguishing *Persolve* is that *section 6128* can be enforced in ways other than through the UCL, including criminal prosecutions and state bar proceedings. (Maj. opn., *ante*, at p. 18, fn. 8.) This reason cannot distinguish *Persolve* because it would mean that *Persolve* itself was wrongly decided: the state and federal debt collection statutes "borrowed" in *Persolve* also can be enforced without the UCL. Those statutes can be enforced through an individual debtor's private right of action (*Civ. Code § 1788.30*), through a class action (see *Timlick v. National Enterprise Systems, Inc. (2019) 35 Cal.App.5th 674, 689, 247 Cal. Rptr. 3d 575)*, or by Federal Trade Commission enforcement actions (*15 U.S.C. § 1692l*). A few debt collection violations can even be enforced through misdemeanor prosecutions (see *Civ. Code § 1788.16*).

If *Persolve* is correct to require us to focus on whether the borrowed statute is more specific than the privilege, I think we would be compelled to let this lawsuit proceed to the extent it borrows *section 6128*, which is more specific than the privilege.

But I am **[*31]** not persuaded that *Persolve* correctly treats the UCL as an empty vessel for the "borrowed" statute. Rather, it seems that we should focus on the UCL itself, which is not narrower than the privilege and thus not an exception to it.

First, in other contexts, our Supreme Court has emphasized that the UCL is not "a mere enforcement mechanism" but a substantive statute that "provides its own distinct and limited equitable remedies for unlawful business practices, using other laws only to define what is 'unlawful.'" (*Rose v. Bank of America, N.A. (2013) 57 Cal.4th 397*; see also *Stop Youth Addiction, Inc. v. Lucky Stores, Inc. (1998) 17 Cal.4th 553, 566, 71 Cal. Rptr. 2d 731, 950 P.2d 1086* [superseded by statute on other grounds] ["SYA seeks relief from alleged unfair competition, not to enforce the Penal Code."]) This counsels for a focus on whether the UCL itself is broader than the privilege, not on whether the borrowed statute is. In practical terms as well, the UCL is not merely a redundant way to enforce a borrowed statute, because it allows civil plaintiffs (including class action plaintiffs) to bring lawsuits to enforce criminal statutes.

Secondly, the UCL is not necessary to give meaning to the statutes it borrows, at least when they can be enforced directly. To harmonize *section 6128* with the *section 47(b)* privilege, the former has been construed to be an exception **[*32]** to the latter when a district

attorney brings a *section 6128* prosecution. The Legislature, we infer, would not have intended to enact a crime that could never be enforced due to the privilege. It is not, however, necessary that a UCL action founded on *section 6128* be an exception to the statutory privilege, because both *section 6128* and the UCL have effect in other ways. In sum, if we agree with *Persolve* that we are to focus on the borrowed statute in a UCL action, I think we would have to approve of this lawsuit to the extent that it borrows *section 6128*. It is because I think we instead must focus on the UCL itself that I concur in the disposition, and I agree with the otherwise well reasoned opinion.

RAPHAEL, J.

**End of Document**