**CALLAHAN & BLAINE, APLC**
David J. Darnell (SBN 210166)
ddarnell@callahan-law.com
Gaurav K. Reddy (SBN 259496)
greddy@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for Plaintiffs Ross Cornell and
Bryan Estrada

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ross Cornell, an individual, and Bryan Estrada, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>Office of the District Attorney, County of Riverside, and Does 1-100, inclusive;<br><br>Defendants. | Case No. 5:22-cv-00789 JWH (SHKx)<br><br>[Assigned to Hon. John W. Holcomb]<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>**REDACTED VERSION OF DOCUMENT TO BE FILED UNDER SEAL**<br><br>[*Filed concurrently with Declarations of Ross Cornell, Bryan Estrada, Charles Ballard, and David J. Darnell, Objections to Defendant's Evidence, and Response to Defendant's Evidentiary Objections*]<br><br>Date: July 8, 2022<br>Time: 9:00 a.m.<br>Courtroom: 9D<br><br>Action Filed: May 9, 2022<br>Trial Date: None set |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................1

II. FACTS RELEVANT TO THE RCDA'S OPPOSITION ..........................2

    A. Estrada's Documented Visits to All Three Businesses........................2

        1. Corona Animal Hospital ..............................................................3

        2. Park Lane Mobile Homes ............................................................4

        3. Ultra Import Auto Parts ...............................................................5

    B. The RCDA's Interrogation of Estrada ..................................................6

    C. The Irreparable Harm Caused by the RCDA's Actions .......................7

III. ARGUMENT .....................................................................................................7

    A. *Younger* Abstention Is Not Applicable to this Case .............................7

        1. The ADA's Anti-Retaliation Provisions .....................................7

        2. Exceptions to the *Younger* Doctrine Apply in this Case ............8

    B. The Act of Congress Exception to 28 U.S.C. § 2283 ..........................9

    C. The Standard for Issuance of a Preliminary Injunction .......................9

        1. Likelihood of Success on the Merits ..........................................9

            a. *Retaliation and Interference Under the ADA.*...................9

            b. *Standing under the ADA.*................................................10

        2. Irreparable Harm........................................................................11

        3. The Balance of Equities and Public Interest.............................12

IV. CONCLUSION................................................................................................12

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Armstrong v. Newsom*,
 475 F.Supp.3d 1038 (N.D. Cal. 2020) ................................................................. 10

*Brooks v. Barbour Energy Corp.*,
 804 F.2d 1144 (10th Cir. 1986) ............................................................................ 9

*Browder v. Gayle*,
 142 F. Supp. 707 (Al. Dist. 1956) ........................................................................ 8

*Carnival Cruise Lines, Inc. v. Shute*,
 499 U.S. 585 (1991) ............................................................................................ 12

*Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*,
 867 F.3d 1093 (9th Cir. 2017) .............................................................................. 3

*In re ConAgra Foods, Inc.*,
 302 F.R.D. 537 (C.D. Cal. 2014) ......................................................................... 3

*Diamond D Const. Corp. v. McGowan*,
 282 F.3d 191 (2002) ............................................................................................. 8

*Dilworth v. Riner*,
 343 F.2d 226 (5th Cir. 1965) ............................................................................ 8, 9

*Dombrowski v. Pfister*,
 380 U.S. 479 (1965) ............................................................................................ 12

*Doran v. 7-Eleven, Inc.*,
 524 F.3d 1034 (9th Cir. 2007) ............................................................................ 11

*Edwards v. Brookhaven Sci. Assocs.*,
 390 F. Supp .2d 225, 233 (E.D.N.Y 2005) ........................................................... 8

*Gibson v. Berryhill*,
 411 U.S. 564 (1973) .............................................................................................. 9

*K.H. v. Antioch Unified Sch. Dist.*,
 424 F. Supp. 3d 699 (9th Cir. 2020) ..................................................................... 9

# TABLE OF AUTHORITIES
## (CONTINUED)

**Pages**

*McAlindin v. County of San Diego*,
  192 F.3d 1226 (9th Cir. 1999) ................................................................................ 10

*Molski v. Arciero Wine Group*,
  164 Cal. App. 4th 786 (2008) ................................................................................ 11

*Shotz v. City of Plantation*,
  344 F.3d 1161 (11th Cir. 2003) ............................................................................... 9

*Socorro v. California*,
  No. CIV S 07-1313 LKK GGH P, 2007 WL 2254464 (E.D. Cal. Aug. 3, 2007) ................................................................................................... 10

*United States v. Guerrero*,
  847 F.2d 1363 (9th Cir. 1988) .................................................................................. 6

*United States v. Manning*,
  526 F.3d 611 (10th Cir. 2008) ............................................................................... 12

*Valle del Sol Inc. v. Whiting*,
  732 F.3d 1006 (9th Cir. 2013) ............................................................................... 11

**Statutes**

18 U.S.C. § 1001(b) .................................................................................................... 12

28 U.S.C. § 2283 .......................................................................................................... 9

42 U.S.C. § 12188 ........................................................................................................ 9

ADA ................................................................................................................. *passim*

ADA Title II ............................................................................................................... 10

ADA Title III ............................................................................................................... 9

Cal. Penal Code § 115 ............................................................................................ 7, 10

Cal. Penal Code § 182 ............................................................................................... 10

Civil Rights Act of 1964 Section 204(a) .................................................................... 9

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# TABLE OF AUTHORITIES
## (CONTINUED)

**Pages**

Cal. Bus. & Prof. Code § 6128 ........................................................................... 7, 10

**Other Authorities**

28 C.F.R. § 36.304(c) ............................................................................................ 1

## I.  INTRODUCTION

Defendant's Opposition (Dkt. 39) confirms the RCDA's misguided interpretation of the ADA.  The Opposition focuses exclusively on only the ***last*** access barriers a disabled person would encounter (*i.e.*, past the front door and inside the building).  But ADA regulations apply to ***all*** access barriers, especially the ***first*** access barriers a disable person would encounter (*i.e.*, parking and exterior paths of travel) since those prevent persons with mobility disabilities from getting beyond the parking lot.  Indeed, these kinds of first access barriers are also listed as the ***first priority*** for "Removal of Barriers" in the ADA regulatory scheme, which requires "***measures to provide access*** to a place of public accommodation ***from public sidewalks, parking, or public transportation***.  28 C.F.R. § 36.304(c).

These first access ADA violations are presented front and center in each of Estrada's three underlying civil ADA cases.  These first access barriers were also clearly encountered by Estrada.  Yet the Opposition says nothing to challenge or rebut any of them.  Instead, the Opposition erroneously cries "fraud" on the premise that Estrada never entered the building itself or that the businesses were somehow "not open" to the public.  These arguments not only lack foundation and evidentiary support,[1] but are also completely wrong.  As demonstrated by the rebuttal declarations and evidence submitted herewith, Plaintiff clearly **did visit** each of the three businesses and encountered parking violations and other first access barriers.

The interrogation of Estrada - on which the Opposition relies so heavily - violated the Fifth Amendment and *Miranda*.  As if this was not bad enough, the Opposition and declaration of Deputy District Attorney ("DDA") Brown present blatant misrepresentations.  For example, DDA Brown deliberately misleads this Court by attesting that Estrada admitted that Cornell "texted" Estrada "business names" to stimulate Estrada to visit the businesses for the purpose of filing lawsuits.

---

[1] *See* Plaintiffs' Evidentiary Objections filed concurrently herewith.

(Brown Decl. (Dkt. No. 29-1) at 5:25 – 6:1.)  DDA Brown's representation here is patently false.  A review of the certified transcript of the interrogation shows that when DDA Brown and his investigator asked Estrada ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Darnell Decl. Ex. 1 at 79:13-16.)  When asked again whether ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.* at 80:10-11.)  This is only one of many false statements by the RCDA in their Opposition before this Court.

The bottom line is that the claims underlying Estrada's ADA lawsuits were valid.[2]  Plaintiffs have shown the RCDA is pursuing a retaliatory prosecution based on a mischaracterization of both the law and the evidence in order to fabricate some kind of "wrong" with legitimate and meritorious ADA lawsuits.  The RCDA's conduct in this regard is also prohibited by the ADA's anti-retaliation and anti-interference provisions and is further evidence of the RCDA's malicious intent and animus towards Plaintiffs' ADA litigation *in general*.

## II.     FACTS RELEVANT TO THE RCDA'S OPPOSITION

### A.     Estrada's Documented Visits to All Three Businesses

The Opposition and the prosecution rely entirely on alleged deficiencies within the pleadings in the three underlying ADA lawsuits that formed the basis of the Criminal Complaint.  (*See* Opp. at 2:20-3:20.)  In so doing, the RCDA concedes that the gravamen of the criminal prosecution is based on Plaintiffs' actions in ***filing*** ADA lawsuits, which is protected by the ADA's anti-retaliation provisions.

The rebuttal evidence submitted in the Reply Declarations of Cornell and Estrada disposes of the Opposition's conjured "admission" that Estrada "never visited" the subject properties.  In fact, Estrada visited the Corona Animal Hospital,

---

[2]  As further rebuttal to the Opposition arguments, the underlying ADA cases also resulted in corrective actions that removed barriers or improved access to these businesses.  (Cornell Reply Decl. ¶¶ 9-14 and Exs. 6-9.)

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Park Lane Mobile Homes, and Ultra Imports Auto Parts on June 26, 2020, at each of which he documented first access barriers and took photographs in front of each location.  (*See* Estrada Reply Decl. ¶¶ 2-5, Exs. 1-3.)  The photographs and geo-locations of the visits are documented via electronic records Estrada submitted to Cornell through a mobile application maintained on Cornell's database.  (*Id.*; *see also* Cornell Reply Decl. ¶¶ 4, 7-8, Exs. 1, 4-5.)[3]

The RCDA's case is thus reduced to its meritless backup arguments that for all three ADA cases: (1) the filings were supposedly fraudulent because Estrada "did not intend to visit" the business in question as a customer; and (2) the filings were supposedly fraudulent because Estrada did not actually encounter an access barrier.  (*See* Opp. at 2:26, 3:8, & 3:16.)  On the first point, the original Motion set forth controlling authority regarding standing, including "tester standing," to seek injunctive relief.  (*See* Dkt. No. 22-1 at 15:8-28).  Simply put, Estrada's **motivation** in visiting a location is irrelevant.  *See Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093 (9th Cir. 2017) ("*CREEC*").  Regarding the second point, the factual record and rebuttal evidence proves that the underlying ADA Complaints accurately stated that Estrada personally encountered **one or more** access barriers at the subject properties in June 2020.  Hence, there was nothing false about these claims.

### 1. Corona Animal Hospital

The RCDA's assertion that Estrada never visited Corona Animal Hospital is based on an out-of-context excerpt from the interrogation of Estrada.  The entire interrogation, and the DA's misleading summary thereof, is inadmissible for the reasons stated in the Evidentiary Objections.  Furthermore, the assertion that Estrada

---

[3] A reply brief may properly address new matters raised in the opposition brief if the issues reasonably were unforeseen at the time of the opening brief.  *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 559, fn. 87 (C.D. Cal. 2014) (evidence submitted in direct response to evidence raised in opposition "is not 'new'").  Here, the RCDA's introduction of the audio interview with Estrada was entirely new as it had not previously been disclosed to Plaintiffs.

"did not take his pet for treatment" (*see* Opp. at 2:27), which is contradicted by the transcript of the interrogation, is also contradicted by the fact that Estrada visited the location that day and encountered first access barriers there. (*See* Estrada Reply Decl. ¶¶ 2-3, Ex. 1; Cornell Reply Decl. ¶ 4, Ex. 1; Darnell Decl. Ex. 1 at 104:7.)[4]

The RCDA next asserts that "it was impossible for Estrada to experience an ADA barrier to service" because Corona Animal Hospital was not accepting new patients. (*See* Opp. at 2:28-3:4.) However, upon arriving at Corona Animal Hospital, Estrada was prevented from getting past the parking lot because he encountered parking and other first access barriers. (*See* Estrada Reply Decl. ¶¶ 2-3, Ex. 1; Cornell Reply Decl. ¶ 4, Ex. 1; Ballard Decl. ¶ 3, Ex. 1.) Accordingly, even if Corona Animal Hospital had only limited services to the public at this time (which is disputed)[5], the first access barriers at the facility prevented Estrada from even parking. While the RCDA focuses on the last access barriers that were inside the building, these allegations were only included after Cornell located images of the interior online. (*See* Ballard Decl. ¶ 3, Ex. 1; Cornell Reply Decl. ¶ 5, Ex. 2.)

Furthermore, after the Corona Animal Hospital case was resolved, numerous ADA violations at this property were corrected. (*See* Cornell Reply Decl. ¶¶ 9-12, Exs. 6-7.) This illustrates the meritorious nature of the lawsuit and the critical function it played in improving access for disabled individuals at this location.

### 2. Park Lane Mobile Homes

The Opposition flatly asserts that "Estrada never visited and did not intend to visit Park Lanes Mobile Homes, and at most conducted a 'drive by' of the business

---

[4] The audio recording and transcript of Estrada's interrogation reveals that ███████████ ███████ (Darnell Decl. Ex. 1 at 61:6-15.) ███████████ this does not alter the evidence that he actually visited the location in question.

[5] A screenshot of Corona Animal Hospital's Yelp Page shows that Corona Animal Hospital's policy about not accepting new clients was not posted until July 7, 2020, which was after Estrada visited the facility on June 26, 2020. (*See* Cornell Reply Decl. ¶ 6, Ex. 3.)

- 4 -
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

before filing a lawsuit.'" (Opp. at 3:8-9.) Not so. When Estrada visited this facility, he encountered parking and other first access barriers that prevented full and equal access. (*See* Estrada Reply Decl. ¶¶ 2, 4, Ex. 2; Cornell Reply Decl. ¶ 7, Ex. 4; Ballard Decl. ¶ 4, Ex. 2.) Furthermore, as explained in the Motion at 15:8-28, whether or not Estrada ever intended to use or patronize the businesses at issue in the ADA lawsuits is irrelevant to the issue of ADA standing.

The RCDA asserts that it was "impossible for Estrada to experience an ADA barrier to service" because Park Lane Mobile Homes "was closed to the public during the time period at issue." (Opp. at 3:10-12.) But contemporaneous photographs taken at the facility before the lawsuit show otherwise. (*See* Ballard Decl. ¶ 4, Ex. 2.) These photographs show Park Lane Mobile Homes has an office that is intended to receive prospective tenants. (*See id.*; Cornell Reply Decl. ¶¶ 13-14, Exs. 8-9.) They also show a parking spot with a sign designated for "visitor parking only," a handicapped parking spot, and a sign above the entrance stating that guests must be accompanied by visitors. (*See id.*) These all indicate these premises were open to the public. These photographs also confirm the existence of ADA violations on the exterior of the Park Lane Mobile Homes rental office. (*See* Ballard Decl. ¶ 4 Ex. 2.) After the case was resolved, numerous ADA violations at this property were corrected. (*See* Cornell Reply Decl. ¶¶ 9, 13-14 Exs. 8-9.)

### 3. <u>Ultra Import Auto Parts</u>

In rebuttal to the RCDA's assertion that Estrada's visit to Ultra Import Auto Parts was merely a "drive by", the Estrada Reply Declaration confirms that he took a photo at this location because he noticed parking and related access barriers that affected him. (*See* Estrada Reply Decl. ¶¶ 2, 5, Ex. 3; Cornell Reply Decl. ¶ 8, Ex. 5; Ballard Decl. ¶ 5, Ex. 3.) Moreover, as explained above, whether or not Estrada ever intended to use or patronize the businesses at issue in the ADA lawsuits is irrelevant to the issue of ADA standing.

The RCDA's assertion that it was "impossible for Estrada to experience an

- 5 -

ADA barrier to service" because Ultra Imports "was closed to the public during the time period at issue" is unsupported inadmissible evidence. (Opp. at 3:18-19.) There are, however, photographs from the exterior of the unit taken in August 2020, two months after Estrada's visit, which show signage to the business indicating to the public that it was an operating business. (*See* Ballard Decl. ¶ 5, Ex. 3.)

Finally, the above-referenced photographs confirm the existence of ADA violations on the exterior of the Ultra Imports business, showing the meritorious nature of the lawsuit. (*See* Ballard Decl. ¶ 5, Ex. 3.)

### B. The RCDA's Interrogation of Estrada

As explained in the Evidentiary Objections, the RCDA's attempt to introduce the interrogation of Estrada into the record (*see* Opp. at 3:21-4:9) is impermissible, and the interrogation must be suppressed.

First, the entire interrogation was conducted in violation of Estrada's *Miranda* rights. At various points, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See* Darnell Decl. Ex. 1 at 7:23-8:5, 9:9-12, 61:6-15.) Any statement by Estrada to the effect of waiving his Miranda rights was involuntary under Ninth Circuit law. *See United States v. Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See* Estrada Reply Decl. ¶¶ 6-8.)

Second, at several points, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See* Darnell Decl. Ex. 1 at 11:23-12:7, 85:13-25.) These statements are incorrect. As stated in the Motion at 15:8-28, "tester standing" is permissible in the Ninth Circuit. The investigators' statements during the interrogation were a misrepresentation of the law. The RCDA's conduct during the interrogation is indicative of bad faith. As noted in the Evidentiary Objections, the references to the interrogation with Estrada must be suppressed.

### C. The Irreparable Harm Caused by the RCDA's Actions

The RCDA's final factual contention in the Opposition is that there is no showing of bad faith or irreparable harm because the RCDA has "taken no action against Estrada or Cornell other than filing the Felony Complaint against them and activities associated with the prosecution." (*See* Opp. at 4:10-23.) This statement is false in light of evidence submitted in support of the Plaintiffs' Motion. *(See* Cornell Decl. (Dkt. 22-2) at ¶12) (referencing March 22, 2022 voicemail from a defendant in a separate ADA case confirming they had been contacted by the RCDA and were requesting dismissal because of that).) For the RCDA to be in direct contact with defendants in active cases unrelated to the prosecution is, by definition, interference. The RCDA's execution of aggressive raids during the arrests, as well as their publication of the press release with even broader attacks on Cornell and his law practice and reputation, is further proof of malicious conduct that goes far beyond the three underlying ADA cases.

The RCDA also fails to refute evidence presented in the Motion that the RCDA's actions have directly harmed Cornell's ADA practice. (*See* Cornell Decl. ¶¶ 13-16, Exs. A-D.) Nor does the RCDA contest that there is no record of the RCDA bringing criminal actions against lawyers under Cal. Penal Code § 115 or Cal. Bus. and Prof. Code § 6128 except to chill advocacy under the ADA, a serious indictment of the ADA's selective enforcement tactics. (*See id.* ¶ 11.)

### III. ARGUMENT

#### A. *Younger* Abstention Is Not Applicable to this Case

##### 1. The ADA's Anti-Retaliation Provisions

The state criminal proceedings are an inadequate forum precisely because of the RCDA's bad faith retaliation. As described in the Motion at 6:9-10:7, the ADA has its own enforcement mechanisms and specifically permits federal courts to intervene in such situations. The RCDA's impermissible retaliation violation of Plaintiffs' civil rights constitutes "genuine and irretrievable damage" that creates an

- 7 -

1 exception to interference with state criminal proceedings.  *See Dilworth v. Riner,*
2 343 F.2d 226, 232 (5th Cir. 1965).  Moreover, principles of comity do not apply
3 where a plaintiff is being deprived of constitutional civil rights.  *Browder v. Gayle*,
4 142 F. Supp. 707, 714 (Al. Dist. 1956).

### 2. Exceptions to the *Younger* Doctrine Apply in this Case

The basis for the exceptions to *Younger*, which are explained in the Motion at 23:25-24:6, are present here for several reasons.  First, the RCDA's primary evidence that it repeatedly uses to justify application of *Younger* (*see* Opp. at 11:26-13:4) is the interrogation with Estrada.  However, as explained in the Evidentiary Objections, not only was this interrogation conducted in violation of Estrada's *Miranda* rights and the attorney-client privilege, but it was continued after Estrada had been subjected to serious physical distress from the RCDA's actions.  The interrogation also was based largely on the investigators' misstated threats of criminality regarding ADA tester standing.

Second, the RCDA's press release went well beyond describing the underlying ADA cases.  The press release intimates that the purpose of the RCDA's prosecution is related to the number of Plaintiffs' lawsuits, rather than the RCDA's pretextual regulatory goals.  This retaliatory animus violates the ADA and is concrete evidence of bad faith.  Third, the only enforcement actions brought by the RCDA alleging criminal charges against lawyers under Sections 115, 6128, and 182 have been against ***ADA lawyers***.  (*See* Cornell Decl. ¶ 11.)  This is evidence of selective enforcement and retaliatory animus prohibited by the ADA.  *See Edwards v. Brookhaven Sci. Assocs.*, 390 F. Supp .2d 225, 233 (E.D.N.Y 2005).

As such, here, there is sufficient evidence to conclude that the RCDA has been "animated by a retaliatory, harassing, or other illegitimate motive."  *See Diamond D Const. Corp. v. McGowan*, 282 F.3d 191, 199 (2002).  Under such circumstances, federal courts in similar situations have elected to exercise their jurisdiction even when the criteria for *Younger* abstention were otherwise met.  *See*

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

*Gibson v. Berryhill*, 411 U.S. 564, 578-579 (1973).

### B. The Act of Congress Exception to 28 U.S.C. § 2283

Contrary to Defendant's assertions (*see* Opp. at 14:3-16:5), this case falls squarely within the Act of Congress exception to the federal Anti-Injunction Act, 28 U.S.C. § 2283. Here, the ADA's anti-retaliation provisions are the sort of "specific and uniquely federal right or remedy" that would be frustrated if this Court does not act to enjoin the RCDA's bad faith prosecution. *See Brooks v. Barbour Energy Corp.*, 804 F.2d 1144, 1146 (10th Cir. 1986). Defendant contends that state courts have concurrent jurisdiction over ADA claims. (*See* Opp. at 14:23-15:4.) But this ignores the fact that the ADA's anti-retaliation provision "unequivocally confers on those whom its protects a **federal** right to be free from retaliation[.]" *Shotz v. City of Plantation*, 344 F.3d 1161, 1167 (11th Cir. 2003).

Defendant attempts to distinguish the precedent set forth in the Fifth Circuit opinion in *Dilworth, supra*, 343 F.2d 226 on the basis that the Civil Rights Act is "entirely different" from the ADA. (*See* Opp. at 15:5-15.) But Defendant ignores that ADA Title III through 42 U.S.C. § 12188 incorporates by reference the remedies and procedures in Section 204(a) of the Civil Rights Act of 1964, the very same provision at issue in *Dilworth*. *See also K.H. v. Antioch Unified Sch. Dist.*, 424 F. Supp. 3d 699 (9th Cir. 2020).

Here, the granting of an injunction is an appropriate exercise of this Court's authority to preserve the meaning of the ADA's prohibitions on retaliation and interference. Plaintiffs' federal right to engage in ADA protected activities and to be free from retaliation and interference for doing so is a right that Congress has said **shall not be** subject to violation by public entities.

### C. The Standard for Issuance of a Preliminary Injunction

#### 1. Likelihood of Success on the Merits

a. *Retaliation and Interference Under the ADA.*

Defendant asserts that "the activity for which [Plaintiffs] are being prosecuted

- 9 -
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

is not protected under the ADA." (Opp. at 17:25-26.) This is simply not the case, and Plaintiffs' pursuit of rights under the ADA is a protected activity. *See, e.g., McAlindin v. County of San Diego,* 192 F.3d 1226, 1238 (9th Cir. 1999).

Defendants assert that this standard of protected activity does not apply because Plaintiffs' behavior constituted violations of Cal. Penal Code §§ 115, 182 and Cal. Bus. & Prof. Code § 6128. (*See* Opp. at 18:1-14.) However, the entire premise of the prosecution is based on a flawed understanding of ADA standing and on the inaccurate presumption that Estrada never visited the locations in question, which is demonstrably false. Moreover, the purpose of the state law provisions upon which the RCDA's prosecution rests is limited to protecting the integrity of **state** and not **federal** proceedings. The RCDA's interests in regulating **federal** processes are insufficient to overcome the protections afforded to Plaintiffs.

This Court unquestionably has the authority to issue an injunction against the RCDA as a state agency on the basis of an ADA retaliation claim. The decision in *Armstrong v. Newsom*, 475 F.Supp.3d 1038 (N.D. Cal. 2020) is on all fours. Defendant attempts to distinguish this case (*see* Opp. at 18:15-28), but the core of their argument is that the prisoners in *Armstrong* were engaging in protected activities whereas Plaintiffs here are not. That is not the case. Plaintiffs were engaged in protected activities of filing ADA lawsuits based on documented visits to the properties. Moreover, Defendant does not respond the additional authority cited in the Motion establishing precedent for this type of injunction. *See Socorro v. California*, No. CIV S 07-1313 LKK GGH P, 2007 WL 2254464, at *4 (E.D. Cal. Aug. 3, 2007) ("[P]laintiff may bring a claim pursuant to Title II of the ADA against state entities for injunctive relief and damages.") (internal citations omitted).

    b. *Standing under the ADA.*

As set out in detail in the Motion at 13:24-17:2, the RCDA's prosecution is premised on a misunderstanding of the standing requirements under ADA law. Contrary to Defendant's convoluted attempt to disentangle the issues (*see* Opp. at

- 10 -
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

19:27-20:7), the criminal complaint derives from the RCDA's presumption that if Estrada visited a property solely for the purpose of testing ADA compliance, this was somehow improper. The authorities in the Motion dispel the RCDA's misunderstanding of the law in this regard. An ADA plaintiff is entitled to seek the removal of barriers whether or not he or she encountered them. *See, e.g., Molski v. Arciero Wine Group*, 164 Cal. App. 4th 786, 792 (2008).

ADA plaintiffs like Estrada have the right to pursue the removal of barriers affecting access that were never encountered, including barriers discovered during an inspection. *See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2007).

### 2. <u>Irreparable Harm</u>

The RCDA claims that the chilling effect on other ADA lawsuits is "purely speculative and vaguely alleged." (*See* Opp. at 21:25-22:7 & 22:27-23:7.) Estrada and Adelfo Cerame, another client of Cornell, have specifically declared that they have identified other businesses where mobility barriers exist, have vetted the claims through a third party investigator, and are being prevented from filing these lawsuits because of the chilling effect of the RCDA's prosecution. (*See* Cornell Decl. ¶¶ 18-20; Estrada Decl. ¶¶ 1-12; Cerame Decl. ¶¶ 1-8.)

In addition, the Opposition entirely ignores the evidence submitted with the Motion that opposing counsel in cases filed by Cornell and his clients have demanded that existing ADA actions be dismissed until the criminal case is resolved. (Cornell Decl. ¶¶ 12-18, Exs. A-D.) Existing ADA cases are being impacted, and potential litigants in dozens of new ADA lawsuits are refraining from filing new cases against businesses with existing mobility barriers out of fear of reprisals by the RCDA. (Cornell Decl. ¶¶ 12-20, Exs. A-D; Estrada Decl. ¶¶ 1-12.) These circumstances meet the standard for showing irreparable harm. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013).

Contrary to Defendant's conclusory assertion (Opp. at 22:8-26), Plaintiffs are not arguing that they are "immune from violations of California law[.]" Rather, the

statements that Plaintiffs submitted in connection with their pleadings in the ADA lawsuits were accurate and based on Estrada's actual visits to the properties. As such, the protections of 18 U.S.C. § 1001(b) apply here and stand for the proposition that prosecution for statements made in the course of adversarial litigation chills advocacy and undermines the adversarial process. *See United States v. Manning*, 526 F.3d 611, 617-618 (10th Cir. 2008).

### 3. The Balance of Equities and Public Interest

The section immediately above demonstrates how Plaintiffs are impacted negatively in the absence of an injunction, including by being prevented from petitioning the courts, by being interfered with in other ADA cases, and by being subject to false allegations. The RCDA's contention that Plaintiffs are protected through the defense of the criminal prosecution (Opp. at 24:14-17) is unfounded as the RCDA's actions have resulted in a "substantial impairment of [] precious rights[.]" *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965).

In contrast, there will be no harm to the RCDA from the issuance of an injunction. Defendant nonsensically asserts that the injunction will preclude the RCDA and other law enforcement agencies from pursuing other criminal prosecutions. (Opp. at 24:1-9.) But the injunction here is limited to the facts and circumstances of the current criminal prosecution.

Finally, the public interest will be served by the issuance of an injunction, which will remove the chilling effect that is perpetuating the existence of access barriers in the community. Fulfillment of the ADA's comprehensive national mandate and the public interest are best served by issuance of the injunction. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991).

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue the requested order and preliminary injunction (Dkt. 22-5).

- 12 -
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

| | | |
|---|---|---|
| Dated: June 24, 2022 | | **CALLAHAN & BLAINE, APLC** |
| | By: | */s/ Gaurav K. Reddy* |
| | | Gaurav K. Reddy |
| | | Attorneys for Plaintiffs Ross Cornell and Bryan Estrada |