1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROSS CORNELL, an individual, and BRYAN ESTRADA, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>OFFICE OF THE DISTRICT ATTORNEY, COUNTY OF RIVERSIDE, and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 5:22-cv-00789-JWH-SHK<br><br>**MEMORANDUM OPINION AND ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [ECF No. 22]** |

1    The American with Disabilities Act of 1990 (the "ADA") is a landmark
2    achievement of federal legislation that affords important legal protections to
3    disabled Americans.  *See generally* 42 U.S.C. §§ 12010-12213.  Among other
4    things, the law has been used to improve the accessibility of establishments and
5    public accommodations, so that every person may enjoy them—disabled or
6    non-disabled.  In recent years, though, what some have described as a "cottage
7    industry" has emerged in California in which some ADA plaintiffs and their
8    attorneys engage in serial, high-frequency litigation.[1]  A great number of those
9    cases settle without advancing past the pleading stage.  For many defendants,
10   the cost of fighting the litigation is far steeper than fixing any identified
11   accessibility issues on their property and then paying out a small sum in
12   settlement to the plaintiff.[2]

13       The Court neither commends nor condemns that practice of private
14   enforcement, of course, so long as it operates within the bounds of the law.  But
15   what happens when ADA litigants conduct high-frequency litigation
16   fraudulently and deceitfully, thereby abusing civil rights laws in an effort to
17   extort individuals and small businesses?  That question is not before the Court
18   here, but it *is* the question underlying a state court criminal case currently being
19   prosecuted by Defendant Office of the District Attorney, County of Riverside
20   (the "Riverside District Attorney") against Plaintiff Bryan Estrada, an alleged
21   paraplegic, and his attorney Plaintiff Ross Cornell.[3]  Cornell and Estrada are

22

---

23   [1]     *See, e.g.*, Evelyn Clark, *Enforcement of the Americans with Disabilities Act:*
24   *Remedying "Abusive" Litigation While Strengthening Disability Rights*, 26
     Wash. & Lee J. Civil Rts. & Soc. Just. 689, 692–94 (2020) (describing media
25   portrayals of ADA litigants).
     [2]     *Id.* at 710; *see also* Helia Garrido Hull, *Vexatious Litigants and the ADA:*
26   *Strategies to Fairly Address the Need to Improve Access for Individuals with*
     *Disabilities*, 26 Cornell J.L. & Pub. Pol'y 71, 73 (2016) (describing the dynamics
27   of this style of litigation).
     [3]     That case is Riverside County Superior Court Case No. RIF2201190.  *See*
28   Notice of Mot. for a Prelim. Inj. (the "Motion") [ECF No. 22] 2:2-3.

1  charged with felonies arising from filing three allegedly fraudulent ADA
2  lawsuits.
3      Rather, the issue before this Court is whether Cornell and Estrada can
4  invoke this Court's jurisdiction to stop the Riverside District Attorney's
5  criminal case from proceeding.  Cornell and Estrada moved for a preliminary
6  injunction for precisely that relief; Cornell and Estrada also seek declaratory
7  judgment that the prosecution is itself an ADA violation.[4]  The Court conducted
8  a hearing on Cornell and Estrada's Motion on July 8, 2022.[5]  After considering
9  the papers filed in support and in opposition,[6] as well as the argument of counsel
10 at the hearing, the Court orders that the Motion is **DENIED**, for the reasons set
11 forth herein.

12                          **I.  BACKGROUND**

13      According to Cornell and Estrada's pleading, Cornell is a licensed
14 attorney in California who has represented Estrada "in a number" of civil
15 lawsuits in the Central District of California.[7]  Estrada alleges that he is a
16 paraplegic who is wholly reliant on a wheelchair for his mobility.[8]

17      On March 9, the Riverside District Attorney charged Cornell and Estrada
18 with three felony counts of procuring and offering false or forged instruments to
19 a public office in violation of Cal. Penal Code § 115, as well as three counts of
20 conspiracy to violate Cal. Bus. & Prof. Code § 6128(a), which forbids attorneys

---

[4]      *See generally id.*

[5]      Unless otherwise indicated, all subsequent dates are in 2022.

[6]      The Court considered the documents of record, including the following papers:  (1) First Am. Compl. (the "Amended Complaint") [ECF No. 18]; (2) the Motion (including its attachments); (3) Def.'s Opp'n to the Motion (the "Opposition") [ECF No. 29]; (4) Pls.' Reply in Supp. of the Motion (the "Reply") [ECF No. 34]; and (5) Def.'s Sur Reply to the Reply (the "Sur-Reply") [ECF No. 39].

[7]      Amended Complaint ¶ 3.  According to public filings, that number is 139. Those cases cover merely the period from November 2019 to the present.  On average, each case settled in three months or less.

[8]      *Id.* at ¶ 4.

from engaging in deceit or collusion with the intent to deceive a party or a court.[9] Cornell has represented Estrada in numerous ADA-related matters, but the Riverside District Attorney focused solely on three cases pending in the Central District of California:

- *Bryan Estrada v. Corona Animal Hospital et al.*, Case No. 5:20-cv-01797-JGB-SHK;
- *Bryan Estrada v. Park Lane Mobile Homes et al.*, Case No. 5:20-cv-02362-JGB-KK; and
- *Bryan Estrada v. Ultra Imports Auto Parts et al.*, Case No. 5:20-cv-02403-JGB-SP.[10]

A day after the Riverside District Attorney filed charges, Cornell and Estrada were arrested at their homes.[11]  Later that same day, the Riverside District Attorney's office issued a press release announcing that Cornell and Estrada had been arrested.[12]  That press release also noted that Cornell and Estrada had filed more than 60 lawsuits against individuals and small businesses in Riverside County, but it did not say whether those cases were fraudulent or not.[13]

In May—two months after their arrest—Cornell and Estrada filed this lawsuit in this Court.[14]  A few weeks later, they amended their pleading, asserting the following five claims for relief:

- violations of Article III of the U.S. Constitution;
- violations of Article VI, Section 2, of the U.S. Constitution;
- retaliation in violation of the ADA, *see* 42 U.S.C. § 12203;

---

[9]    *See* Opposition, Ex. A (the "Felony Complaint") [ECF No. 29-2]; *see also* Motion 4:10-24.

[10]    *See generally* Opposition, Ex. B.

[11]    Amended Complaint ¶¶ 11 & 41-49.

[12]    *See generally id.*, Ex. B (the "Press Release").

[13]    *Id.*

[14]    *See* Compl. (the "Complaint") [ECF No. 1].

-4-

1    • interference of a protected activity in violation of 28 C.F.R. § 36.206; and

2    • violations of the First Amendment.[15]

3    A day later, Cornell and Estrada moved for a preliminary injunction.

4    They asked the Court, *inter alia*, (1) to enjoin the Riverside District Attorney

5    from prosecuting the criminal case against Cornell and Estrada in Riverside

6    County Superior Court; (2) to order the Riverside District Attorney to retract

7    the Press Release; and (3) to restrain the Riverside District Attorney from

8    interfering with Cornell and Estrada's pending ADA lawsuits.[16]

9    The Court conducted a hearing on July 8.  A week before that hearing, the

10    Riverside District Attorney requested leave to file a sur-reply.[17]  The Court

11    granted the Riverside District Attorney's request at the hearing and took the

12    Motion under submission.[18]

13    ## II.  LEGAL STANDARD

14    A preliminary injunction is an "extraordinary and drastic remedy" that

15    should never be awarded as of right.  *Munaf v. Geren*, 553 U.S. 674, 689 (2008)

16    (citations omitted).  An injunction is binding only on parties to the action, their

17    officers, agents, servants, employees, and attorneys and those "in active concert

18    or participation" with them.  Fed. R. Civ. P. 65(d)(2).

19    "A plaintiff seeking a preliminary injunction must establish that he is

20    likely to succeed on the merits, that he is likely to suffer irreparable harm in the

21    absence of preliminary relief, that the balance of equities tips in his favor, and

22    that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council,*

23    *Inc.*, 555 U.S. 7, 20 (2008).  In the Ninth Circuit, "serious questions going to the

24    merits and a balance of hardships that tips sharply towards the plaintiff can

25

26    [15]    Amended Complaint ¶¶ 63-99.

27    [16]    Motion 2:2-9.

      [17]    Def.'s Request for Leave to File Sur-Reply to the Reply [ECF No. 38].

28    [18]    *See* Minute Order [ECF No. 40].

1  support issuance of a preliminary injunction, so long as the plaintiff also shows
2  that there is a likelihood of irreparable injury and that the injunction is in the
3  public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th
4  Cir. 2011) (internal quotations omitted).

### III.  DISCUSSION

**A.     Applicability of *Younger* Abstention**

7          As a threshold matter, the Court must determine whether it should
8  adjudicate the Motion or abstain altogether, pursuant to the *Younger* doctrine.
9  *See Younger v. Harris*, 401 U.S. 37, 43–45 (1971).  "Like subject matter
10  jurisdiction, . . . resolution of the *Younger* abstention issue is critical because, if
11  the district court is required to abstain under *Younger* and dismiss the suit, then
12  it has no authority to rule on a party's motion for a preliminary injunction."
13  *Meredith v. Oregon*, 321 F.3d 807, 816 (9th Cir.), *amended sub nom. Meredith v.*
14  *State of Oregon*, 326 F.3d 1030 (9th Cir. 2003).  It makes no difference that
15  Cornell and Estrada seek only injunctive and declaratory relief—and not money
16  damages[19]—since "*Younger* principles apply to actions at law as well as for
17  injunctive or declaratory relief because a determination that the federal
18  plaintiff's constitutional rights have been violated would have the same practical
19  effect as a declaration or injunction on pending state proceedings."  *Gilbertson v.*
20  *Albright*, 381 F.3d 965, 968 (9th Cir. 2004).

21          Normally, federal courts have a "virtually unflagging obligation" to
22  exercise the jurisdiction vested in them by Congress.  *Colorado River Water*
23  *Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  However, the
24  interests of comity and federalism compel federal courts to abstain from
25  exercising jurisdiction in certain circumstances, such as those instances where
26  they are asked to enjoin ongoing state criminal proceedings.  *See Younger*, 401

28  [19]     Motion 2:2-9; *see also* Amended Complaint, Prayer for Relief ¶¶ 1-8.

U.S. at 39, 43–45.  Abstention is thus appropriate when (1) there is "an ongoing state judicial proceeding"; (2) those "proceedings implicate important state interests"; and (3) there is "an adequate opportunity in the state proceedings to raise constitutional challenges." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

### 1.    Ongoing California Proceeding

State proceedings are ongoing if they are initiated "before any proceedings of substance on the merits have taken place in the federal court." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975).  That first condition is readily met here because the Riverside District Attorney's prosecution began in March, while Cornell and Estrada filed this case in May.[20]

### 2.    Important State Interest

The second condition is also easily met because this case falls squarely within the holding of *Younger*, as it involves a criminal proceeding.  *See Younger*, 401 U.S. at 38-39 (explaining that Harris, the appellee, had asked a federal district court to enjoin the district attorney of Los Angeles County from prosecuting him for violations of California's Criminal Syndicalism Act).  Indeed, the "basic doctrine of equity jurisprudence" counsels that courts sitting in equity "particularly should not act to restrain a criminal prosecution."  *Id*. at 43.

Moreover, California has a specific interest here in relation to ADA litigation.  California's Unruh Act renders any violation of "the right of any individual under the federal Americans with Disabilities Act of 1990" also "a violation of this section."  Cal. Civ. Code § 51(f).  Unlike the ADA, the Unruh Act affords a private civil remedy for actual damages.  *See Arroyo v. Rosas*, 19

---

[20]    *See generally* Complaint (filed on May 9, 2022).

F.4th 1202, 1206 (9th Cir. 2021) (explaining the interplay between the statutes). As a result, some California attorneys began engaging in serial ADA litigation, asserting tandem claims arising under the Unruh Act and the ADA. *See id*. Some of those attorneys repeatedly demanded quick money settlements from small business owners, which did not necessarily culminate in any improvements in the overall accessibility of their buildings, premises, or accommodations. *See id*. In response, the California Legislature enacted new provisions in 2012—and again in 2015—meant to curb those perceived abuses; *e.g.*, heightened pleading standards and prohibitions on upfront demands for money. *See id*. at 1206–07 (discussing the new provisions and their legislative history). In view of that legislative history, the Court concludes that California maintains a keen interest in maintaining the proper balance of private civil rights enforcement of the ADA and the Unruh Act, while curbing abuses thereof. Accordingly, the Riverside District Attorney's criminal proceeding at issue here necessarily implicates an important state interest, overwhelmingly satisfying the second prong for *Younger* abstention. *See ReadyLink Healthcare*, 754 F.3d at 758.

During the hearing, Cornell and Estrada did not dispute that conclusion, conceding that California ***does*** have an interest in ferreting out instances of true fraud. Instead, Cornell and Estrada made two arguments in an effort to minimize the impact of that conclusion. Neither is persuasive.

First, Cornell and Estrada contend that the federal government has an equally compelling interest in ensuring the enforcement of the ADA and other constitutional rights. While that federal interest no doubt exists, under established precedent it is not an explicit element for the Court to consider in connection with its analysis of *Younger* abstention. *See, e.g.*, *Middlesex*, 457 U.S. at 432 (listing the three-factor test); *Green v. City of Tucson*, 255 F.3d 1086, 1095 (9th Cir. 2001) (explaining that the three-factor test was derived from *Middlesex*); *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d

1079, 1082 (9th Cir. 1987) (omitting any reference to a federal interest in the three-factor test). Cornell and Estrada cite no contrary authority to suggest that a court must conduct a balancing test involving federal interests rather than simply evaluating the importance of the state's interest. If anything, the holding in *Younger* **already** represents a balancing act between state and federal interests, and its facts are substantially analogous facts here. Famously, *Younger* held that a federal court's exercise of its jurisdiction over a state criminal proceeding "exemplified the kind of interference that was sufficiently grave to require the federal court's abstention from hearing a case that was, in all other respects, jurisdictionally proper." *Green*, 255 F.3d at 1094 (citing *Younger*, 401 U.S. at 49) (internal quotations omitted).

Cornell and Estrada's attempt to accentuate their allegations of ADA retaliation and First Amendment violations equally falls flat because "it is clear that the mere assertion of a substantial constitutional challenge to state action will not alone compel the exercise of federal jurisdiction." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365 (1989). Indeed, one of the appellees in *Younger* was asserting a First Amendment challenge. *See Younger*, 401 U.S at 39 (explaining that Harris had "alleg[ed] that the prosecution . . . inhibited him in the exercise of his rights of free speech and press, rights guaranteed him by the First and Fourteenth Amendments"). Accordingly, the Court sees no reason to augment the well-established test for abstention with the additional element of a balancing test.

Second, Cornell and Estrada maintain that California's interest in the criminal proceeding is irrelevant here, because the evidence of record establishes that they are not guilty of the charges leveled against them. But that contention puts the cart before the horse. Whether Cornell and Estrada are found guilty or not is a peripheral issue to California's interest in enforcing its criminal laws. "That is so because when we inquire into the substantiality of the State's

1    interest in its proceedings we do not look narrowly to its interest in the outcome
2    of the particular case . . . . Rather, what we look to is the importance of the
3    generic proceedings to the State." *New Orleans Public Service*, 491 U.S. at 365.
4    Phrased in terms of this case, "the appropriate question here" is not whether
5    California "has a substantial, legitimate interest" in prosecuting Cornell and
6    Estrada's specific (alleged) acts of fraud or deceit on the courts, but whether
7    California has a substantial, legitimate interest in preventing fraud or deceit on
8    the courts in general. *Id.* It is undisputed that California does. Cornell and
9    Estrada's admission ends the inquiry there.

10            **3.      Adequate Opportunity to Raise Constitutional Challenges**

11           The third condition asks the Court to evaluate whether Cornell and
12   Estrada can raise the issues in their Amended Complaint as defenses in the state
13   criminal proceeding. The Court concludes that Cornell and Estrada do retain
14   that opportunity because none of their putative claims or defenses appears to be
15   barred or otherwise precluded. The "adequate opportunity" prong of *Younger*
16   "is no more difficult to satisfy than the res judicata test." *Commc'ns Telesystems*
17   *Int'l v. California Pub. Util. Comm'n*, 196 F.3d 1011, 1020 (9th Cir. 1999). In
18   other words, "*Younger* requires only the absence of 'procedural bars' to raising a
19   federal claim in the state proceedings." *Id.* (quoting *Middlesex*, 457 U.S. at 432).

20           In their briefs, Cornell and Estrada identify no procedural bars that would
21   preclude them from raising their claims in Riverside County Superior Court.[21]
22   Rather, at the hearing, Cornell and Estrada cast aspersions on the Riverside
23   County Superior Court's capability to **rule** properly on their defenses. They
24   doubt both the judge's and the jury's abilities to understand, for instance, the
25
26
27
28   _____
     [21]      *See generally* Motion; Reply.

nuances of Article III standing and the Ninth Circuit's precedent on ADA "tester standing."[22]

The Court is not convinced.  Cornell and Estrada offer no reason why a state court jury—empaneled to serve as the trier-of-fact—could not discharge its duty to make factual findings in the context of this case any more or less competently than in any other case.  Juries execute that solemn duty every day, in criminal and civil proceedings alike.  Routinely they are tasked to wade through complicated or emotionally charged matters, including graphic cases involving homicide, domestic abuse, and other violent crimes.  If juries can endure those challenges, then the Court has no doubt that a Riverside County Superior Court jury could determine whether Estrada, say, did or did not visit a pet hospital.[23]

As for judges, the Court must reject Cornell and Estrada's insinuation that the Riverside County Superior Court is ill-equipped to adjudicate federal defenses.  As the Supreme Court held:

> Appellee obviously believes itself possessed of a viable federal claim, else it would not so assiduously seek to litigate in the District Court. Yet, Art. VI of the United States Constitution declares that "the Judges in every State shall be bound" by the Federal Constitution, laws, and treaties.  Appellee is in truth urging us to base a rule on the assumption that state judges will not be faithful to their constitutional responsibilities.  This we refuse to do.

*Huffman v. Pursue, Ltd.*, 420 U.S. 592, 610–11 (1975).  Therefore, the Court concludes that all three conditions for *Younger* abstention are met.

---

[22]    *See, e.g.*, Motion 4:25-5:1 (discussing Ninth Circuit case law on "tester standing").

[23]    *Compare* Opposition 2:25-28 (alleging that Estrada never visited one of the subject properties, the Corona Animal Hospital) *with* Reply 2:25-3:3 (alleging the opposite).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## B.     Exceptions to *Younger* Abstention

Even when *Younger* abstention may apply, some narrow exceptions exist. "Bad faith prosecution or harassment make abstention inappropriate," even when the *Younger* "requirements are met." *World Famous Drinking Emporium*, 820 F.2d at 1082.  In the *Younger*-abstention context, bad faith "generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." *Kugler v. Helfant*, 421 U.S. 117, 126 (1975). Prosecution for the similar but distinct purpose of "harassment" would equally make abstention inappropriate. *Younger*, 401 U.S. at 54.  According to a Second Circuit case that Cornell and Estrada cite,[24] harassment may occur when the state prosecution "was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002).

Additionally, abstention may be inappropriate "where a statute might be flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger*, 401 U.S. at 53–54 (citing *Watson v. Buck*, 313 U.S. 387, 402 (1941)).  But because Cornell and Estrada do not attack the constitutionality of California's Penal Code or its Business & Professions Code,[25] that latter exception does not apply here.  Instead, Cornell and Estrada accuse the Riverside District Attorney of prosecuting them in bad

---

[24]     Motion 24:6 & 28; Reply 8:26.  In their Motion, Cornell and Estrada characterize *Diamond "D"* as a Ninth Circuit decision, and in their Reply brief, they casually omit the circuit number from their *Diamond "D"* string cite.  Only during the hearing did their counsel admit their error.  The Court will charitably assume that the mistake was an honest scrivener's error, but it reminds counsel of their duty of candor to the tribunal.

[25]     *See generally* Amended Complaint.

1  faith and for retaliatory motives, which, in their view, warrants setting *Younger*

2  abstention aside.[26]

3        **1.   Bad Faith**

4              **a.   Standard of Review**

5        As a preliminary matter, the parties dispute whether an objective standard

6  or a subjective standard should be applied to the bad faith exception to *Younger*

7  abstention.[27]  Properly understood, an objective standard would have the Court

8  evaluate whether the Riverside District Attorney had an objectively reasonable

9  expectation of obtaining a valid conviction in view of all of the evidence and legal

10  defenses, whereas a subjective standard would look narrowly to the beliefs,

11  motivations, and intentions of the Riverside District Attorney regarding the

12  possibility of a valid conviction.

13        Cornell and Estrada favor an objective standard.  They point to *World*

14  *Famous Drinking Emporium* and *Kugler* as cases that support their interpretation.

15  But on closer inspection, neither of those cases expressly indicates whether a

16  subjective or objective standard applies to the bad faith exception.  Nor does

17  *Perez v. Ledesma*, 401 U.S. 82, 85 (1971), the case that *Kugler* references.  *See*

18  *Kugler*, 421 U.S. at 126 n.6 (citing *Perez*, 401 U.S. at 85).  Incidentally,

19  *Diamond "D"*—the case cited by Cornell and Estrada—***does*** speak to this

20  question, and it characterizes the bad faith exception as a "subjective" inquiry.

21  *Diamond "D"*, 282 F.3d at 199.  *Diamond "D"* also noted that

22  contemporaneous Second Circuit cases "concerning the bad faith exception

23  have further emphasized that the subjective motivation of the state authority in

24  bringing the proceeding is critical to, if not determinative of, this inquiry."  *Id*.

25

26

---

27  [26]   *See* Motion 23:25-25:4.

28  [27]   While this dispute was not briefed, the parties dedicated considerable
time at the hearing to its discussion.

1    (citing *Schlagler v. Phillips*, 166 F.3d 439, 442–43 (2d Cir. 1999), and *Kirschner v.*
2    *Klemons*, 225 F.3d 227, 236–37 (2d Cir. 2000)).

3          The Court is persuaded to adopt the subjective standard for three reasons.
4    First, if the Court employs an objective standard, then it would necessarily have
5    to investigate the merits of the prosecution—*i.e.*, evaluate claims, defenses, and
6    attendant evidence.[28]  But that inquiry is precisely what *Younger* abhors.  In
7    reviewing the objective reasonableness of the prosecution's case, the Court
8    would ineluctably make factual determinations based upon the evidence and
9    would evaluate the strength of the defenses.  Taken to its logical conclusion,
10   federal courts would become gatekeepers on all sorts of state criminal
11   proceedings, which would deeply disturb the comity between the States and the
12   federal government.  In other words, an objective standard would allow the bad
13   faith exception to "swallow the *Younger* rule."  *Schlagler*, 166 F.3d at 443.

14         Second, by employing a subjective standard and sidestepping the
15   substance of the defenses and evidence, the Court might prevent the inadvertent
16   creation of *res judicata* issues.  After all, a dismissal based upon *Younger*
17   abstention normally "signifies that the court declined to exercise jurisdiction; it
18   makes no comment on the merits of the case . . . ."  *Elwood v. Drescher*, 456 F.3d
19   943, 948 (9th Cir. 2006), *abrogated on other grounds by Citizens for Free Speech,*
20   *LLC v. Cnty. of Alameda*, 953 F.3d 655 (9th Cir. 2020) (confirming that, when a
21   claim is stayed or dismissed without prejudice under *Younger* abstention, "the
22   plaintiff can return to the federal forum after completion of the parallel
23   proceedings").  This Court's strict avoidance of the merits when considering
24   the bad faith exception would, therefore, preserve other remedies to which
25   Cornell and Estrada may be entitled.

26
27   _____
28   [28]    Indeed, Cornell and Estrada made it abundantly clear at the hearing that
     they wish the Court would do just that.

And third, other district courts in the Ninth Circuit have endorsed the subjective approach outlined in *Diamond "D"*. *See, e.g.*, *N Grp. LLC v. Hawai'i Cnty. Liquor Comm'n*, 681 F. Supp. 2d 1209, 1239–40 (D. Haw. 2009) (adopting a subjective standard); *Sheehan v. Cnty. of Kauai*, 2013 WL 1342364, at *15 (D. Haw. Mar. 29, 2013) (same); *see also Applied Underwriters, Inc. v. Lara*, 37 F.4th 579 (9th Cir. 2022) (citing *Diamond "D"* for its exposition of the bad faith exception).  The Court finds those endorsements persuasive; it sees no reason to deviate from the sound judgment of its sister courts.

### b.   Applying the Subjective Standard

In their briefs, Cornell and Estrada do not raise a convincing reason why the Court should conclude that the Riverside District Attorney lacked a reasonable expectation of a valid conviction at the time that it filed the criminal case.  At most, Cornell and Estrada quibble with procedural defects surrounding Estrada's interrogation ***after*** he had been arrested and the prosecution had begun.[29]  And even assuming *arguendo* that the Riverside District Attorney committed some infraction, Cornell and Estrada offer no evidence or allegations to show that it occurred by design.  In short, Estrada's grievances with the manner of his interrogation—valid or not—do not speak to the Riverside District Attorney's subjective expectation of a valid conviction, which is the relevant inquiry.  *See, e.g.*, *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 621 (9th Cir. 2003) (focusing its analysis on the California Racing Board's expectation of obtaining a reasonable conviction).

Moreover, Cornell and Estrada can identify no other instances in which the Riverside District Attorney targeted them with a prosecution regarding their ADA litigation.  If the record had shown "a pattern of prosecution to inhibit speech beyond the acts being prosecuted, [then] the exception should apply and

---

[29]     Reply 8:7-14.

1   abstention may be improper." *Schlagler*, 166 F.3d at 443.  But the record does

2   not do so.  Cornell and Estrada simply have not alleged enough, nor furnished

3   enough evidence, to demonstrate subjective bad faith on behalf of the Riverside

4   District Attorney.  Accordingly, they have failed to satisfy their burden, and the

5   Court cannot conclude that the bad faith exception applies.  *See Applied*

6   *Underwriters, Inc. v. Lara*, 530 F. Supp. 3d 914, 937 (E.D. Cal. 2021) (reiterating

7   that the "plaintiff who seeks to head off *Younger* abstention bears the burden of

8   establishing that one of the exceptions applies").

9              **2.    Retaliation or Harassment**

10          Cornell and Estrada also contend that the Riverside District Attorney's

11   prosecution constitutes harassment.  To explain why, Cornell and Estrada first

12   point to the Press Release, which they claim illustrates the Riverside District

13   Attorney's animus and the retaliatory nature of the prosecution.[30]  They portray

14   the Press Release's reference to the number of lawsuits filed by Cornell on

15   behalf of Estrada as evidence of the Riverside District Attorney's retaliatory

16   motive.

17          The Court is unmoved.  The Press Release is written in a plain and

18   matter-of-fact tone.  It conveys neither condemnation nor celebration.  Whether

19   the total number of lawsuits in any way motivated the Riverside District

20   Attorney to commence the criminal case strikes the Court as immaterial, rather

21   than pretextual:  it may just be that the high number of lawsuits caught the

22   Riverside District Attorney's attention, or it may just be that, of the many cases

23   that Cornell and Estrada filed, the three at issue in the criminal proceeding are

24   the ones that violated the law.[31]  Simply referencing the number of lawsuits does

25

26

27   ---

[30]      *See* Motion 24:7-17; *see also* Reply 8:15-19.

28   [31]      *See* Opposition 11:10-13:24 (explaining the prosecution's theory for how
     Cornell and Estrada allegedly violated provisions of California's Penal Code and
     Business & Professions Code); *see also* Sur-Reply 5:23-6:15 (offering a credible

not necessarily indicate that the Riverside District Attorney disparages civil rights enforcement activities under the ADA.[32]

Cornell and Estrada also accuse the Riverside District Attorney of singling out ADA lawyers for prosecution under Cal. Penal Code § 115 or Cal. Bus. & Prof. Code § 6128(a).[33]  But even if it is true that the Riverside District Attorney has never prosecuted any other type of lawyer under those statutes, that fact alone does not imply animus.  Other explanations exist; for example, other lawyers simply obeyed the law.  It is no pretext when the town drunkard is the only person cited for violating public intoxication laws in a community of teetotalers.

Lastly, the Amended Complaint includes a still photograph from Estrada's home security camera footage.  It displays several armed law enforcement officers approaching Estrada's front door on the morning of his arrest, allegedly engaging in "SWAT-style" tactics.[34]  At the hearing, the Court questioned the propriety of the those tactics (especially in view of non-violent nature of the alleged crimes at issue), but Cornell and Estrada offered no evidence that the use of SWAT-style tactics was somehow exceptional or any different than the tactics used when any other felony suspect is arrested.[35]  Notwithstanding Cornell and Estrada's allegation that the Riverside District

_____

explanation for why the Riverside District Attorney initiated its investigation—*i.e.*, local-business-owner ADA defendants complained).

[32]    The Riverside District Attorney maintains that the Press Release's content was sourced from the arrest warrant and that its office is required by law to release certain information to the public.  *See* Sur-Reply 6:26-7:4.  That issue arose during the hearing, and Cornell and Estrada offered no evidence or argument that the Riverside District Attorney's explanation was in any way false or incorrect.

[33]    Motion 24:20-23.

[34]    *See* Amended Complaint ¶¶ 11, 44-49, & 58.

[35]    *But see* Sur-Reply 7:5-10 (attesting that Cornell's arrest was conducted in a manner for felony suspects, especially when they pose flight risks).

1  Attorney "orchestrated" the arrests, there is no evidence tying the Riverside

2  District Attorney to the specific field tactics used by the arresting officers.[36]

3       In summary, the evidence presented here is simply too threadbare for the

4  Court to conclude that the Riverside District Attorney's prosecution is plagued

5  with bad faith or is the result of some retaliatory motive.  Therefore, no

6  exception to *Younger* abstention applies.

7  **C.      Consequence of *Younger* Abstention**

8       "Where *Younger* abstention is appropriate, a district court cannot refuse

9  to abstain, retain jurisdiction over the action, and render a decision on the merits

10 after the state proceedings have ended."  *Beltran v. California*, 871 F.2d 777, 782

11 (9th Cir. 1988).  An abstention-based stay order, rather than a dismissal, would

12 be appropriate if damages were at issue.  *See Gilbertson*, 381 F.3d at 975.  But

13 because they are not,[37] dismissal is required here.  *See Beltran*, 871 F.2d at 782;

14 *see also Fresh Int'l Corp. v. Agric. Lab. Rels. Bd.*, 805 F.2d 1353, 1356 (9th Cir.

15 1986) ("When a case falls within the proscription of *Younger*, a district court

16 must dismiss the federal action.").

17                   **IV.  CONCLUSION**

18      For the foregoing reasons, the Court hereby **ORDERS** as follows:

19      1.      Cornell and Estrada's Motion for a preliminary injunction is

20 **DENIED**.

21      2.      The Court **ABSTAINS** from exercising jurisdiction over this case.

22 Accordingly, the Amended Complaint is **DISMISSED without prejudice**.

23

24

25

26

27   [36]    Amended Complaint ¶¶ 11 & 49.

28   [37]    *See generally id.*

3.    Judgment will issue accordingly.

**IT IS SO ORDERED.**

Dated: July 25, 2022

_____
John W. Holcomb
UNITED STATES DISTRICT JUDGE