1          **UNITED STATES DISTRICT COURT**

2      **CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION**

3        **HONORABLE JOHN W. HOLCOMB, U.S. DISTRICT JUDGE**

4

ROSS CORNELL, et al.,                  )

5                                       )

                    Plaintiffs,         )  **Certified Transcript**

6                                       )

        vs.                             )  Case No.

7                                       )  5:22-cv-00789-JWH-SHK

OFFICE OF THE DISTRICT ATTORNEY,       )

8  COUNTY OF RIVERSIDE, et al.,         )

                                        )

9                   Defendants.         )

   _____)

10

11

12

13            REPORTER'S TRANSCRIPT OF PROCEEDINGS

                      MOTION HEARING

14                FRIDAY, JULY 8, 2022

                      8:57 A.M.

15              SANTA ANA, CALIFORNIA

16

17

18

19

20

21

22  _____

23          **DEBBIE HINO-SPAAN, CSR 7953, CRR**

             FEDERAL OFFICIAL COURT REPORTER

24          411 WEST 4TH STREET, ROOM 1-053

                SANTA ANA, CA 92701

25              dhinospaan@yahoo.com

1                   **APPEARANCES OF COUNSEL:**

2

3   **FOR PLAINTIFFS:**

4         CALLAHAN & BLAINE APLC
        BY:  DAVID J. DARNELL, ESQ.
5         3 Hutton Centre Drive
        9th Floor
6         Santa Ana, California 92707
        714-241-4444
7         ddarnell@callahan-law.com

8         CALLAHAN & BLAINE APLC
        BY:  GAURAV K. REDDY, ESQ.
9         3 Hutton Centre Drive
        9th Floor
10        Santa Ana, California 92707
        714-241-4444
11        greddy@callahan-law.com

12   **FOR DEFENDANTS:**

13        SMITH LAW OFFICES LLP
       BY:  DOUGLAS C. SMITH, ESQ.
14        4001 Eleventh Street
       Riverside, California 92501
15        951-509-1355
       dsmith@smithlaw.com

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

|  |  |  |
|---|---|---|
| | 1 | **SANTA ANA, CALIFORNIA; FRIDAY, JULY 8, 2022** |
| | 2 | **8:57 A.M.** |
| | 3 | **- - -** |
| | 4 | |
| 08:57AM | 5 | THE COURTROOM DEPUTY:  The Court calls Case |
| | 6 | Number EDCV 22-00789-JWH(SHKx), Ross Cornell versus Office of |
| | 7 | the District Attorney, County of Riverside. |
| | 8 | Counsel, please state your appearances, first for |
| | 9 | the plaintiff. |
| 08:57AM | 10 | MR. DARNELL:  Good morning, Your Honor.  David |
| | 11 | Darnell on behalf of plaintiffs.  Also present is my colleague, |
| | 12 | Mr. Gaurav Reddy. |
| | 13 | THE COURT:  All right.  Good morning, Counsel. |
| | 14 | MR. SMITH:  Good morning, Your Honor.  Doug Smith |
| 08:58AM | 15 | for the County of Riverside/District Attorney. |
| | 16 | THE COURT:  And good morning, Mr. Smith. |
| | 17 | MR. SMITH:  Sir. |
| | 18 | THE COURT:  All right.  We're here on plaintiff's |
| | 19 | motion for preliminary injunction. |
| 08:58AM | 20 | Did everyone receive my tentative? |
| | 21 | MR. DARNELL:  We did, Your Honor. |
| | 22 | THE COURT:  All right.  So let me hear from |
| | 23 | plaintiff's counsel first, being on the negative end of the |
| | 24 | tentative as it were. |
| 08:58AM | 25 | As I always say, when I issue a tentative, it's |

1    truly a tentative.  If I had made a final decision, we wouldn't

2    be here.  I wouldn't waste your time.  I wouldn't waste your

3    clients' money.

4        So feel free to poke holes in it.  Tell me where

08:58AM 5    it's wrong.  Tell me if there are errors of fact or law.

6    Please don't be shy about attacking it because that's -- I want

7    to get it right, and I want to get to the truth.  So let's do

8    it that way.

9        I do have some questions.  But, Mr. Darnell, why

08:59AM 10   don't I just -- why don't you start where you want to start and

11   tell me what you want to tell me, and then I think my questions

12   will arise kind of organically.

13       MR. DARNELL:  Very good.  May I use the podium?

14       THE COURT:  Yes, please.

08:59AM 15   MR. DARNELL:  Thank you, Your Honor.  And thank you

16   for preparing the tentative.  It was very helpful.

17       Your Honor, I have a few points that I'd like to

18   address in the tentative.  The primary issue, though, is that

19   the tentative is, obviously, based on abstention and the

08:59AM 20   *Younger* doctrine or exceptions thereto, but it does not answer

21   the critical questions of whether the DA's prosecution

22   conflicts with federal law, more particularly, federal ADA law

23   as it relates to standing.

24       Now, the Court, I assume, knows that the DA's views

09:00AM 25   on ADA standing are at the core of the underlying prosecution.

1        In the criminal Complaint, the DA contends that the claims of

2        ADA standing in three underlying federal lawsuits were false or

3        deceitful because Estrada "manufactured ADA violations" and

4        "did not have standing to sue."  I'm quoting from the

09:00AM  5        opposition at page 20.  It's also listed there multiple --

6        excuse me -- multiple times.

7              So the fundamental issue here is does Estrada have

8        lawful standing under the ADA statute or not?  There can only

9        be fraud or deceit if his claims about standing are false.

09:00AM 10        That is the fundamental issue.  And that ties into the critical

11        analysis as it relates to the *Younger* exception for bad faith.

12              THE COURT:  Let me follow up on that, if I may.  I

13        want to make sure I understand your argument here.  Let's say

14        that the criminal court in Riverside County agrees with your

09:01AM 15        position and finds that Mr. Estrada did have standing -- does

16        have standing -- I guess did have standing to prosecute these

17        three ADA cases.  Could it not also be true that Mr. Estrada

18        made false statements in those three Complaints?

19              MR. DARNELL:  No, Your Honor.  I don't think it --

09:01AM 20              THE COURT:  Okay.  That's the piece that -- I don't

21        quite understand why that is the case.

22              MR. DARNELL:  Because the fraud and the deceit here

23        all goes to the issue of standing.  The fraud is that he never

24        went to these facilities.  Now, we now know the evidence before

09:01AM 25        the Court in the reply that's at Docket 34-12.  He did go.

**UNITED STATES DISTRICT COURT**

There was a contemporaneous photograph of him with Corona

Animal Hospital right behind him, Your Honor.  There's also

photographs demonstrating that he encountered a first-access

barrier parking violation that violate the ADA requirements.

09:02AM          THE COURT:  So is it the only -- the County, in

making its assertion that there are false statements in the

Complaints -- is it true that the only thing the County is

pointing to is that Mr. Estrada was never there at these three

sites?  Or aren't there other things that the County is

09:02AM pointing to as being false?

          MR. DARNELL:  There's two things.  The first thing

is that he was never there.  That's been disproven.  The second

theory is the problem that we have with ADA law.  The second

theory of the ADA is that he had an improper motivation or he

09:02AM didn't have a legitimate motivation to be there; that he did

not intend to use the services of the building; that he did not

intend to use the services of the business.

          THE COURT:  And your point is that's the County's

misunderstanding, deliberate or not, of the ADA law?

09:03AM          MR. DARNELL:  Yes.  Ninth Circuit controlling

authority under *CREEC*, Your Honor.

          THE COURT:  I got that.

          MR. DARNELL:  Yes.  Okay.

          THE COURT:  So the County, though, I think, does not

09:03AM concede these two points.  The County in particular does not

|  |  |
|---|---|
| 1 | concede the factual point that Mr. Estrada was physically |
| 2 | present and that his statement in the Complaint is not false |
| 3 | because he was physically present at these three locations. |
| 4 | The County does not concede that; correct? |
| 09:03AM 5 | MR. DARNELL:  The County -- well, I don't know if |
| 6 | they concede whether he was in the parking lot or not. |
| 7 | MR. SMITH:  We don't concede that. |
| 8 | MR. DARNELL:  Okay.  The County does not concede |
| 9 | that, Your Honor. |
| 09:03AM 10 | THE COURT:  Okay.  So let me play devil's advocate |
| 11 | with you.  Sounds like Mr. Estrada has a great defense to the |
| 12 | criminal prosecution, and it may fall apart quickly.  If you're |
| 13 | right, it may fall apart pretty quickly. |
| 14 | MR. DARNELL:  Correct. |
| 09:04AM 15 | THE COURT:  And good for Mr. Estrada.  I mean, I'm |
| 16 | not pulling for him or anything in the criminal prosecution. |
| 17 | But if you're correct, he will prevail, one would assume, in |
| 18 | the criminal prosecution.  But that's not this case.  So long |
| 19 | as there's a dispute of fact here, why should I -- it sounds |
| 09:04AM 20 | like you're asking me to adjudicate that and say, "Gee, you're |
| 21 | right.  Mr. Estrada was there.  This is a faulty criminal |
| 22 | prosecution, and I'm going to put a stop to it right now." |
| 23 | Is that what you're asking me to do? |
| 24 | MR. DARNELL:  No, Your Honor. |
| 09:04AM 25 | THE COURT:  Okay. |

1          MR. DARNELL:  I'm asking you to adjudicate the First

2     Amendment right to petition the courts.  I'm asking you to

3     adjudicate the anti-retaliation provisions in the ADA and how

4     those two issues, constitutional and congressional, under the

09:04AM 5     ADA statute bar the DA's flawed legal theory.  By bringing a

6     flawed legal theory under the ADA, Your Honor points, "Well, go

7     win.  Go win that issue."

8          I would essentially -- I'm not a criminal defense

9     counsel, but criminal defense counsel would have to argue

09:05AM 10     before 12 jurors about what Ninth Circuit juris prudence means

11     under ADA standing law and what is allowed and what's not

12     allowed and why intent doesn't matter.  They would be arguing a

13     legal issue which this Court -- Your Honor in particular; I've

14     seen your own rulings as well as other district courts in this

09:05AM 15     building -- other court -- judges in this building -- as well

16     as the Ninth Circuit have always held that is a legal issue.

17          Federal ADA standing is a legal issue to be decided

18     by the federal judge.  It's decided as a threshold matter when

19     you first look at the Complaint.  And it's decided based upon

09:06AM 20     numerous cases, some of which are complex, dealing with ADA

21     standing.  There's a large history of case law that's involved

22     here.

23          To ask 12 jurors to decide that legal issue in a

24     state court is not an adequate remedy.  To ask a criminal judge

09:06AM 25     presiding over that case is not an adequate remedy when all of

the cases clearly hold these are preliminary legal issues on
federal law to be decided by the federal courts.

          THE COURT:  So is the argument that you're making
now -- well, let me say it this way.  One of the things that
caught my attention from all the papers was -- a question arose
in my mind.  Does the State of California have a sufficient
interest in preventing and punishing the filing of meritless or
false ADA cases, given that ADA is a federal statute?

          Is that the point that you're making now?

          MR. DARNELL:  I would agree with your point that the
State does have some interest in prosecuting false or meritless
Unruh type of actions.  The ADA statute is a different issue,
but I will concede that.

          THE COURT:  That's where I was going to go next is
these cases are both ADA federal statute and the Unruh Act is
under California law.

          MR. DARNELL:  They are.  But to follow up on your
point, Your Honor, the State does have an interest in
prosecuting meritless, false statements in connection with
Unruh claims.  Again, meritless, false.  The whole analysis
here under the *Younger* exception and whether the DA's
prosecution is objectively reasonable requires the Court to
look at the claims about ADA standing, to look at are they
right when they say he did not properly intend to go into this
building.  He did not have the right motivation and, therefore,

1    his claims before the federal court are fraudulent.

2           That is a legal issue that goes to the heart of

3    whether the DA's Complaint, the criminal matter, is objectively

4    reasonable or not.  At page 8, Your Honor notes that that is

09:08AM 5    what the Court has to consider when deciding whether the

6    *Younger* exception applies.

7           And particular, it's in the middle of the page,

8    Your Honor, you site to *Kugler vs. Helfant*.  It starts at

9    line 15 at page 8 of the tentative.  Quote:

09:08AM 10          "In the *Younger* abstention context, bad faith

11           'generally means that the prosecution has been

12           brought without a reasonable expectation of

13           obtaining a valid conviction.'"

14          That's the standard.  That's what the Court needs to

09:08AM 15   apply.

16          THE COURT:  So you're arguing that the bad faith

17   exception to the *Younger* abstention applies here.  And the bad

18   faith is that the County knows that this is a -- this is a

19   crummy prosecution.  It's based on a -- it's based on a faulty

09:09AM 20   legal theory?

21          MR. DARNELL:  Generally, yes.  I wouldn't make it

22   subjective, Your Honor.  To me, it's an objective standard, an

23   objectively unreasonable standard.  Because you can have a DA

24   who is misguided or doesn't know the ADA ins and outs of the

09:09AM 25   law and thinks this should be illegal under the ADA, but it's

```
 1   not as a matter of law.
 2           So if they are misguided or uninformed or just don't
 3   know the nuances of the ADA standing requirements, of which
 4   there are many, that DA may have a subjective belief that the
 5   prosecution is legitimate, that they're going to obtain a
 6   conviction, but they're wrong as a matter of law.  And if the
 7   DA is wrong as a matter of law, the prosecution, by definition,
 8   is objectively unreasonable.
 9           THE COURT:  And objectively unreasonable equals bad
10   faith or, I should say, necessarily triggers the bad faith
11   exception to the Younger abstention?
12           MR. DARNELL:  Absolutely.
13           THE COURT:  I understand that point.  Thank you.
14           MR. DARNELL:  Now, I think I hit on this -- and
15   Your Honor asked me to point out flaws, so I apologize.
16           THE COURT:  Don't apologize.  Attack this.  It's
17   your job.
18           MR. DARNELL:  Throughout the tentative, it ignores
19   the elephant in the room.  The critical issue here is is the
20   DA right or wrong?  Can the DA claim that these ADA lawsuits
21   were fraudulent or manufactured or false because of something
22   having to do with Estrada's intent?  Not under Ninth Circuit
23   controlling precedent.  That is the elephant in the room.  That
24   has to be analyzed under the definition that Your Honor has for
25   bad faith and what that means at page 8 of the tentative.
```

The times in the left margin: 09:09AM (line 5), 09:10AM (line 10), 09:10AM (line 15), 09:10AM (line 20), 09:11AM (line 25).

|  | |
|---|---|
| 1 | The tentative says nothing about ADA standing.  It |
| 2 | says nothing about the DA's contentions about never visiting. |
| 3 | It says nothing about the evidence before this Court that says, |
| 4 | "Not so fast.  He was there."  And it says nothing about the |
| 09:11AM 5 | flawed legal argument about intent and ADA standing. |

         1          The tentative says nothing about ADA standing.  It

         2   says nothing about the DA's contentions about never visiting.

         3   It says nothing about the evidence before this Court that says,

         4   "Not so fast.  He was there."  And it says nothing about the

09:11AM   5   flawed legal argument about intent and ADA standing.

         6          So we need a complete analysis of those issues as it

         7   relates to the *Younger* exception before the Court can

         8   ultimately decide is it objectively reasonable or is the DA's

         9   case objectively unreasonable, as we contend.

09:11AM  10          THE COURT:  In the *Younger* case itself -- trying to

        11   refresh myself on the facts of that case -- there was the -- at

        12   issue in the underlying criminal case was the California

        13   state's Criminal Syndicalism Act, S-y-n-d-i-c-a-l-i-s-m.  The

        14   argument is that that act was void for vagueness and

09:12AM  15   overbreadth.  I think the District Court and the Circuit --

        16   well, this was an odd three-judge District Court, I think, in

        17   *Younger*; correct?  And then it went to the Supreme Court.

        18          In any event, the underlying federal court found

        19   that the state's criminal act was indeed void for vagueness and

09:12AM  20   overbreadth.  And here, in the *Younger* case, Justice Black,

        21   writing for the Court, says the federal court should abstain

        22   and let this work its way through.

        23          So aren't you asking me to do what the *Younger* case

        24   itself says that the federal court should not do?

09:13AM  25          MR. DARNELL:  I am not asking you to do -- well,

one, I would tell you that, if that's what *Younger* actually

holds, we would never have an exception.  And we do have

exceptions under established case law.

There's a reason that we have exceptions.  The only

09:13AM 5  thing, by the way, that *Younger* holds, *Younger* sets the

standard for abstention.  It doesn't set the standard for

exceptions to abstention.  And the critical cases that I do

want to point the Court's attention to are cited in our

opposition, one being *World Famous Drinking Emporium*, which is

09:13AM 10  a Ninth Circuit case from 1987.

Your Honor, you also cite to that at page 8 of your

tentative for the proposition that bad faith prosecution or

harassment would make abstention inappropriate even when the

*Younger* requirements are met.  So there's your answer,

09:14AM 15  Your Honor.

THE COURT:  Is that the best Ninth Circuit case

talking about the bad faith exception to *Younger* abstention?

MR. DARNELL:  Well, I think the *Kugler* case that

Your Honor cited to in the tentative is equally good in

09:14AM 20  providing a sufficient definition with the objectively

reasonable requirement, objective belief that it will result in

a valid conviction.  So I think that those two cases are pretty

important for the Court's analysis.

But *World Famous* is also significant because the

09:14AM 25  Ninth Circuit clarified that the exception to *Younger* can and

will apply where the prosecution is intended to discourage the

assertion of constitutionally protected rights.

The ADA cases here -- the underlying ADA cases here

involve the assertion of constitutionally protected rights as

09:15AM   codified by Congress in the ADA statute.  And the prosecution's

criminal Complaint against the lawyer and his client for

bringing ADA claims infringes upon the First Amendment right to

petition the courts for redress.

It also results in an incredible chilling effect as

09:15AM   evidence by the material submitted to the Court.  No filings

having been submitted because, as soon as you file something,

we're going to get another amendment to the criminal Indictment

or the criminal Complaint or a new criminal Complaint based

upon their theory, which we contend is wrong as a matter of

09:15AM   law.

THE COURT:  Say the last part again.  You're saying

as soon as I rule, there will be a --

MR. DARNELL:  The evidence -- and I apologize if I

wasn't clear.  The evidence before this Court in our moving

09:15AM   papers and the reply show that Cornell and Estrada have

visited -- that Estrada has visited facilities which have

violations, that he encountered access barriers, and lawsuits

have not been filed because of the chilling effect from the

DA's prosecution.  The concern being that, if the DA contends

09:16AM   that intent or motive is somehow relevant in the other cases,

1    they're going to try to bring another flawed legal criminal

2    Complaint based on any new cases that are filed by Estrada or

3    Cornell.  There has been a chilling effect, and the evidence of

4    that is before the Court.

09:16AM  5            THE COURT:  All right.  Thank you.

6            MR. DARNELL:  My colleague just reminded me that

7    *Diamond* is another case, a Ninth Circuit case, dealing with the

8    exception to *Younger*.  That's cited in your opposition -- I'm

9    sorry -- in your tentative, Your Honor.  It's also cited in the

09:16AM 10   moving papers and the reply.  It's at page 9 of the tentative.

11           THE COURT:  *Diamond D.*

12           MR. DARNELL:  *Diamond D.*

13           THE COURT:  That's a Second Circuit case.

14           MR. DARNELL:  Oh, I apologize.  It is a Second

09:16AM 15   Circuit case, you are correct.  For some reason, my notes

16   indicated it's a Ninth Circuit.  But I do see in their

17   tentative it's Second Circuit.

18           THE COURT:  Well, I think it's Second Circuit.  In

19   your reply papers I think you don't give what circuit it's --

09:17AM 20   in your reply papers, page ii, in the Table of Authorities,

21   line 16, is a *Diamond D* case.  You say that it's 2002, but you

22   don't say what circuit.

23           MR. DARNELL:  In the moving papers, Your Honor,

24   that's Docket 22-1, (ii), we cite to *Diamond D* as well.  It's

09:17AM 25   in page 24 of the actual motion, but (ii), that does reference

```
 1   Ninth Circuit 2002.  Now --
 2            THE COURT:  Hold on one second.  Let me get there.
 3   Okay.  I'm in your --
 4            MR. DARNELL:  Docket 22-1, Roman numeral ii.
 5            THE COURT:  Right.  So there you cite Diamond D.
 6   You're on line 27?
 7            MR. DARNELL:  Correct.
 8            THE COURT:  As a Ninth Circuit case.  But is it?
 9            MR. DARNELL:  I believe it is.
10            (Counsel conferred off the record.)
11            MR. DARNELL:  Okay.  My colleague just clarified,
12   Your Honor.  I apologize.  It is a Second Circuit case, and I
13   apologize for making that error in our moving papers.
14            THE COURT:  Okay.  Is there a Diamond D analog in
15   the Ninth Circuit?
16            MR. DARNELL:  I would contend that the Diamond D
17   analog in the Ninth Circuit is Kugler.  Well, that's a U.S.
18   Supreme Court case.
19            There is World Famous that does acknowledge that bad
20   faith prosecution or harassment is an exception.  So
21   World Famous is a Ninth Circuit case that seems to be
22   consistent with the Diamond D case.  Because bad faith is,
23   obviously, consistent with Diamond D's holding of a prosecution
24   initiated by retaliation, harassing, or other illegal motives.
25            THE COURT:  So you made the argument earlier that
```

09:18AM (line 5)
09:18AM (line 10)
09:18AM (line 15)
09:18AM (line 20)
09:19AM (line 25)

```
 1    there's an objective standard that bad faith doesn't

 2    necessarily have to mean that, in this instance, the

 3    prosecutor, the County of Riverside, has some objective bad

 4    intent; that bad faith can arise from simply a faulty legal

09:19AM  5    theory, even if it's a mistakenly faulty legal theory --

 6              MR. DARNELL:  Correct.

 7              THE COURT:  -- correct?

 8              MR. DARNELL:  Correct.

 9              THE COURT:  What's the case that stands for that

09:19AM 10    proposition?

11              MR. DARNELL:  Well, I believe it's based on a

12    reasonable interpretation of the Kugler holding by the

13    U.S. Supreme Court in 1975.  "Reasonable expectations," the

14    language that's there, that's the word that the U.S. Supreme

09:19AM 15    Court adopted.

16              As the Court probably knows, whenever we're talking

17    about reasonable expectations, that's always adjudicated from

18    the objective standard.  The subjective reasonable expectations

19    are not relevant to -- when you're talking about an issue of

09:20AM 20    bad faith because you can always have somebody who is either --

21    has the blinders on, is refusing to know the law, refusing to

22    do what they need to do.  It has to be judged from an objective

23    standard and not the subjective views of the prosecuting DA.

24              THE COURT:  Okay.

09:20AM 25              MR. DARNELL:  By the way, if it was subjective,
```

```
 1    every case of prosecutorial misconduct would arguably meet the

 2    requirement that it was subjectively reasonable in the eyes of

 3    that prosecutor to do what they did.  And that cannot be the

 4    standard of law.

 5         THE COURT:  Are plaintiffs also advancing the theory

 6    here that the prosecution, the defendant here, was acting in

 7    subjective bad faith?  I mean, your papers, I think a few

 8    times, talk about the, I'll call it, aggressive execution of

 9    the search warrant on Mr. Estrada.

10         When it comes to -- I don't think there's a lot of

11    information on this in the papers, but when it comes to the

12    press release, I don't know how common a press release like

13    that is.  I don't know if the County is issuing a press release

14    for almost every arrest.  I kind of doubt it.  But what

15    triggers the County to issue such a press release?  Are there

16    lots of them?  Are there few of them?  Is this one typical?  Is

17    this one unusual in some sense in either substance or tone?  I

18    don't know all of those things.

19         But the question -- with all the musing, the

20    question is are plaintiffs saying that the prosecutor is acting

21    in bad faith?

22         MR. DARNELL:  Both objectively and subjectively.

23         THE COURT:  Okay.  And I assume you're pointing to

24    all the things that I just referenced?

25         MR. DARNELL:  Well, those are some of the things.
```

09:20AM  5
09:21AM 10
09:21AM 15
09:21AM 20
09:22AM 25

        1    The other thing is the declaration from Deputy District
        2    Attorney Tim Brown before this Court.  In the opposition he
        3    purports to say all kinds of things that he has no personal
        4    knowledge of, but he says them under penalty of perjury.
09:22AM 5             THE COURT:  So there are lots of -- I'll comment
        6    there are lots of evidentiary objections.  I've looked at
        7    those.  I haven't ruled on them -- I thought about them -- but
        8    I didn't think I needed to in view of the tentative, if I stick
        9    with the tentative.
09:22AM 10            MR. DARNELL:  If Your Honor sticks with the
       11    tentative, I suppose we don't get that far.  But, again, my
       12    critique of the tentative is that it's flawed because it
       13    doesn't consider the underlying claims and the evidence, which
       14    is required for the objectively reasonable analysis.
09:23AM 15            And I just want to point out, Your Honor, it's not
       16    just the evidentiary objections.  We submit that Mr. Brown has
       17    outright lied to this Court.  He has stated that Cornell would
       18    text -- send text messages to Mr. Estrada about specific
       19    businesses and locations on where to go.
09:23AM 20            That is false.  There is no record of that before
       21    the Court.  We provided the Court with a certified transcript.
       22    That is a false statement under penalty of perjury.
       23            He's also made statements that there is no evidence
       24    that Mr. Estrada ever visited these locations.  Obviously,
09:23AM 25    there is evidence now with the reply.  At the time of -- at the

1   time of his opposition, he didn't have the benefit of those

2   photographs.  So I'll give him that leeway.

3            But there is actually evidence in the DA's own file.

4   They have geolocation data showing that Mr. Estrada was at

09:24AM 5   these locations.  So their prosecution, in claiming he was

6   never there, is undermined by their own evidence in their own

7   search warrant.

8            THE COURT:  Did the prosecution have that evidence

9   when the prosecution initiated the criminal -- initiated the

09:24AM 10  criminal prosecution?

11           MR. DARNELL:  Yes, Your Honor.  They signed a search

12  warrant, under penalty of perjury, on March 4, 2022.

13           THE COURT:  But how much of this information,

14  this -- what's the word I'm looking for?  Exculpatory

09:24AM 15  information.  How much exculpatory information did the

16  prosecution have at that time?

17           MR. DARNELL:  I believe they had -- the exculpatory

18  information I'm referring to, as described in their search

19  warrant of early March 2022, that includes geolocation data,

09:24AM 20  cell tower data for Estrada's cell phone, showing that he was

21  in the proximity of Corona Animal Hospital for 90 minutes on

22  the day in question.  Despite that, they have now come before

23  this Court and said there's no evidence that he was ever there.

24           THE COURT:  What's the status of the criminal

09:25AM 25  prosecution?  I know there was a hearing set on the demurrer on

```
  1    July 1st.  I don't know what happened.  What's the status now?
  2              MR. DARNELL:  I believe -- I will have to defer to
  3    my colleague on more details.  I don't want to speak out of
  4    turn or misstate.  But my understanding is that there was
09:25AM 5    another continuance.  So no rulings, no formal arraignment.
  6              MR. SMITH:  I'm not sure about the arraignment.
  7              MR. DARNELL:  I'm not sure about the arraignment
  8    either.
  9              But no formal rulings on any merit-based issues.
09:25AM 10   And I think the prosecution did recently provide some
 11    discovery, including the search warrant that I just described.
 12    But I don't think all discovery has been provided in that
 13    criminal case.
 14              THE COURT:  But it does not look, from your
09:25AM 15   perspective -- your perspective and your client's perspective,
 16    that the prosecution is backing down and will abandon this
 17    case?
 18              MR. DARNELL:  I have not yet seen any indication of
 19    that, Your Honor.
09:26AM 20             THE COURT:  Okay.  Thank you for the aside.  Please
 21    continue.  Poke more holes.
 22              MR. DARNELL:  Yes, Your Honor.  Let me see if I
 23    can -- I think I made my -- my most significant point that I
 24    want the Court to understand is that the analysis of the
09:26AM 25   District Attorney's theory of ADA standing and deceit and fraud
```

before the federal courts, that has to be included in the

*Younger* abstention exception analysis in the Court's tentative,

and it is not.

The Court also does make a comment -- I appreciate

09:26AM the question.  The Court asked at page 2 of the tentative:

"...what happens when those same ADA

litigants conduct high-frequency litigation

fraudulently and deceitfully..."

The Court continues by saying "That question is not

09:26AM before the Court here."

I think that's incorrect, Your Honor.  That question

is before the Court here.  That question has to be answered.

It's wrapped up into the *Younger* exception.

THE COURT:  So the question that's before the Court

09:27AM is if there's evidence that the high-frequency ADA litigants

are not behaving fraudulently and deceitfully, then that

question is before me?

MR. DARNELL:  I believe it's before Your Honor.

THE COURT:  And if I conclude that they are not

09:27AM behaving fraudulently and deceitfully, then I should issue the

requested injunction?

MR. DARNELL:  Yes.  I would phrase the question

slightly differently.  What happens when the prosecution's

theory of fraud contradicts and undermines the ADA statute and

09:27AM Ninth Circuit precedent?

        1            Another issue, stated differently, what happens when

        2    the state prosecution conflicts with the U.S. Constitution,

        3    federal act of Congress, the ADA?

        4            THE COURT:  Now, let's say you're dead right, that

09:28AM  5    all of your evidence about why plaintiffs were not behaving

        6    improperly in any way -- you're dead right about all that.

        7    They're vindicated.  The criminal prosecution either fails with

        8    an acquittal or is dropped.

        9            Don't your clients still have remedies available to

09:28AM 10    them a Section 1983 lawsuit or -- I'm not going to be their

       11    lawyer, but I can think of many things that perhaps they could

       12    do.  Is that not the case?

       13            MR. DARNELL:  Well, they do have a remedy,

       14    Your Honor.  They have filed an ADA retaliation lawsuit in this

09:28AM 15    case.  They contend that the State's prosecution violates the

       16    ADA's anti-retaliation statute.

       17            THE COURT:  When you say they filed that case,

       18    you're talking about --

       19            MR. DARNELL:  It's in the First Amended Complaint

09:29AM 20    before Your Honor in this case.  It's set forth at page 2,

       21    page 1, page 9.  The anti-retaliation provisions are cited to

       22    extensively in the First Amended Complaint.  It's actually

       23    paragraph 2, paragraph 9, and paragraph 19 of Docket 18, which

       24    is the First Amended Complaint.

09:29AM 25            THE COURT:  So I'm looking at that.  Which claim for

```
 1   relief are you referring to?
 2            MR. DARNELL:  Well, it's the injunctive relief claim
 3   based upon the criminal prosecution's violation of
 4   anti-retaliation and anti-interference provisions.  If you want
 5   to be more particular, you can look at paragraph 2 and
 6   paragraph 19, Your Honor.  And the third cause of action is
 7   also specifically for violation of the anti-retaliation
 8   provision.
 9            THE COURT:  And what remedies are available to
10   plaintiffs under the third cause of action?
11            MR. DARNELL:  Good question, Your Honor.  The same
12   remedies that the Court granted in Dilworth, which is the civil
13   rights case about the African American men who tried to sit in
14   the nonwhite section, and the DA there prosecuted them.  The
15   federal court in that case granted an injunction ultimately.
16   Well, I should say it went up and then it went back down with
17   an order to the trial court to consider the granting of an
18   injunction because the state prosecution violated federal law.
19            THE COURT:  So two things.  Dilworth was Fifth
20   Circuit?
21            MR. DARNELL:  Yes.
22            THE COURT:  And the answer to my question, what
23   remedies?
24            MR. DARNELL:  Injunction.
25            THE COURT:  Injunction.
```

09:29AM (line 5)
09:30AM (line 10)
09:30AM (line 15)
09:30AM (line 20)
09:30AM (line 25)

1          MR. DARNELL:  I mentioned *Dilworth* because *Dilworth*

2     applies the same exact remedies and the same statutory basis

3     for granting injunctive relief as specifically authorized by

4     the ADA statute.  The ADA anti-retaliation provisions

09:31AM  5     specifically reference injunctive relief.

6          THE COURT:  Okay.  So let's say I ultimately

7     conclude you're dead right on your third cause of action in the

8     First Amended Complaint and I grant an injunction.  What does

9     that injunction say?  "County, don't prosecute these plaintiffs

09:31AM 10     as you are doing.  Stop that"?

11          MR. DARNELL:  We've asked for five things in our

12     moving papers, to stay the prosecution; to dismiss the

13     prosecution if the Court finds that it truly does violate -- at

14     this point we're on a preliminary injunction.  So, to be fair,

09:31AM 15     Your Honor, your ruling in this case would most appropriately

16     be preliminary in nature.  But, ultimately, we will be seeking

17     an order of dismissing the prosecution entirely.  But I think

18     at a minimum, at this stage in the preliminary injunction, the

19     Court should stay the prosecution.

09:32AM 20          The DA should be ordered, the third item, to retract

21     its press release concerning the plaintiffs.  It's based on a

22     fundamental misunderstanding or a flawed view of ADA law where

23     they've accused an attorney in good standing before the State

24     Bar, before the State, with no criminal history whatsoever, of

09:32AM 25     engaging in fraud and deceit in a public press release, which

```
 1    is highly unusual and perhaps politically motivated,

 2    Your Honor.  I don't have evidence before that.  This is

 3    argument.

 4            The fourth point is that we want the DA to be

 5    restrained and enjoined from interfering with pending lawsuits

 6    based on similar flawed views and reasoning about intent or

 7    motivation.  What they're doing is chilling the First Amendment

 8    right to petition the courts and do things that are

 9    specifically authorized by ADA juris prudence, particularly

10    CREEC, in the Ninth Circuit.  What they describe as the

11    manufacturing of ADA claims is an attack on tester ADA claims.

12            The Ninth Circuit and other courts, including the

13    U.S. Supreme Court, have repeatedly referred to testers in

14    similar contexts -- civil rights statutes as well as, in

15    particular, with ADA claims -- as being legitimate plaintiffs

16    with every right to pursue the claims provided by the ADA.

17    This is an attack on those principles, and it's a violation of

18    the fundamental policy behind the ADA statute.

19            The last item is that the District Attorney's Office

20    be restrained and enjoined from using the fruits of its

21    investigation in further acts of, what I will call, unlawful

22    retaliation.  I think it's appropriate that the Court phrases

23    the injunctive relief being granted in the context of the DA's

24    flawed or unlawful interpretation of the ADA statute.  If they

25    contend somehow that this is actually fraud or deceit and it
```

```
   1   violates the ADA or violates some other statute, that would be
   2   a different issue.  And that's not what we're seeking.
   3           THE COURT:  All right.  Thank you.  That's helpful.
   4           Let me posit a hypothetical world where plaintiffs
09:34AM  5   either did not bring this lawsuit or I go with the tentative
   6   and dismiss it.
   7           Let's say the prosecution -- the criminal
   8   prosecution, again, either moves forward and results in an
   9   acquittal or is dropped because the prosecution determines that
09:34AM 10   it has a meritless case.  Is it not true that plaintiffs still
  11   have remedies -- have more remedies available to them under
  12   Section 1983 or otherwise?  Could they not still obtain perhaps
  13   money damages?
  14           I mean, there's an allegation here that these
09:35AM 15   plaintiffs and other ADA plaintiffs have deliberately chosen
  16   not to bring new claims because of the existence of this
  17   lawsuit.  I can see an argument where money damages could arise
  18   from that.
  19           Are there not remedies available, if all of that is
09:35AM 20   true, at the end of the day?
  21           MR. DARNELL:  Two things.  I would contend that
  22   there are remedies available.  Being an advocate for my client,
  23   I will also recognize that the defense would argue otherwise.
  24   The defense would argue that this Court's ruling on the *Younger*
09:35AM 25   abstention doctrine constitutes res judicata or collateral
```

```
 1   estoppel in the finding that the federal court has no

 2   jurisdiction to restrain or to preside over an action against

 3   the District Attorney relating to this conduct.

 4           So whether it's 1983 or whether it's the ADA

 5   anti-retaliation statute that we have, this Court's ruling,

 6   they will argue, has collateral estoppel or res judicata effect

 7   on other federal claims.

 8           The second part of --

 9           THE COURT:  Do you have any authority, one way or

10   the other, on that?  I'll tell you I never regarded the Younger

11   abstention of having those broad effects.

12           MR. DARNELL:  I think that we would argue -- if that

13   argument was made, we would argue that Younger abstention is

14   essentially a jurisdictional or standing preliminary

15   evaluation.  But I don't know the answer where the Court would

16   ultimately rule, if that issue was raised.

17           If counsel wants to stipulate that they will not

18   challenge the federal court's jurisdiction in the event a 1983

19   action is filed, then I feel a little bit more comfortable with

20   where we stand.  But the issue really that I want to focus on

21   is what's before the Court.  What's before the Court is an ADA

22   anti-retaliation claim that's ripe, that's pending, and that's

23   at issue in this case.  So I appreciate the hypothetical.

24           I would also note that, if my client prevails in the

25   criminal prosecution, there may be a malicious prosecution
```

The marginal timestamps: 09:36AM (line 5), 09:36AM (line 10), 09:36AM (line 15), 09:37AM (line 20), 09:37AM (line 25).

**UNITED STATES DISTRICT COURT**

1    claim to be asserted back against them in state court.  So

2    there may be other rights and other remedies.  But I don't

3    think that should influence the Court's analysis of the rights

4    and the remedies that are presently pending before it.

09:37AM  5              THE COURT:  Okay.  That's helpful.  What else?

6              MR. DARNELL:  I think I've hinted on the -- on why

7    we contend 12 jurors is not an adequate forum and a criminal

8    judge in the state court is not an adequate forum.  There's

9    numerous cases, that I'm sure Your Honor is aware of, that talk

09:38AM 10   about ADA standing being a threshold legal issue to be

11   determined by the federal courts.  And, obviously, there's a

12   plethora of case law addressing that.

13             The last thing I would comment on -- there's two

14   things, Your Honor, the first thing being the Court's

09:38AM 15   opposition seems to make much ado about the state's interest --

16   it starts at the bottom of page 7 and carries over to the top

17   of page 8 -- the state's interest in enforcing the Unruh aspect

18   of the underlying claims or perhaps addressing that.  I would

19   respectfully submit that the federal courts, Congress, and the

09:38AM 20   U.S. Constitution have a much more substantial compelling

21   interest in this case.

22             First, the prosecution is directed at statements in

23   federal court in unverified pleadings about the ADA standing.

24   As a result, the federal courts in Congress have a compelling

09:39AM 25   interest in the state court prosecution, particularly when that

prosecution conflicts with federal ADA law.

       The bottom line here, Your Honor, is while the DA
may have some interest in the Unruh statute, it's secondary to
the federal interest.  And, more importantly, the DA is not
09:39AM 5   Congress.  It does not have the power to write or revise the
ADA statute.  It does not have the power to say what
Ninth Circuit law is with respect to ADA standing.  And it does
not have the power to enforce what they contend the ADA says
when it violates controlling federal precedent.

09:39AM 10        My last point, Your Honor, is the tentative does
not -- and I think I've hinted on this.  The tentative does not
appreciate or acknowledge the underlying claims.  The First
Amended Complaint in the injunctive relief is based on
constitutional violations, namely, the First Amendment and the
09:40AM 15   right to petition the courts.  It's set forth at paragraph 1 of
the First Amended Complaint.

       The First Amended Complaint also alleges how the
DA's criminal prosecution violates the ADA anti-retaliation
statute.  Again, that's the third cause of action in the First
09:40AM 20   Amended Complaint or the third claim.  It's also set forth at
paragraph 2, paragraph 9, and paragraph 19.

       Paragraph 19 is kind of the summary paragraph, that,
when you want to talk about what this case is about and the
constitutional violations and the ADA retaliation issues, there
09:40AM 25   are six bullet points listed in paragraph 19.  That's this

```
 1    case, Your Honor.  The tentative doesn't acknowledge that, and
 2    we believe it should.  And we believe that there's case law
 3    that specifically notes the U.S. Supreme Court, in particular,
 4    in Dombrowski vs. Pfister, 380 U.S. 479 at 486.  This is cited
09:41AM  5    in our motion at pages 18 to 19.
 6              In this case, the U.S. Supreme Court acknowledged
 7    that criminal prosecutions need to be more closely scrutinized
 8    when they are based on an overbroad sweep or the hazard or loss
 9    or substantial impairment of precious constitutional rights are
09:41AM 10    at issue.  So we believe that U.S. Supreme Court precedent
11    requires the Court to put the underlying claims in proper
12    context in the tentative, which I don't think those claims have
13    even been noted anywhere in the tentative.
14              Your Honor, I believe I've taken more of the Court's
09:42AM 15    time than I wanted to.  I'd be happy to answer any other
16    questions that the Court may have or perhaps after my colleague
17    has an opportunity to address anything before the Court.
18              THE COURT:  The -- I think it's the --
19    next-to-the-last major point that you made, you talked about
09:42AM 20    the federal court's interest in -- I'm paraphrasing -- interest
21    in, among other things, ensuring the ADA law is properly
22    enforced.  Again, I'm paraphrasing.  The challenges to the
23    criminal prosecution that you're raising with me, all of those
24    are available and can be raised with the state court in
09:43AM 25    connection with the criminal prosecution; correct?
```

1          MR. DARNELL:  They can be.  But are they adequate?

2     Is the forum adequate?

3          THE COURT:  Why would that forum not be adequate?

4          MR. DARNELL:  Because -- and I think I touched on

09:43AM 5     this earlier -- all of the ADA cases that address standing, and

6     even standing cases that Your Honor has issued specifically

7     know how that's a threshold legal issue to be determined by the

8     federal court.  It's a federal ADA claim.  It's before the

9     federal court.  It's a, quote, "essential and unchanging part

09:43AM 10    of the case or controversy" requirement for Article III.  It's

11    an integral component of subject matter jurisdiction in those

12    underlying cases before the Court.  The federal courts know

13    these issues in and out.

14          Criminal courts, 12 jurors sitting in a box in a

09:44AM 15    criminal case in Riverside, they know nothing about this.  That

16    is why this Court is more appropriate to adjudicate the ADA

17    standing issues, especially, again, when they tie into *Younger*

18    exception.

19          THE COURT:  All right.  I understand that point.

09:44AM 20    Thank you very much.  And I'll give you a chance to respond to

21    Mr. Smith.

22          MR. DARNELL:  Thank you, Your Honor.

23          THE COURT:  Thank you.

24          Mr. Smith?

09:44AM 25         MR. SMITH:  Thank you, Your Honor.

```
 1              THE COURT:  Please, same thing.
 2              MR. SMITH:  Yes.
 3              THE COURT:  Please attack the tentative or buttress
 4         it.  And, of course, please respond to the eloquence of
09:44AM 5  Mr. Darnell.
 6              MR. SMITH:  Yeah.  Thank you, Your Honor.
 7              I guess I would start out by -- obviously, the
 8         tentative is in favor of the County.  So I certainly agree with
 9         the tentative.
09:45AM 10             I listened to Mr. Darnell.  He raised very good
 11        issues.  He -- honestly, he did.  And I think he argued very
 12        eloquently and made some good points, but I don't think they're
 13        valid points.  And I think the arguments were blending two big
 14        issues.  One is application of the Younger abstention doctrine
09:45AM 15 and what are the elements for application of that abstention
 16        and have those elements been met.  That's one issue,
 17        Your Honor, that involves its own separate analysis.  And then
 18        whether or not a preliminary injunction should be granted
 19        here -- because that's the remedy that's being sought pursuant
09:45AM 20 to this motion for the preliminary injunction -- obviously,
 21        that has its own elements, in all likelihood, it's excess and
 22        whatnot.
 23              And even in the Court's tentative, I believe -- and
 24        I don't want to misspeak what the Court was saying, but my
09:46AM 25 understanding of the tentative was we need to first look at
```

1    *Younger* and whether *Younger* applies before we really even get

2    into the underlying merits that might give rise and warrant an

3    injunction.  And so I think --

4         THE COURT:  Your point is even if you lose on

09:46AM 5    *Younger* -- *that is, I abandon the tentative and do not invoke*

6    *Younger* abstention -- you still win in the sense that I should

7    not issue a preliminary injunction?

8         MR. SMITH:  That's right, Your Honor.  But I'm also

9    saying that I believe a lot of Mr. Darnell's arguments were, I

09:46AM 10   believe, an attack on the prosecution's case.  In other words,

11   the merits of the underlying criminal case for which that

12   criminal judge can resolve all of those issues.

13        Now, I understand the way Mr. Darnell was arguing

14   that was that, well, that all relates to that singular

09:47AM 15   exception -- I know there's a couple more than that, but the

16   exception to the *Younger* case that that -- the lack of merit

17   to the prosecution focused on an absence of standing in

18   connection with the ADA claims or lawsuits that were filed,

19   that that constitutes bad faith and, therefore, you know, bad

09:47AM 20   faith is an exception to *Younger*.  And I can address that in a

21   few minutes.  But, certainly, I believe there's a -- the

22   elements of *Younger*, before we even get to the exception, they

23   all apply here, Your Honor.  And I think the Court pointed that

24   out in the tentative.

09:47AM 25        I mean, there's no dispute here that there's, one,

1    an ongoing criminal prosecution, that the proceedings do

2    implicate important state interest.  Whether there's federal

3    interest in ADA litigation -- I mean, you even concede that,

4    Your Honor, in your tentative.  But the standard for *Younger* is

09:48AM  5    whether the proceedings -- those criminal proceedings implicate

6    important state interest -- and they certainly do, and you

7    pointed them out in the tentative -- and whether or not this

8    proceeding, what's being pursued here, would interfere with

9    those proceedings.  And, obviously, they would in terms of the

09:48AM 10    remedy that's being sought here.

11        And then the other big element with respect to

12    *Younger* is whether there are adequate opportunities in the

13    state proceeding to raise these constitutional challenges,

14    which there absolutely are.  I mean, there's been a demurrer

09:48AM 15    that's been filed in the criminal case that allows those

16    criminal defendants to make these very same challenges to the

17    criminal judge.

18        THE COURT:  I understand Mr. Darnell to be pushing

19    back very hard on the existence of the elements, *Younger*, other

09:48AM 20    than he made the point that the tentative does not deal with

21    the plaintiffs' standing -- I'll call it a standing defense to

22    the criminal prosecution.  But I understood Mr. Darnell to be

23    arguing, among other things, the bad faith exception to the

24    *Younger* doctrine.

09:49AM 25        And let me jump straight to that.  I do want to hear

1    the rest of your argument, but it was troubling hearing about

2    the -- again, I'll call it an aggressive execution of the

3    search warrant, at least on -- or warrants -- at least on

4    Mr. Estrada.  You know, there's a photograph of the SWAT-like

09:49AM  5    police officers -- well, police officers employing SWAT-like

6    tactics to serve a subpoena -- to serve a search warrant,

7    rather, on a gentleman who's a paraplegic and who's not accused

8    of committing any kind of a violent crime.  He's accused of

9    filing a paper that had some falsities in it.

09:50AM 10              Why was it necessary to do that?

11              MR. SMITH:  I -- well, I don't have that evidence,

12    Your Honor, in terms of what we submitted in our paperwork.

13    Certainly, he was arrested pursuant for violations of Penal

14    Code 115, a felony.  There were several felonies, procuring --

09:50AM 15    offering false or forced instruments to public office.  He was

16    also arrested for conspiring to violate Business and

17    Professions Code 6128, that prohibits attorneys from engaging

18    in deceit or conclusion [sic].  So there are multiple felonies

19    that he was charged with.

09:50AM 20              So the fact that the -- I think the claim in the

21    moving papers is that he should have been given some kind of

22    advance notice or been permitted to turn himself in.  I'm not

23    aware of any legal requirement.  And the fact that law

24    enforcement went out there in what is being described as a

09:51AM 25    less-than-pleasant approach to arresting someone or searching

 1   someone's home does not give rise at all to a bad faith conduct

 2   by a prosecutor.

 3          THE COURT:  Is that typically the way that the

 4   police department executes a search warrant in circumstances

09:51AM  5   like this one?

 6          MR. SMITH:  I can say it's not untypical,

 7   Your Honor.  I know this is not before the Court, but I can

 8   absolutely represent --

 9          THE COURT:  Well, it kind of is in the sense of the

09:52AM 10   bad faith.

11          MR. SMITH:  Well, anecdotally, Your Honor -- I know

12   this is not evidence before the Court.  But in Riverside, my

13   brother-in-law, who works for me, his wife is a nurse.  And she

14   apparently neglected to treat bedsores on a patient.  That

09:52AM 15   patient ultimately expired, and Emily was charged with a

16   felony.  And at 5:00 o'clock in the morning, SWAT team members

17   showed up in Riverside at my brother-in-law's house, surrounded

18   the house, and took her into custody.

19          THE COURT:  Okay.  So the answer may be that it is

09:52AM 20   typical when executing a search warrant pertaining to an

21   underlying alleged felony.

22          MR. SMITH:  Uh-huh.

23          THE COURT:  One of the things you said, Mr. Estrada

24   was arrested.  Was he arrested?  Because I'm looking at

09:52AM 25   Exhibit G of -- well, attached to defendants' opposition

1  papers, which is -- first page is a supplemental report,
2  Riverside County District Attorney supplemental report.  And
3  it's provided by -- I'm going to get this name wrong -- Johnny
4  Gubernat, G-u-b-e-r-n-a-t, I belive.
09:53AM  5         In any event, Suspect -- I'm about two-thirds of the
6  way down the page -- Suspect -- "Sus Number 1.  Name:  Estrada,
7  Bryan Eduardo."  Above that, "Arrested:  Yes, No," the "No" box
8  is checked.  And I think, reading the summary supplemental
9  narrative, the rest of Exhibit G, it does not say -- the person
09:54AM 10 providing this report does not say that Mr. Estrada was
11 arrested.
12         MR. SMITH:  Well, he's currently facing felony
13 criminal charges, Your Honor.
14         THE COURT:  So at least he was not taken into
09:54AM 15 custody at that time?
16         MR. SMITH:  Honestly, Your Honor, I don't know the
17 answer to that.  I thought he was.
18         THE COURT:  Okay.  Well, it's unclear in my mind.
19 But we're talking about the bad faith allegation by plaintiffs.
09:54AM 20 So thank you for your response on the aggressive execution of
21 the search warrant.
22         What can you tell me about the press release?  Are
23 those typical?  Is this atypical?  Does the County issue those
24 in every case where there's some public interest that is not
09:55AM 25 just a -- I don't mean to minimize it, but a common street

```
 1   crime that doesn't -- isn't likely to generate public interest?

 2   And was this press release atypical in any way in terms of its

 3   substance or tone?  What can you tell me about --

 4           MR. SMITH:  Yeah, the press release, Your Honor, is

 5   almost -- I think it's verbatim from the arrest warrant.  So

 6   the language is pulled from an arrest warrant signed by the

 7   judge.

 8           They aren't done, obviously, in every single case.

 9   We don't see them out in Riverside every single day, but there

10   are various arrest warrants, and then press releases follow.

11   Certainly, matters of public interest.  But the fact that --

12           THE COURT:  What's the process for issuing a press

13   release based upon an arrest?  Who makes that decision and how

14   is it made?

15           MR. SMITH:  I believe it's the District Attorney's

16   Office, working through their public information office.

17   Beyond that, I don't know.  I don't know all the details with

18   respect to issuance of a press release.

19           THE COURT:  And another answer is it's not in the

20   record before me.

21           MR. SMITH:  It's not in the record before

22   Your Honor.  But I would just point out the fact that there's

23   no evidence that that press release was in any way --

24           THE COURT:  Atypical?

25           MR. SMITH:  -- atypical, inaccurate, false in any
```

way.  And certainly not indicative of bad faith.  They were

arrested.  The facts in the press release are not inaccurate.

And even if there were some inaccuracies, there's no indication

that that's the result of any bad faith action on the part of

09:57AM 5   the prosecution.

THE COURT:  What's the current status of the

criminal prosecution?  We talked a little bit about the hearing

that was set for July 1st on the demurrer that apparently, I

understand, has been continued.  But in view of the additional

09:57AM 10  evidence -- I'll call it information -- that plaintiffs have

provided, particularly in their reply papers, has the County

rethought this criminal prosecution?  Is it going to be

dropped?  What's the status?

MR. SMITH:  I don't know the status to that,

09:57AM 15  Your Honor.  I will say the evidence that was provided to

Mr. Darnell for which he provided to the Court in the reply,

that was recently released by the District Attorney, like,

within the last few days -- in fact, I wasn't even sure at the

time -- within the last week -- couple weeks or so.  But I

09:58AM 20  believe the DA released that in the criminal case prior to the

actual date that, you know, the prosecutor and the parties were

required in that criminal case to disclose evidence.  So

they're still, I think, fairly early in that process in terms

of discovery.

09:58AM 25  For example, the transcript, you know, we got it at

```
 1   the same time that Mr. Darnell did, when it was released by the

 2   District Attorney in the criminal case, the audio interview and

 3   some of these other things.

 4           THE COURT:  Housekeeping question.  You have filed

 5   a -- an application for leave to file a sur-reply.

 6           MR. SMITH:  I did, Your Honor.

 7           THE COURT:  And I looked at the sur-reply, I read

 8   it.  There was no opposition.  I guess I should turn this

 9   question to Mr. Darnell.

10           Should I just grant that application for leave to

11   file a sur-reply?

12           MR. DARNELL:  No, Your Honor.

13           THE COURT:  Okay.  We'll come back to that.

14           MR. DARNELL:  I didn't get an application.  The

15   sur-reply -- under the Local Rules you have to file an ex parte

16   application.  They just filed it, Your Honor.

17           THE COURT:  Well, they filed it with a -- there's a

18   request for leave to file it, which I took it as an ex parte

19   application.

20           MR. DARNELL:  Well, Your Honor, you can grant it.

21   But I would say that there's ample authorities that are cited

22   in our reply brief that rebuttal evidence is not new and does

23   not justify --

24           THE COURT:  Yes, I saw that.

25           MR. DARNELL:  That's the Ninth Circuit case Toys "R"
```

*Us.*  It's abundantly clear that if you're rebutting what the

opposition claims, that does not entitle a party to file a

sur-reply.

THE COURT:  All right.  I'm going to grant that

09:59AM  application for leave to file a sur-reply.  That will be in the

minute order memorializing this hearing.  But I appreciate what

you're saying, Mr. Darnell.

Okay.  Mr. Smith, sorry, I hijacked your argument

with these questions and this housekeeping issue, but please

09:59AM  return to it and tell me what else you'd like to tell me.

MR. SMITH:  Just on the bad faith, Your Honor, I --

there's no evidence that the prosecutor is pursuing bad faith.

The only thing that's been offered is the press release, the

manner of the arrest or the search, and this standing issue,

10:00AM  that somehow the prosecutor is misinformed or misunderstands

the law and, therefore, that equates to bad faith.  And this

application of this objective standard rather than a subjective

standard constitutes bad faith on the part of the prosecutor.

THE COURT:  So I understand Mr. Darnell to be asking

10:00AM  me to dig into the standing issue.

MR. SMITH:  Yeah.

THE COURT:  As I do often in ADA cases.  And he

asked me to come to the conclusion that plaintiffs here,

Mr. Estrada in particular, has standing -- had standing to file

10:01AM  those three ADA cases that are at issue.  And accordingly, the

1    prosecution's theory in the criminal case is necessarily

2    faulty.  And because it's necessarily faulty, the prosecution

3    is acting in bad faith in continuing the criminal prosecution,

4    and I ought to do something about that.

10:01AM 5        Now, my point is he's asking me to dig into this --

6    the criminal standing -- the ADA standing issue.  My tentative

7    takes the position, "Well, *Younger* abstention, I'm going to

8    step back from that and let the criminal process take place in

9    state court."  I think that's what the tentative says.  That's

10:02AM 10   what *Younger* tells me to do as the better course.

11       But should I dig into -- should I dig into the

12   standing issue?

13       MR. SMITH:  No.  I don't believe the Court should at

14   all.

10:02AM 15       THE COURT:  Well, is Mr. Darnell simply wrong in

16   advocating -- in taking the position that Mr. Estrada had

17   standing to prosecute those three cases?

18       MR. SMITH:  He is wrong.  And the prosecutor has

19   filed criminal charges against Mr. Estrada and his attorney for

10:02AM 20   conspiring and colluding to violate the law, to violate

21   Business and Professions Code 6128.  That prohibits deceit and

22   collusion to deceive a party or court; right?  So, essentially,

23   bogus ADA claims.

24       I think we've outlined some of the evidence for

10:03AM 25   that, Your Honor.  We've submitted the ADA complaints.  The

```
 1   DA's position is -- whether you call it standing or elements of

 2   the case or a basis for the lawsuit, the DA's position is that

 3   he was never out there, could have never observed ADA

 4   deficiencies, never intended to go there, was encouraged and

 5   told to go there by Mr. Cornell, the attorney, as part of a

 6   scheme to pressure and extort these small business owners to

 7   pay a few bucks because they could not afford to defend

 8   themselves.

 9            THE COURT:  So the prosecution, the defendant here,

10   disbelieved the evidence that plaintiffs have submitted,

11   particularly in their reply papers, to show that, for example,

12   Mr. Estrada really did, I'll call it, investigate, say, the

13   first place, the vet shop or --

14            MR. SMITH:  The prosecution also believes the

15   plaintiffs' own evidence, Your Honor, and that is that the

16   audio interview of Mr. Estrada where he states, yeah, the

17   initial claims were legitimate, and then he's asked questions

18   about all the others, and he specifically asked questions

19   about -- I believe it's one of the three -- I think it might be

20   the vet -- that, yeah, he doesn't remember, he wasn't there,

21   that this was all done at the behest of the lawyer.

22            And, if I may, Your Honor, there was an accusation

23   that continues to be made -- we've addressed it in the

24   sur-reply -- that Deputy District Attorney Timothy Brown

25   committed perjury.  There's only one reference in the moving
```

**UNITED STATES DISTRICT COURT**

```
 1   papers and in the reply in terms of Mr. Brown allegedly

 2   committing perjury, and that's with respect to Mr. Brown's

 3   statement in his declaration that there was texting going on

 4   between Mr. Estrada and Mr. Cornell.  That's nowhere in the

 5   transcript.

 6           In our sur-reply, Your Honor, we point out exactly

 7   where it is -- exactly where it is as far as the texting that

 8   was going on between the two of them, Mr. Cornell texting

 9   Mr. Estrada, telling him where to go.  So I would like to point

10   that out.

11           THE COURT:  So the defendant stands by Mr. Brown's

12   declaration on that particular point?

13           MR. SMITH:  We do, Your Honor.  Yes.

14           THE COURT:  Okay.  Please continue.

15           MR. SMITH:  I think we've covered the -- we've

16   covered the bad faith.  I don't believe it's a purely objective

17   standard.  I think in our opposing papers we've cited the *Perez*

18   *vs. Ledesma* case and a quote from it, which I had that in front

19   of me, but the quote is:

20           "In cases of proven harassment or

21       prosecutions undertaken by state officials in bad

22       faith without hope of obtaining a valid conviction

23       and perhaps in other extraordinary circumstances

24       where irreparable injury can be shown, is federal

25       injunctive relief against pending state
```

**UNITED STATES DISTRICT COURT**

1          prosecutions appropriate."

2               So I think that's important to point out, that there

3      is absolutely a good faith basis for these criminal

4      prosecutions.  We are at this point where the charges are going

10:06AM 5      forward.  There's going to be a criminal trial.  Certainly,

6      Mr. Estrada, Mr. Cornell can challenge the prosecution's case

7      before the judge and ultimately before the jury.  Adequate

8      remedies to address the constitutional claims are available to

9      him.  The -- again, most of the arguments deal with the merits

10:06AM 10     made by Mr. -- I believe -- a lot of them, anyway, deal with

11     the merits of this underlying case.

12               The Complaints themselves, if you have a lawyer who

13     knowingly allows a client to file eight, whether it's ADA or

14     state, lawsuits in which there are knowingly false facts in

10:07AM 15     those Complaints designed to pressure small business owners to

16     pay money and extort money from them, those are criminal

17     violations for which a state attorney, District Attorney can

18     pursue.  I suppose an example would be -- and, again, these are

19     why these cases are resolved in the criminal case.  That's

10:07AM 20     where they're appropriate from a *Younger* abstention standpoint.

21               Let's say isn't this -- is this any different than a

22     prosecutor -- I know these aren't the facts of our case, but

23     the prosecutor taking the position that Mr. Estrada does not,

24     in fact, have a disability; that he's really not disabled; that

10:07AM 25     he could get up out of his wheelchair and walk over to your

**UNITED STATES DISTRICT COURT**

1    assistants or walk over to your clerks.

2          And Mr. Darnell would be arguing, "No, he is

3    disabled.  He has a disability.  He's in a wheelchair."

4          And the prosecutor would say, "No, we have evidence

10:08AM  5    that he's not disabled."  Thus that goes to the underlying

6    criminality of what they were doing with respect to these

7    lawsuits.

8          That's really not any different here.  We're saying

9    he wasn't out there, never saw the countertops, never witnessed

10:08AM 10    an ADA violation; that, yeah, you do have to have a reason to

11    go out there.  You can't just randomly go around the country,

12    or not go there at all, and just have some lawyer or convince

13    a lawyer -- have a lawyer sign you up to file all these

14    lawsuits.

10:08AM 15          THE COURT:  Well, backing up for one a little bit,

16    are you denying the tester standing is legitimate?

17          MR. SMITH:  I'm saying that, in this particular

18    case, that is not my understanding of tester standing where

19    he's being told by a lawyer, you know, "We're going to be

10:09AM 20    filing this case" or that case, and the client never goes out

21    to that location; is not, in fact, there; does not, in fact,

22    see the violations.

23          So that would be my position with respect to that,

24    Your Honor.

10:09AM 25          THE COURT:  So, hypothetical, let's say there's a

**UNITED STATES DISTRICT COURT**

place in Riverside County, Acme Distributors.  And a lawyer

notices -- thinks he notices that Acme Distributors does not

have adequate ADA accommodations, whatever it may be -- a curb,

handicap accessible, disabled accessible door -- whatever it

10:09AM  may be.  Lawyer spots that.

Lawyer says to client -- disabled client, who lawyer

has represented many times before in ADA cases, "Gee, go take a

look at Acme Enterprises."

Disabled client goes to take a look and says, "Yeah,

10:10AM  I agree, Lawyer.  Doesn't meet ADA standards."  And the two of

them file a case.  The client, of course, is client, and lawyer

is lawyer.

Is that a legitimate case?  Or is there some defect

in it?  Put aside whether or not the Acme Enterprises complies

10:10AM  with ADA.  But the process that they went through to identify

that location and to file that case investigation, is that a

legitimate case or is it an illegitimate case.

MR. SMITH:  I guess there would be standing in that

particular case.  But that's not this case, from the

10:11AM  prosecution's perspective.

THE COURT:  I understand that last point.  Thank

you.  Sorry for the interruption.  Please continue.

MR. SMITH:  Mr. Darnell did talk about the

importance of the ADA and the federal interest, obviously, in

10:11AM  disabled people being able to pursue violations of the ADA.

There is nothing that -- about that interest that means that you can use the ADA, or any other federal statute for that matter, to engage in criminal conduct.

You know, I use the example of the disabled person who's not disabled.  You know, the ADA doesn't -- there's no federal interest in permitting nondisabled people or people who knowingly do not meet the elements for the claims from pursuing those claims, right?  So -- and that's not an element -- as I understand the *Younger* abstention, it's not an element of the *Younger* abstention.  You look at whether or not there's compelling state interest in proceeding with the criminal case.

As far as the adequate remedies, the Court raised the issue about the 1983 claim.  Like, if Mr. -- the Court raises a good point; right?  Like, if -- I suppose if he's convicted, right, perhaps he might be barred from pursuing a 1983 claim under *Heck v. Humphrey* because, in the civil case, he'd have to seek to invalidate the criminal prosecution.  But if he's acquitted, my understanding is he would have a 1983 claim that he could pursue.

So I'm not aware and I haven't addressed the issue of whether collateral estoppel or res judicata as a result of the *Younger* abstention ruling would bar that subsequent civil lawsuit.

THE COURT:  Should that be a part of my *Younger* abstention analysis, the availability of these 1983 claims, or

1    something that's well past the resolution of the criminal case?

2          MR. SMITH:  It should not, Your Honor, because my

3    understanding of that element of the *Younger* abstention

4    addresses whether or not there are adequate remedies in the

10:14AM  5    underlying state proceeding that allows Mr. Estrada or

6    Mr. Cornell to raise the constitutional challenge that he's

7    making.

8          So, no, I don't -- I just want to address it because

9    it was brought up.  But, no, I don't think the Court needs to

10:14AM 10    address that, what ultimate remedies would be available way

11    down the road should the criminal case resolve in Mr. Estrada

12    and Mr. Cornell's favor.

13          I think I've covered the main points, Your Honor.  I

14    don't have anything else.

10:14AM 15          THE COURT:  I think I asked the so-called

16    housekeeping question.  I think that covers what I wanted to

17    ask --

18          MR. SMITH:  Okay.

19          THE COURT:  -- you, Mr. Smith, on behalf of your

10:15AM 20    client.  Okay.  Thank you.

21          MR. SMITH:  Thank you, Your Honor.

22          THE COURT:  Mr. Darnell, did you have some rebuttal

23    to argue?

24          MR. DARNELL:  Brief.  Very brief.

10:15AM 25          THE COURT:  As you can probably tell, I enjoy

1      engaging with counsel and give you plenty of time to make your

2      record and make your arguments.

3              MR. DARNELL:  And we appreciate it, Your Honor.  We

4      appreciate the Court's time.

10:15AM 5            Just to be clear, I think the Court knows this, but

6      we're not arguing the elements of *Younger*.  We're arguing the

7      exception to *Younger*.

8              THE COURT:  That's what I understood the case to be.

9              MR. DARNELL:  And the exception to *Younger*, as it

10:15AM 10   applies in this context, is much broader than the elements.  I

11     mean, it's a huge exception, particularly when the Court looks

12     at the Ninth Circuit opinion in *World Famous Drinking Emporium*

13     *vs. City of Tempe* -- it's a 1987 case -- that confirms that the

14     exception to *Younger* can apply where the prosecution is

10:16AM 15   intended to discourage constitutionally protected rights.  That

16     gets into the Section 1983 issue, Your Honor.

17             THE COURT:  What's the answer to the question that I

18     posed to Mr. Smith; that is, should I even consider the

19     potential availability of those post resolution of criminal

10:16AM 20   case remedies?

21             MR. DARNELL:  To be fair, I think you need to

22     consider the merits of the DA's case for purposes of the

23     *Younger* exception.  And I think you can also consider what

24     might happen down the line for potential rights and remedies

10:16AM 25   that could be asserted.  I don't think they're dispositive.  I

**UNITED STATES DISTRICT COURT**

don't think they're outcome determinative because a

Section 1983 claim, whenever that's brought way down the road,

cannot address the ongoing violation of the First Amendment

rights that we have here.

10:17AM        And, again, that segues back into *World Famous* and

why there is a *Younger* exception when you're dealing with

constitutional rights.  Only an injunction can stop ongoing and

continuing violations of constitutional rights.  We don't have

a time machine in three years that we can go back and rewind

10:17AM all of this, unfortunately.

        So that's the only thing I wanted to clarify with

respect to the 1983 claim.  I don't have a problem if the Court

were to consider it, but I don't think it's outcome

determinative because what we're asking for is an injunction

10:17AM because of constitutional rights.

        The last point I want to just make briefly is

opposing counsel has not stated -- I mean, I'm still at a loss.

How were the ADA complaints false or deceitful?  How were they

bogus?  What specifically do you contend -- because the things

10:18AM that I've heard so far or seen in the record never went there.

That's been rebutted.  He was there.  He did go there.

        "He didn't have a proper intent."  Well, that's not

consistent with ADA law.  It doesn't matter under the *CREEC*

Ninth Circuit opinion.

10:18AM        "Well, the lawyer told us specifically what

1    businesses to go to."  I think I heard counsel argue that just

2    a few minutes ago.  That's not what the evidence says.  That's

3    not what the record shows.

4         But I will tell Your Honor that, even if that did

10:18AM  5    happen -- it didn't.  There's no evidence of that here, that he

6    was directed about a business to go to or a specific business

7    name.  That just didn't happen.  But even if he did, that's a

8    tester case.

9         THE COURT:  And I think Mr. Smith conceded that --

10:18AM 10         MR. DARNELL:  I thought so.

11         THE COURT:  -- with my Acme Enterprises

12    hypothetical.

13         MR. DARNELL:  I thought so.  And I'm not aware of

14    any case in the Ninth Circuit or any other federal circuit

10:19AM 15    dealing with ADA testers that has said that it's fraudulent,

16    that scenario is fraudulent, that scenario is deceitful, or

17    that scenario can never support an ADA standing claim.  So,

18    apparently, the DA's prosecution is writing novel law or

19    proceeding from that basis.

10:19AM 20         There's one other legal issue.  I heard counsel

21    mention the countertop.  He never went in.  How could he know

22    about the countertop?  That issue is specifically addressed in

23    the reply brief and in the reply declaration from Cornell in

24    Docket 34-1.

10:19AM 25         Mr. Cornell attaches Exhibit 2.  And in paragraph 5

1    of his declaration, he says, "I reviewed the photograph of the

2    interior lobby space of Corona Animal Hospital before I filed

3    the suit.  The photograph showed the counter height was too

4    high and would have created an access barrier for Mr. Estrada."

10:20AM 5          As Your Honor undoubtedly knows, *Doran vs. 7-Eleven*,

6    Ninth Circuit case (2007), an ADA plaintiff, once they

7    encounter one barrier, has the right to sue for all barriers,

8    including those discovered through inspection by an expert or

9    discovered by counsel.

10:20AM 10          That is the law in the Ninth Circuit.  That's the

11   law in this courtroom.  And that is the law that the DA doesn't

12   like and that the DA's prosecution is challenging.

13          There's no question that Mr. Estrada never got to

14   the countertop, that he never got inside.  He couldn't.  There

10:21AM 15   was no adequate parking.  The first access barrier prevented

16   that.  But under *Doran vs. 7-Eleven*, he has the right and

17   legitimate standing to sue for all access barriers, including

18   that countertop that was discovered by Mr. Cornell before the

19   lawsuit was filed.

10:21AM 20          There is nothing wrong with these ADA cases; there

21   is something wrong with the DA's prosecution.  We ask that the

22   Court address that.

23          THE COURT:  Thank you.  I appreciate that.

24          Mr. Darnell, if I stick with the tentative -- and

10:21AM 25   I'll go back and look at a lot of things and think about this a

```
 1    lot more, but if I stick with the tentative, it looked to me

 2    like I should dismiss the case entirely.  I know you don't want

 3    me to stick with the tentative.  But if I do and apply the

 4    *Younger* abstention, should I dismiss the case?  And let me also

 5    point out that that would also give you a right to appeal.

 6              MR. DARNELL:  We would have a right to appeal.

 7    So --

 8              THE COURT:  I shouldn't say it gives you that --

 9    that's not my issue.  It may or may not.

10              MR. DARNELL:  The appellate issues are inappropriate

11    for me to discuss at this stage.  Obviously, that should not

12    influence the Court's opinion, and I don't think it would.  I

13    do recognize the procedural status of the case.

14              I think it would be wrong to dismiss, but it's the

15    same reason why it would be wrong to apply *Younger* and not

16    apply an exception.

17              THE COURT:  But the question is if I apply *Younger*,

18    if I deem it appropriate to abstain, should I dismiss the case?

19              MR. DARNELL:  My position is no, you should not.

20    But it's the same reason why you should not abstain.  It's

21    because the third cause of action is for violation of the ADA

22    anti-retaliation statute.

23              THE COURT:  Okay.  That's kind of where I was going.

24              MR. DARNELL:  Abstention means that that statute is

25    meaningless.  Congress created an abrogation.  They abrogated.
```

1    They carved this out.  That statute is intended to sue states,

2    public entities that violate the ADA.  By exercising

3    abstention, by not applying *Younger* exception, this Court would

4    essentially be rendering that statute meaningless, which is

10:23AM 5    another reason why we think abstention is inappropriate.

6              THE COURT:  Let me play devil's advocate.  The

7    remedies you seek in the third cause of action are the same

8    remedies that we're talking about that you're seeking through

9    this motion for preliminary injunction.

10:24AM 10             MR. DARNELL:  The remedy is injunctive relief under

11   the ADA statute, yes.

12             THE COURT:  And, specifically, injunctive relief

13   pertaining to the criminal prosecution.

14             MR. DARNELL:  It's the same remedy, yes, in

10:24AM 15   application and in law, if I understand the question.

16             THE COURT:  So why does the existence of the third

17   cause of action counsel against dismissing the entire case if I

18   deem *Younger* abstention applicable?

19             MR. DARNELL:  Because -- well, the way the question

10:24AM 20   is framed, I cannot answer that.  My logic is that the third

21   cause of action and the federal right that is provided by

22   Congress under that cause of action is another reason why

23   abstention is inappropriate.  But, fundamentally, if you take

24   it one step further -- no, I don't think I'm -- let me put it

10:25AM 25   this way.  If the Court exercises abstention, I do not have an

```
 1    independent argument for why dismissal is inappropriate.

 2                THE COURT:  Okay.  Thank you.

 3                Mr. Smith, same question.  I think I know your

 4    answer.  If I deem Younger abstention appropriate here, should

 5    I dismiss the case?

 6                MR. SMITH:  I believe you should, Your Honor.  The

 7    remedy is injunctive relief in the lawsuit.  So yes --

 8                MR. DARNELL:  Your Honor --

 9                And I apologize for interrupting.

10                MR. SMITH:  It's all right.

11                MR. DARNELL:  But so we're all operating on the same

12    facts, I believe, technically, the remedy that is sought on the

13    third and fourth cause of action, they're both under the ADA

14    statute injunctive relief and declaratory relief.

15                THE COURT:  So does the existence of the -- so the

16    existence of the declaratory relief claims/remedy, I think,

17    would affect whether I would apply the anti-injunction statute,

18    28 U.S.C., Section 2283.  But I think Younger abstention is

19    broader than that.

20                Do you agree with that, Mr. Darnell.

21                MR. DARNELL:  I cannot disagree, Your Honor.

22                THE COURT:  Okay.  So one final question,

23    Mr. Darnell.  There's been a lot of back-and-forth about the

24    evidence that the parties have submitted.  The plaintiffs have

25    submitted evidence that they contend demonstrates that there is
```

1   no criminal violation here, that the prosecution -- criminal

2   prosecution should be abandoned.  And, if it's maintained, it

3   will result in acquittal and potential remedies down the road

4   for wrongful criminal prosecution.

10:27AM  5        The defendant doesn't believe some of the evidence

6   that plaintiffs have submitted.  Defendant points to, among

7   other things, Mr. Estrada's statements during his -- the

8   interview, when he may or may not have been arrested, as being

9   particularly damning.

10:27AM 10        And I acknowledge that plaintiffs challenge the

11  applicability of those statements for a lot of reasons,

12  including Mr. Estrada's health, et cetera.  My -- I'll tell you

13  what I'm thinking.  I try to be transparent here.  The

14  existence of all these disputes of fact, doesn't that counsel

10:28AM 15  in favor of abstention?  Shouldn't I allow the criminal

16  prosecution to dig into that?  Maybe it will result in a

17  successful demurrer.  I don't know.  Maybe it won't.

18        But shouldn't that whole dynamic play out in the

19  state court criminal prosecution case?

10:28AM 20        MR. DARNELL:  No is the short answer.  The existence

21  of disputed facts before Your Honor and relating to the core

22  issues is the reason the Court needs to look at them more

23  closely and to evaluate the likelihood of success on the

24  merits; the likelihood that the DA has -- truly has an

10:29AM 25  objectively reasonable belief that their claims are valid and

         1    legitimate; the likelihood that these claims will fit and not

         2    violate ADA Ninth Circuit precedent.

         3             The fact that there's a dispute is the reason the

         4    Court needs to look more closely at them.  It's not a reason to

10:29AM  5    abstain or allow this case to be decided by 12 jurors on,

         6    again, a federal ADA statute, federal standing issue,

         7    Ninth Circuit complex case law and history, all on which this

         8    Court is well-versed and understands and has the expertise and

         9    has been directed by other Ninth Circuit cases to decide in

10:29AM 10    every ADA case.

        11             THE COURT:  All right.  Thank you.

        12             Mr. Smith, did you want to respond to that same

        13    question?  The existence of all disputes of fact, does that not

        14    counsel in favor of *Younger* abstention?

10:30AM 15             MR. SMITH:  It does, Your Honor.  That's why there

        16    is criminal judges in state courts.

        17             THE COURT:  Can you get close to the microphone.

        18             MR. SMITH:  Yeah.  I'm sorry, Your Honor.  I should

        19    stand.

10:30AM 20             Yeah.  No, that's why we do abstain to the state

        21    courts where these facts can be resolved on these state crimes.

        22    The defendant has one position in the criminal case; the

        23    prosecution has the other.  Both will present their evidence.

        24    And either a judge or criminal juries can decide.

10:30AM 25             THE COURT:  All right.  Thank you both.  I really

```
 1    appreciate the robust briefing and your thorough preparation

 2    and your argument here today.  I'm going to take this motion

 3    under submission.  My minute order memorializing this hearing

 4    will relate that and, also, as I said, grant defendants' motion

 5    application request to file a sur-reply.

 6              What else do we need to accomplish here today?

 7    Anything else, Mr. Darnell or Mr. Reddy?

 8              MR. DARNELL:  No, Your Honor.  And I appreciate the

 9    Court's time to allow us to be heard on all of these issues

10    today as well as for providing a tentative, which is very

11    helpful to frame the issues.

12              THE COURT:  Thank you.

13              Mr. Smith, anything else?

14              MR. SMITH:  Yeah, likewise.  Nothing, Your Honor.

15    Thank you very much.  Thank you for your time and your staff.

16              THE COURT:  Thank you.  Have a great rest of the day

17    and a great weekend.

18              (Proceedings concluded at 10:31 a.m.)

19                            --oOo--

20

21

22

23

24

25
```

1                    *CERTIFICATE OF OFFICIAL REPORTER*

2

3    COUNTY OF LOS ANGELES    )
                              )
4    STATE OF CALIFORNIA      )

5                  I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME

6    COURT REPORTER, in and for the United States District Court for

7    the Central District of California, do hereby certify that

8    pursuant to Section 753, Title 28, United States Code that the

9    foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter and that the transcript page format is in

12   conformance with the regulations of the Judicial Conference of

13   the United States.

14

15   *Date:  July 25, 2022*

16

17

18

19                              */S/ DEBBIE HINO-SPAAN*
                                _____
20                              *Debbie Hino-Spaan, CSR No. 7953*
                                *Federal Official Court Reporter*
21

22

23

24

25

**UNITED STATES DISTRICT COURT**

**'**

'generally [1] - 10:11

**/**

/S [1] - 61:19

**1**

1 [3] - 23:21, 30:15, 38:6
1-053 [1] - 1:24
10:31 [1] - 60:18
115 [1] - 36:14
12 [5] - 8:10, 8:23, 29:7, 32:14, 59:5
15 [1] - 10:9
16 [1] - 15:21
18 [2] - 23:23, 31:5
19 [6] - 23:23, 24:6, 30:21, 30:22, 30:25, 31:5
1975 [1] - 17:13
1983 [11] - 23:10, 27:12, 28:4, 28:18, 49:13, 49:16, 49:18, 49:25, 51:16, 52:2, 52:12
1987 [2] - 13:10, 51:13
1st [2] - 21:1, 40:8

**2**

2 [6] - 22:5, 23:20, 23:23, 24:5, 30:21, 53:25
20 [1] - 5:5
2002 [2] - 15:21, 16:1
2007 [1] - 54:6
2022 [5] - 1:14, 3:1, 20:12, 20:19, 61:15
22-00789-JWH(SHKx [1] - 3:6
22-1 [2] - 15:24, 16:4
2283 [1] - 57:18
24 [1] - 15:25
25 [1] - 61:15
27 [1] - 16:6
28 [2] - 57:18, 61:8

**3**

3 [2] - 2:5, 2:9
34-1 [1] - 53:24
34-12 [1] - 5:25
380 [1] - 31:4

**4**

4 [1] - 20:12
4001 [1] - 2:14
411 [1] - 1:24
479 [1] - 31:4
486 [1] - 31:4
4TH [1] - 1:24

**5**

5 [1] - 53:25
5:00 [1] - 37:16
5:22-cv-00789-JWH-
   SHK [1] - 1:7

**6**

6128 [2] - 36:17, 43:21

**7**

7 [1] - 29:16
7-Eleven [2] - 54:5, 54:16
714-241-4444 [2] - 2:6, 2:10
753 [1] - 61:8
7953 [2] - 1:23, 61:20

**8**

8 [7] - 1:14, 3:1, 10:4, 10:9, 11:25, 13:11, 29:17
8:57 [2] - 1:14, 3:2

**9**

9 [4] - 15:10, 23:21, 23:23, 30:21
90 [1] - 20:21
92501 [2] - 2:14
92701 [1] - 1:24
92707 [2] - 2:6, 2:10
951-509-1355 [1] - 2:15
9th [2] - 2:5, 2:9

**A**

a.m [1] - 60:18
A.M [1] - 1:14, 3:2
abandon [2] - 21:16, 34:5
abandoned [1] - 58:2
able [1] - 48:25
above-entitled [1] - 61:11
abrogated [1] - 55:25

abrogation [1] - 55:25
absence [1] - 34:17
absolutely [4] - 11:12, 35:14, 37:8, 46:3
abstain [5] - 12:21, 55:18, 55:20, 59:5, 59:20
abstention [33] - 4:19, 10:10, 10:17, 11:11, 13:6, 13:7, 13:13, 13:17, 22:2, 27:25, 28:11, 28:13, 33:14, 33:15, 34:6, 43:7, 46:20, 49:9, 49:10, 49:22, 49:25, 50:3, 55:4, 55:24, 56:3, 56:5, 56:18, 56:23, 56:25, 57:4, 57:18, 58:15, 59:14
abundantly [1] - 42:1
access [6] - 6:3, 14:22, 54:4, 54:15, 54:17
accessible [2] - 48:4
accommodations [1] - 48:3
accomplish [1] - 60:6
accordingly [1] - 42:25
accusation [1] - 44:22
accused [3] - 25:23, 36:7, 36:8
acknowledge [4] - 16:19, 30:12, 31:1, 58:10
acknowledged [1] - 31:6
Acme [5] - 48:1, 48:2, 48:8, 48:14, 53:11
acquittal [3] - 23:8, 27:9, 58:3
acquitted [1] - 49:18
Act [2] - 9:15, 12:13
act [3] - 12:14, 12:19, 23:3
acting [3] - 18:6, 18:20, 43:3
action [13] - 24:6, 24:10, 25:7, 28:2, 28:19, 30:19, 40:4, 55:21, 56:7, 56:17, 56:21, 56:22, 57:13
actions [1] - 9:12
acts [1] - 26:21
actual [2] - 15:25, 40:21
ADA [94] - 4:22, 4:25, 5:2, 5:3, 5:8, 5:17, 6:4, 6:13, 6:14, 6:19, 8:3, 8:5, 8:6, 8:11,

8:17, 8:20, 9:8, 9:12, 9:15, 9:23, 10:24, 10:25, 11:3, 11:20, 12:1, 12:5, 14:3, 14:5, 14:7, 21:25, 22:6, 22:15, 22:24, 23:3, 23:14, 25:4, 25:22, 26:9, 26:11, 26:15, 26:16, 26:18, 26:24, 27:1, 27:15, 28:4, 28:21, 29:10, 29:23, 30:1, 30:6, 30:7, 30:8, 30:18, 30:24, 31:21, 32:5, 32:8, 32:16, 34:18, 35:3, 42:22, 42:25, 43:6, 43:23, 43:25, 44:3, 46:13, 47:10, 48:3, 48:7, 48:10, 48:15, 48:24, 48:25, 49:2, 49:5, 52:18, 52:23, 53:15, 53:17, 54:6, 54:20, 55:21, 56:2, 56:11, 57:13, 59:2, 59:6, 59:10
ADA's [1] - 23:16
additional [1] - 40:9
address [9] - 4:18, 31:17, 32:5, 34:20, 46:8, 50:8, 50:10, 52:3, 54:22
addressed [2] - 44:23, 49:20, 53:22
addresses [1] - 50:4
addressing [2] - 29:12, 29:18
adequate [13] - 8:24, 8:25, 29:7, 29:8, 32:1, 32:2, 32:3, 35:12, 46:7, 48:3, 49:12, 50:4, 54:15
adjudicate [4] - 7:20, 8:1, 8:3, 32:16
adjudicated [1] - 17:17
ado [1] - 29:15
adopted [1] - 17:15
advance [1] - 36:22
advancing [1] - 18:5
advocate [3] - 7:10, 27:22, 56:6
advocating [1] - 43:16
affect [1] - 57:17
afford [1] - 44:7
African [1] - 24:13
aggressive [3] - 18:8, 36:2, 38:20
ago [1] - 53:2
agree [4] - 9:10, 33:8, 48:10, 57:20

agrees [1] - 5:14
al [2] - 1:4, 1:8
allegation [2] - 27:14, 38:19
alleged [1] - 37:21
allegedly [1] - 45:1
alleges [1] - 30:17
allow [3] - 58:15, 59:5, 60:9
allowed [2] - 8:11, 8:12
allows [2] - 35:15, 46:13, 50:5
almost [2] - 18:14, 39:5
Amended [8] - 23:19, 23:22, 23:24, 25:8, 30:13, 30:16, 30:17, 30:20
amendment [1] - 14:12
Amendment [5] - 8:2, 14:7, 26:7, 30:14, 52:3
American [1] - 24:13
ample [1] - 41:21
ANA [3] - 1:15, 1:24, 3:1
Ana [2] - 2:6, 2:10
analog [2] - 16:14, 16:17
analysis [10] - 5:11, 9:20, 12:6, 13:23, 19:14, 21:24, 22:2, 29:3, 33:17, 49:25
analyzed [1] - 11:24
anecdotally [1] - 37:11
ANGELES [1] - 61:3
Animal [3] - 6:2, 20:21, 54:2
answer [12] - 4:20, 13:14, 24:22, 28:15, 31:15, 37:19, 38:17, 39:19, 51:17, 56:20, 57:4, 58:20
answered [1] - 22:12
anti [12] - 8:3, 23:16, 23:21, 24:4, 24:7, 25:4, 28:5, 28:22, 30:18, 55:22, 57:17
anti-injunction [1] - 57:17
anti-interference [1] - 24:4
anti-retaliation [10] - 8:3, 23:16, 23:21, 24:4, 24:7, 25:4, 28:5, 28:22, 30:18, 55:22

**anyway** [1] - 46:10
**apart** [2] - 7:12, 7:13
**APLC** [2] - 2:4, 2:8
**apologize** [7] - 11:15, 11:16, 14:18, 15:14, 16:12, 16:13, 57:9
**appeal** [2] - 55:5, 55:6
**APPEARANCES** [1] - 2:1
**appearances** [1] - 3:8
**appellate** [1] - 55:10
**applicability** [1] - 58:11
**applicable** [1] - 56:18
**application** [11] - 33:14, 33:15, 41:5, 41:10, 41:14, 41:16, 41:19, 42:5, 42:17, 56:15, 60:5
**applies** [5] - 10:6, 10:17, 25:2, 34:1, 51:10
**apply** [9] - 10:15, 14:1, 34:23, 51:14, 55:3, 55:15, 55:16, 55:17, 57:17
**applying** [1] - 56:3
**appreciate** [9] - 22:4, 28:23, 30:12, 42:6, 51:3, 51:4, 54:23, 60:1, 60:8
**approach** [1] - 36:25
**appropriate** [6] - 26:22, 32:16, 46:1, 46:20, 55:18, 57:4
**appropriately** [1] - 25:15
**arguably** [1] - 18:1
**argue** [8] - 8:9, 27:23, 27:24, 28:6, 28:12, 28:13, 50:23, 53:1
**argued** [1] - 33:11
**arguing** [7] - 8:12, 10:16, 34:13, 35:23, 47:2, 51:6
**argument** [12] - 5:13, 9:3, 12:5, 12:14, 16:25, 26:3, 27:17, 28:13, 36:1, 42:8, 57:1, 60:2
**arguments** [4] - 33:13, 34:9, 46:9, 51:2
**arise** [3] - 4:12, 17:4, 27:17
**arose** [1] - 9:5
**arraignment** [3] - 21:5, 21:6, 21:7
**arrest** [6] - 18:14, 39:5, 39:6, 39:10, 39:13, 42:14

**arrested** [7] - 36:13, 36:16, 37:24, 38:11, 40:2, 58:8
**Arrested** [1] - 38:7
**arresting** [1] - 36:25
**Article** [1] - 32:10
**aside** [2] - 21:20, 48:14
**aspect** [1] - 29:17
**asserted** [2] - 29:1, 51:25
**assertion** [3] - 6:6, 14:2, 14:4
**assistants** [1] - 47:1
**assume** [3] - 4:24, 7:17, 18:23
**attached** [1] - 37:25
**attaches** [1] - 53:25
**attack** [5] - 11:16, 26:11, 26:17, 33:3, 34:10
**attacking** [1] - 4:6
**attention** [2] - 9:5, 13:8
**ATTORNEY** [1] - 1:7
**attorney** [4] - 25:23, 43:19, 44:5, 46:17
**Attorney** [9] - 3:7, 3:15, 19:2, 28:3, 38:2, 40:17, 41:2, 44:24, 46:17
**Attorney's** [3] - 21:25, 26:19, 39:15
**attorneys** [1] - 36:17
**atypical** [4] - 38:23, 39:2, 39:24, 39:25
**audio** [2] - 41:2, 44:16
**Authorities** [1] - 15:20
**authorities** [1] - 41:21
**authority** [2] - 6:21, 28:9
**authorized** [2] - 25:3, 26:9
**availability** [2] - 49:25, 51:19
**available** [8] - 23:9, 24:9, 27:11, 27:19, 27:22, 31:24, 46:8, 50:10
**aware** [4] - 29:9, 36:23, 49:20, 53:13

---

**B**

**back-and-forth** [1] - 57:23
**backing** [2] - 21:16, 47:15
**bad** [32] - 5:11, 10:10, 10:16, 10:17, 11:9,

11:10, 11:25, 13:12, 13:17, 16:19, 16:22, 17:1, 17:3, 17:4, 17:20, 18:7, 18:21, 34:19, 35:23, 37:1, 37:10, 38:19, 40:1, 40:4, 42:11, 42:12, 42:16, 42:18, 43:3, 45:16, 45:21
**Bar** [1] - 25:24
**bar** [2] - 8:5, 49:22
**barred** [1] - 49:15
**barrier** [4] - 6:4, 54:4, 54:7, 54:15
**barriers** [3] - 14:22, 54:7, 54:17
**based** [14] - 4:19, 8:19, 10:19, 14:13, 15:2, 17:11, 21:9, 24:3, 25:21, 26:6, 30:13, 31:8, 31:9, 39:13
**basis** [4] - 25:2, 44:2, 46:3, 53:19
**bedsores** [1] - 37:14
**behalf** [2] - 3:11, 50:19
**behaving** [3] - 22:16, 22:20, 23:5
**behest** [1] - 44:21
**behind** [2] - 6:2, 26:18
**belief** [3] - 11:4, 13:21, 58:25
**believes** [1] - 44:14
**belive** [1] - 38:4
**benefit** [1] - 20:1
**best** [1] - 13:16
**better** [1] - 43:10
**between** [2] - 45:4, 45:8
**beyond** [1] - 39:17
**big** [2] - 33:13, 35:11
**bit** [3] - 28:19, 40:7, 47:15
**Black** [1] - 12:20
**BLAINE** [2] - 2:4, 2:8
**blending** [1] - 33:13
**blinders** [1] - 17:21
**bogus** [2] - 43:23, 52:19
**bottom** [2] - 29:16, 30:2
**box** [2] - 32:14, 38:7
**brief** [4] - 41:22, 50:24, 53:23
**briefing** [1] - 60:1
**briefly** [1] - 52:16
**bring** [3] - 15:1, 27:5, 27:16
**bringing** [2] - 8:5, 14:7
**broad** [1] - 28:11

**broader** [2] - 51:10, 57:19
**brother** [2] - 37:13, 37:17
**brother-in-law** [1] - 37:13
**brother-in-law's** [1] - 37:17
**brought** [3] - 10:12, 50:9, 52:2
**Brown** [2] - 19:2, 44:24
**brown** [2] - 19:16, 45:1
**brown's** [2] - 45:2, 45:11
**Bryan** [1] - 38:7
**bucks** [1] - 44:7
**building** [4] - 6:16, 8:15, 9:25
**bullet** [1] - 30:25
**business** [5] - 6:17, 44:6, 46:15, 53:6
**Business** [2] - 36:16, 43:21
**businesses** [2] - 19:19, 53:1
**buttress** [1] - 33:3
**BY** [1] - 2:13

---

**C**

**CA** [1] - 1:24
**California** [7] - 2:6, 2:10, 2:14, 9:6, 9:16, 12:12, 61:7
**CALIFORNIA** [4] - 1:2, 1:15, 3:1, 61:4
**CALLAHAN** [2] - 2:4, 2:8
**cannot** [4] - 18:3, 52:3, 56:20, 57:21
**carries** [1] - 29:16
**carved** [1] - 56:1
**case** [94] - 5:21, 7:18, 8:21, 8:25, 12:9, 12:10, 12:11, 12:12, 12:20, 12:23, 13:3, 13:10, 13:16, 13:18, 15:7, 15:13, 15:15, 15:21, 16:8, 16:12, 16:18, 16:21, 16:22, 17:9, 18:1, 21:13, 21:17, 23:12, 23:15, 23:17, 23:20, 24:13, 24:15, 25:15, 27:10, 28:23, 29:12, 29:21, 30:23, 31:1, 31:2, 31:6, 32:10, 32:15, 34:10, 34:11, 34:16,

35:15, 38:24, 39:8, 40:20, 40:22, 41:2, 41:25, 43:1, 44:2, 45:18, 46:6, 46:11, 46:19, 46:22, 47:18, 47:20, 48:11, 48:13, 48:16, 48:17, 48:19, 49:11, 49:16, 50:1, 50:11, 51:8, 51:13, 51:20, 51:22, 53:8, 53:14, 54:6, 55:2, 55:4, 55:13, 55:18, 56:17, 57:5, 58:19, 59:5, 59:7, 59:10, 59:22
**Case** [2] - 1:6, 3:5
**cases** [23] - 5:17, 8:20, 9:1, 9:8, 9:15, 13:7, 13:22, 14:3, 14:25, 15:2, 29:9, 32:5, 32:6, 32:12, 42:22, 42:25, 43:17, 45:20, 46:19, 48:7, 54:20, 59:9
**caught** [1] - 9:5
**cell** [2] - 20:20
**Central** [1] - 61:7
**CENTRAL** [1] - 1:2
**Centre** [2] - 2:5, 2:9
**certainly** [7] - 33:8, 34:21, 35:6, 36:13, 39:11, 40:1, 46:5
**CERTIFICATE** [1] - 61:1
**Certified** [1] - 1:5
**certified** [1] - 19:21
**certify** [1] - 61:7
**cetera** [1] - 58:12
**challenge** [4] - 28:18, 46:6, 50:6, 58:10
**challenges** [3] - 31:22, 35:13, 35:16
**challenging** [1] - 54:12
**chance** [1] - 32:20
**charged** [2] - 36:19, 37:15
**charges** [3] - 38:13, 43:19, 46:4
**checked** [1] - 38:8
**chilling** [4] - 14:9, 14:23, 15:3, 26:7
**chosen** [1] - 27:15
**Circuit** [34] - 6:20, 8:10, 8:16, 11:22, 12:15, 13:10, 13:16, 13:25, 15:7, 15:13, 15:15, 15:16, 15:17, 15:18, 16:1, 16:8, 16:12, 16:15, 16:17,

16:21, 22:25, 24:20, 26:10, 26:12, 30:7, 41:25, 51:12, 52:24, 53:14, 54:6, 54:10, 59:2, 59:7, 59:9
**circuit** [3] - 15:19, 15:22, 53:14
**circumstances** [2] - 37:4, 45:23
**cite** [3] - 13:11, 15:24, 16:5
**cited** [8] - 13:8, 13:19, 15:8, 15:9, 23:21, 31:4, 41:21, 45:17
**city** [1] - 51:13
**civil** [4] - 24:12, 26:14, 49:16, 49:22
**claim** [14] - 11:20, 23:25, 24:2, 28:22, 29:1, 30:20, 32:8, 36:20, 49:13, 49:16, 49:19, 52:2, 52:12, 53:17
**claiming** [1] - 20:5
**claims** [27] - 5:1, 5:9, 9:20, 9:23, 10:1, 14:7, 19:13, 26:11, 26:15, 26:16, 27:16, 28:7, 29:18, 30:12, 31:11, 31:12, 34:18, 42:2, 43:23, 44:17, 46:8, 49:7, 49:8, 49:25, 58:25, 59:1
**claims/remedy** [1] - 57:16
**clarified** [2] - 13:25, 16:11
**clarify** [1] - 52:11
**clear** [3] - 14:19, 42:1, 51:5
**clearly** [1] - 9:1
**clerks** [1] - 47:1
**client** [11] - 14:6, 27:22, 28:24, 46:13, 47:20, 48:6, 48:9, 48:11, 50:20
**client's** [1] - 21:15
**clients** [1] - 23:9
**clients'** [1] - 4:3
**close** [1] - 59:17
**closely** [3] - 31:7, 58:23, 59:4
**Code** [4] - 36:14, 36:17, 43:21, 61:8
**codified** [1] - 14:5
**collateral** [3] - 27:25, 28:6, 49:21
**colleague** [5] - 3:11, 15:6, 16:11, 21:3, 31:16

**colluding** [1] - 43:20
**collusion** [1] - 43:22
**comfortable** [1] - 28:19
**comment** [3] - 19:5, 22:4, 29:13
**committed** [1] - 44:25
**committing** [2] - 36:8, 45:2
**common** [2] - 18:12, 38:25
**compelling** [3] - 29:20, 29:24, 49:11
**Complaint** [16] - 5:1, 7:2, 8:19, 10:3, 14:6, 14:13, 15:2, 23:19, 23:22, 23:24, 25:8, 30:13, 30:16, 30:17, 30:20
**complaints** [2] - 43:25, 52:18
**Complaints** [4] - 5:18, 6:7, 46:12, 46:15
**complete** [1] - 12:6
**complex** [2] - 8:20, 59:7
**complies** [1] - 48:14
**component** [1] - 32:11
**concede** [8] - 6:25, 7:1, 7:4, 7:6, 7:7, 7:8, 9:13, 35:3
**conceded** [1] - 53:9
**concern** [1] - 14:24
**concerning** [1] - 25:21
**conclude** [2] - 22:19, 25:7
**concluded** [1] - 60:18
**conclusion** [2] - 36:18, 42:23
**conduct** [4] - 22:7, 28:3, 37:1, 49:3
**Conference** [1] - 61:12
**conferred** [1] - 16:10
**confirms** [1] - 51:13
**conflicts** [3] - 4:22, 23:2, 30:1
**conformance** [1] - 61:12
**Congress** [7] - 14:5, 23:3, 29:19, 29:24, 30:5, 55:25, 56:22
**congressional** [1] - 8:4
**connection** [3] - 9:19, 31:25, 34:18
**consider** [7] - 10:5, 19:13, 24:17, 51:18, 51:22, 51:23, 52:13
**consistent** [3] - 16:22,

16:23, 52:23
**conspiring** [2] - 36:16, 43:20
**constitutes** [3] - 27:25, 34:19, 42:18
**Constitution** [2] - 23:2, 29:20
**constitutional** [10] - 8:4, 30:14, 30:24, 31:9, 35:13, 46:8, 50:6, 52:7, 52:8, 52:15
**constitutionally** [3] - 14:2, 14:4, 51:15
**contemporaneous** [1] - 6:1
**contend** [10] - 12:9, 14:14, 16:16, 23:15, 26:25, 27:21, 29:7, 30:8, 52:19, 57:25
**contends** [2] - 5:1, 14:24
**contentions** [1] - 12:2
**context** [4] - 10:10, 26:23, 31:12, 51:10
**contexts** [1] - 26:14
**continuance** [1] - 21:5
**continue** [3] - 21:21, 45:14, 48:22
**continued** [1] - 40:9
**continues** [2] - 22:9, 44:23
**continuing** [2] - 43:3, 52:8
**contradicts** [1] - 22:24
**controlling** [3] - 6:20, 11:23, 30:9
**controversy** [1] - 32:10
**convicted** [1] - 49:15
**conviction** [4] - 10:13, 11:6, 13:22, 45:22
**convince** [1] - 47:12
**core** [2] - 4:25, 58:21
**Cornell** [12] - 3:6, 14:20, 15:3, 19:17, 44:5, 45:4, 45:8, 46:6, 50:6, 53:23, 53:25, 54:18
**CORNELL** [1] - 1:4
**Cornell's** [1] - 50:12
**Corona** [3] - 6:1, 20:21, 54:2
**correct** [11] - 7:4, 7:14, 7:17, 12:17, 15:15, 16:7, 17:6, 17:7, 17:8, 31:25, 61:9
**Counsel** [1] - 3:13
**counsel** [14] - 3:8,

3:23, 8:9, 16:10, 28:17, 51:1, 52:17, 53:1, 53:20, 54:9, 56:17, 58:14, 59:14
**COUNSEL** [1] - 2:1
**counter** [1] - 54:3
**countertop** [4] - 53:21, 53:22, 54:14, 54:18
**countertops** [1] - 47:9
**country** [1] - 47:11
**county** [1] - 25:9
**County** [20] - 3:7, 3:15, 5:14, 6:5, 6:7, 6:9, 6:24, 6:25, 7:4, 7:5, 7:8, 10:18, 17:3, 18:13, 18:15, 33:8, 38:2, 38:23, 40:11, 48:1
**COUNTY** [2] - 1:8, 61:3
**County's** [1] - 6:18
**couple** [2] - 34:15, 40:19
**course** [3] - 33:4, 43:10, 48:11
**COURT** [116] - 1:1, 1:23, 3:13, 3:16, 3:18, 3:22, 4:14, 5:12, 5:20, 6:5, 6:18, 6:22, 6:24, 7:10, 7:15, 7:25, 9:3, 9:14, 10:16, 11:9, 11:13, 11:16, 12:10, 13:16, 14:16, 15:5, 15:11, 15:13, 15:18, 16:2, 16:5, 16:8, 16:14, 16:25, 17:7, 17:9, 17:24, 18:5, 18:23, 19:5, 20:8, 20:13, 20:24, 21:14, 21:20, 22:14, 22:19, 23:4, 23:17, 23:25, 24:9, 24:19, 24:22, 24:25, 25:6, 27:3, 28:9, 29:5, 31:18, 32:3, 32:19, 32:23, 33:1, 33:3, 34:4, 35:18, 37:3, 37:9, 37:19, 37:23, 38:14, 38:18, 39:12, 39:19, 39:24, 40:6, 41:4, 41:7, 41:13, 41:17, 41:24, 42:4, 42:19, 42:22, 43:15, 44:9, 45:11, 45:14, 47:15, 47:25, 48:21, 49:24, 50:15, 50:19, 50:22, 50:25, 51:8, 51:17, 53:9, 53:11, 54:23, 55:8,

55:17, 55:23, 56:6, 56:12, 56:16, 57:2, 57:15, 57:22, 59:11, 59:17, 59:25, 60:12, 60:16, 61:6
**court** [20] - 5:14, 8:15, 8:24, 10:1, 12:18, 12:21, 12:24, 24:15, 24:17, 28:1, 29:1, 29:8, 29:23, 29:25, 31:24, 32:8, 32:9, 43:9, 43:22, 58:19
**Court** [68] - 3:5, 4:24, 5:25, 8:13, 9:22, 10:5, 10:14, 12:3, 12:7, 12:15, 12:16, 12:17, 12:21, 14:10, 14:19, 15:4, 16:18, 17:13, 17:15, 17:16, 19:2, 19:17, 19:21, 20:23, 21:24, 22:4, 22:5, 22:9, 22:10, 22:12, 22:14, 24:12, 25:13, 25:19, 26:13, 26:22, 28:15, 28:21, 31:3, 31:6, 31:10, 31:11, 31:16, 31:17, 32:12, 32:16, 33:24, 34:23, 37:7, 37:12, 40:16, 43:13, 49:12, 49:13, 50:9, 51:5, 51:11, 52:12, 54:22, 56:3, 56:25, 58:22, 59:4, 59:8, 61:6, 61:20
**court's** [2] - 28:18, 31:20
**Court's** [12] - 13:8, 13:23, 22:2, 27:24, 28:5, 29:3, 29:14, 31:14, 33:23, 51:4, 55:12, 60:9
**courtroom** [1] - 54:11
**COURTROOM** [1] - 3:5
**courts** [15] - 8:2, 8:14, 9:2, 14:8, 22:1, 26:8, 26:12, 29:11, 29:19, 29:24, 30:15, 32:12, 32:14, 59:16, 59:21
**covered** [3] - 45:15, 45:16, 50:13
**covers** [1] - 50:16
**created** [2] - 54:4, 55:25
**CREEC** [3] - 6:21, 26:10, 52:23
**crime** [2] - 36:8, 39:1
**crimes** [1] - 59:21
**Criminal** [1] - 12:13

**criminal** [71] - 5:1, 5:14, 7:12, 7:16, 7:18, 7:21, 8:8, 8:9, 8:24, 10:3, 12:12, 12:19, 14:6, 14:12, 14:13, 15:1, 20:9, 20:10, 20:24, 21:13, 23:7, 24:3, 25:24, 27:7, 28:25, 29:7, 30:18, 31:7, 31:23, 31:25, 32:14, 32:15, 34:11, 34:12, 35:1, 35:5, 35:15, 35:16, 35:17, 35:22, 38:13, 40:7, 40:12, 40:20, 40:22, 41:2, 43:1, 43:3, 43:6, 43:8, 43:19, 46:3, 46:5, 46:16, 46:19, 49:3, 49:11, 49:17, 50:1, 50:11, 51:19, 56:13, 58:1, 58:4, 58:15, 58:19, 59:16, 59:22, 59:24
**criminality** [1] - 47:6
**critical** [4] - 4:21, 5:10, 11:19, 13:7
**critique** [1] - 19:12
**CRR** [1] - 1:23
**crummy** [1] - 10:19
**CSR** [2] - 1:23, 61:20
**curb** [1] - 48:3
**current** [1] - 40:6
**custody** [2] - 37:18, 38:15

**D**

**D's** [1] - 16:23
**DA** [16] - 5:1, 10:23, 11:4, 11:7, 11:20, 14:24, 17:23, 24:14, 25:20, 26:4, 30:2, 30:4, 40:20, 54:11, 58:24
**DA's** [17] - 4:21, 4:24, 8:5, 9:21, 10:3, 12:2, 12:8, 14:24, 20:3, 26:23, 30:18, 44:1, 44:2, 51:22, 53:18, 54:12, 54:21
**damages** [2] - 27:13, 27:17
**damning** [1] - 58:9
**DARNELL** [84] - 2:4, 3:10, 3:21, 4:13, 4:15, 5:19, 5:22, 6:11, 6:20, 6:23, 7:5, 7:8, 7:14, 7:24, 8:1, 9:10, 9:17, 10:21,

11:12, 11:14, 11:18, 12:25, 13:18, 14:18, 15:6, 15:12, 15:14, 15:23, 16:4, 16:7, 16:9, 16:11, 16:16, 16:16, 17:8, 17:11, 17:25, 18:22, 18:25, 19:10, 20:11, 20:17, 21:2, 21:7, 21:18, 21:22, 22:18, 22:22, 23:13, 23:19, 24:2, 24:11, 24:21, 24:24, 25:1, 25:11, 27:21, 28:12, 29:6, 32:1, 32:4, 32:22, 41:12, 41:14, 41:20, 41:25, 50:24, 51:3, 51:9, 51:21, 53:10, 53:13, 55:6, 55:10, 55:19, 55:24, 56:10, 56:14, 56:19, 57:8, 57:11, 57:21, 58:20, 60:8
**Darnell** [20] - 3:11, 4:9, 33:5, 33:10, 34:13, 35:18, 35:22, 40:16, 41:1, 41:9, 42:7, 42:19, 43:15, 47:2, 48:23, 50:22, 54:24, 57:20, 57:23, 60:7
**Darnell's** [1] - 34:9
**data** [3] - 20:4, 20:19, 20:20
**Date** [1] - 61:15
**date** [1] - 40:21
**DAVID** [1] - 2:4
**David** [1] - 3:10
**days** [1] - 40:18
ddarnell@callahan [1] - 2:7
ddarnell@callahan-law.com [1] - 2:7
**dead** [3] - 23:4, 23:6, 25:7
**deal** [3] - 35:20, 46:9, 46:10
**dealing** [4] - 8:20, 15:7, 52:6, 53:15
**Debbie** [1] - 61:20
**DEBBIE** [3] - 1:23, 61:5, 61:19
**deceit** [7] - 5:9, 5:22, 21:25, 25:25, 26:25, 36:18, 43:21
**deceitful** [3] - 5:3, 52:18, 53:16
**deceitfully** [2] - 22:16, 22:20
**deceitfully..** [1] - 22:8
**deceive** [1] - 43:22

**decide** [4] - 8:23, 12:8, 59:9, 59:24
**decided** [5] - 8:17, 8:18, 8:19, 9:2, 59:5
**deciding** [1] - 10:5
**decision** [2] - 4:1, 39:13
**declaration** [5] - 19:1, 45:3, 45:12, 53:23, 54:1
**declaratory** [2] - 57:14, 57:16
**deem** [3] - 55:18, 56:18, 57:4
**defect** [1] - 48:13
**defend** [1] - 44:7
**defendant** [6] - 18:6, 44:9, 45:11, 58:5, 58:6, 59:22
**DEFENDANTS** [1] - 2:12
**defendants** [1] - 35:16
**Defendants** [1] - 1:9
**defendants'** [2] - 37:25, 60:4
**defense** [6] - 7:11, 8:8, 8:9, 27:23, 27:24, 35:17
**defer** [1] - 21:2
**deficiencies** [1] - 44:4
**definition** [3] - 11:7, 11:24, 13:20
**deliberate** [1] - 6:19
**deliberately** [1] - 27:15
**demonstrates** [1] - 57:25
**demonstrating** [1] - 6:3
**demurrer** [3] - 20:25, 35:14, 40:8, 58:17
**denying** [1] - 47:16
**department** [1] - 37:4
**DEPUTY** [1] - 3:5
**Deputy** [2] - 19:1, 44:24
**describe** [1] - 26:10
**described** [3] - 20:18, 21:11, 36:24
**designed** [1] - 46:15
**despite** [1] - 20:22
**details** [2] - 21:3, 39:17
**determinative** [2] - 52:1, 52:14
**determined** [2] - 29:11, 32:7
**determines** [1] - 27:9
**devil's** [2] - 7:10, 56:6
dhinospaan@yahoo.

**com** [1] - 1:25
**Diamond** [10] - 15:7, 15:11, 15:12, 15:21, 15:24, 16:5, 16:14, 16:16, 16:22, 16:23
**different** [4] - 9:12, 27:2, 46:21, 47:8
**differently** [2] - 22:23, 23:1
**dig** [5] - 42:20, 43:5, 43:11, 58:16
**Dilworth** [2] - 24:12, 24:19, 25:1
**directed** [3] - 29:22, 53:6, 59:9
**disability** [2] - 46:24, 47:3
**disabled** [6] - 46:24, 47:3, 47:5, 48:4, 48:6, 48:9, 48:25, 49:4, 49:5
**disagree** [1] - 57:21
**disbelieved** [1] - 44:10
**disclose** [1] - 40:22
**discourage** [2] - 14:1, 51:15
**discovered** [3] - 54:8, 54:9, 54:18
**discovery** [3] - 21:11, 21:12, 40:24
**discuss** [1] - 55:11
**dismiss** [7] - 25:12, 27:6, 55:2, 55:4, 55:14, 55:18, 57:5
**dismissal** [1] - 57:1
**dismissing** [2] - 25:17, 56:17
**dispositive** [1] - 51:25
**disproven** [1] - 6:12
**dispute** [3] - 7:19, 34:25, 59:3
**disputed** [1] - 58:21
**disputes** [2] - 58:14, 59:13
**Distributors** [2] - 48:1, 48:2
**DISTRICT** [4] - 1:1, 1:2, 1:3, 1:7
**District** [15] - 3:7, 12:15, 12:16, 19:1, 21:25, 26:19, 28:3, 38:2, 39:15, 40:17, 41:2, 44:24, 46:17, 61:6, 61:7
**district** [1] - 8:14
**DIVISION** [1] - 1:2
**Docket** [4] - 5:25, 15:24, 23:23, 53:24
**docket** [1] - 16:4

**doctrine** [4] - 4:20, 27:25, 33:14, 35:24
**Dombrowski** [1] - 31:4
**done** [2] - 39:8, 44:21
**door** [1] - 48:4
**Doran** [2] - 54:5, 54:16
**doubt** [1] - 18:14
**Doug** [1] - 3:14
**DOUGLAS** [1] - 2:13
**down** [7] - 21:16, 24:16, 38:6, 50:11, 51:24, 52:2, 58:3
**Drinking** [2] - 13:9, 51:12
**Drive** [2] - 2:5, 2:9
**dropped** [3] - 23:8, 27:9, 40:13
dsmith@smithlaw. com [1] - 2:15
**during** [1] - 58:7
**dynamic** [1] - 58:18

**E**

**early** [2] - 20:19, 40:23
**EASTERN** [1] - 1:2
**EDCV** [1] - 3:6
**Eduardo** [1] - 38:7
**effect** [4] - 14:9, 14:23, 15:3, 28:6
**effects** [1] - 28:11
**eight** [1] - 46:13
**either** [7] - 17:20, 18:17, 21:8, 23:7, 27:5, 27:8, 59:24
**element** [4] - 35:11, 49:8, 49:9, 50:3
**elements** [9] - 33:15, 33:16, 33:21, 34:22, 35:19, 44:1, 49:7, 51:6, 51:10
**elephant** [2] - 11:19, 11:23
**Eleventh** [1] - 2:14
**eloquence** [1] - 33:4
**eloquently** [1] - 33:12
**Emily** [1] - 37:15
**employing** [1] - 36:5
**Emporium** [2] - 13:9, 51:12
**encounter** [1] - 54:7
**encountered** [2] - 6:3, 14:22
**encouraged** [1] - 44:4
**end** [2] - 3:23, 27:20
**enforce** [1] - 30:8
**enforced** [1] - 31:22
**enforcement** [1] - 36:24

enforcing [1] - 29:17
engage [1] - 49:3
engaging [3] - 25:25, 36:17, 51:1
enjoined [2] - 26:5, 26:20
enjoy [1] - 50:25
ensuring [1] - 31:21
Enterprises [3] - 48:8, 48:14, 53:11
entire [1] - 56:17
entirely [2] - 25:17, 55:2
entities [1] - 56:2
entitle [1] - 42:2
entitled [1] - 61:11
equally [1] - 13:19
equals [1] - 11:9
equates [1] - 42:16
error [1] - 16:13
errors [1] - 4:5
especially [1] - 32:17
ESQ [3] - 2:4, 2:8, 2:13
essential [1] - 32:9
essentially [4] - 8:8, 28:14, 43:22, 56:4
established [1] - 13:3
estoppel [2] - 28:1, 28:6, 49:21
Estrada [33] - 5:3, 5:7, 5:15, 5:17, 6:8, 7:1, 7:11, 7:15, 7:21, 14:20, 14:21, 15:2, 18:9, 19:18, 19:24, 20:4, 36:4, 37:23, 38:6, 38:10, 42:24, 43:16, 43:19, 44:12, 44:16, 45:4, 45:9, 46:6, 46:23, 50:5, 50:11, 54:4, 54:13
Estrada's [4] - 11:22, 20:20, 58:7, 58:12
et [3] - 1:4, 1:8, 58:12
evaluate [1] - 58:23
evaluation [1] - 28:15
event [3] - 12:18, 28:18, 38:5
evidence [34] - 5:24, 12:3, 14:10, 14:18, 14:19, 15:3, 19:13, 19:23, 19:25, 20:3, 20:6, 20:8, 20:23, 22:15, 23:5, 26:2, 36:11, 37:12, 39:23, 40:10, 40:15, 40:22, 41:22, 42:12, 43:24, 44:10, 44:15, 47:4, 53:2, 53:5, 57:24, 57:25, 58:5, 59:23

evidentiary [2] - 19:6, 19:16
ex [2] - 41:15, 41:18
exact [1] - 25:2
exactly [2] - 45:6, 45:7
example [4] - 40:25, 44:11, 46:18, 49:4
exception [27] - 5:11, 9:21, 10:6, 10:17, 11:11, 12:7, 13:2, 13:17, 13:25, 15:8, 16:20, 22:2, 22:13, 32:18, 34:15, 34:16, 34:20, 34:22, 35:23, 51:7, 51:9, 51:11, 51:14, 51:23, 52:6, 55:16, 56:3
exceptions [4] - 4:20, 13:3, 13:4, 13:7
excess [1] - 33:21
exculpatory [3] - 20:14, 20:15, 20:17
excuse [1] - 5:6
executes [1] - 37:4
executing [1] - 37:20
execution [3] - 18:8, 36:2, 38:20
exercises [1] - 56:25
exercising [1] - 56:2
Exhibit [3] - 37:25, 38:9, 53:25
existence [8] - 27:16, 35:19, 56:16, 57:15, 57:16, 58:14, 58:20, 59:13
expectation [1] - 10:12
expectations [3] - 17:13, 17:17, 17:18
expert [1] - 54:8
expertise [1] - 59:8
expired [1] - 37:15
extensively [1] - 23:22
extort [2] - 44:6, 46:16
extraordinary [1] - 45:23
eyes [1] - 18:2

## F

facilities [2] - 5:24, 14:21
facing [1] - 38:12
fact [13] - 4:5, 7:19, 36:20, 36:23, 39:11, 39:22, 40:18, 46:24, 47:21, 58:14, 59:3, 59:13
facts [7] - 12:11, 40:2, 46:14, 46:22, 57:12,

58:21, 59:21
factual [1] - 7:1
fails [1] - 23:7
fair [2] - 25:14, 51:21
fairly [1] - 40:23
faith [32] - 5:11, 10:10, 10:16, 10:18, 11:10, 11:25, 13:12, 13:17, 16:20, 16:22, 17:1, 17:4, 17:20, 18:7, 18:21, 34:19, 34:20, 35:23, 37:1, 37:10, 38:19, 40:1, 40:4, 42:11, 42:12, 42:16, 42:18, 43:3, 45:16, 45:22, 46:3
fall [2] - 7:12, 7:13
false [17] - 5:2, 5:9, 5:18, 6:6, 6:10, 7:2, 9:8, 9:11, 9:19, 9:20, 11:21, 19:20, 19:22, 36:15, 39:25, 46:14, 52:18
falsities [1] - 36:9
Famous [6] - 13:9, 13:24, 16:19, 16:21, 51:12, 52:5
far [4] - 19:11, 45:7, 49:12, 52:20
fast [1] - 12:4
faulty [6] - 7:21, 10:19, 17:4, 17:5, 43:2
favor [4] - 33:8, 50:12, 58:15, 59:14
FEDERAL [2] - 1:23, 61:5
Federal [1] - 61:20
federal [41] - 4:22, 5:2, 8:17, 8:18, 9:2, 9:8, 9:15, 10:1, 12:18, 12:21, 12:24, 22:1, 23:3, 24:15, 24:18, 28:1, 28:7, 28:18, 29:11, 29:19, 29:23, 29:24, 30:1, 30:4, 30:9, 31:20, 32:8, 32:9, 32:12, 35:2, 45:24, 48:24, 49:2, 49:6, 53:14, 56:21, 59:6
felonies [2] - 36:14, 36:18
felony [4] - 36:14, 37:16, 37:21, 38:12
few [7] - 4:17, 18:7, 18:16, 34:21, 40:18, 44:7, 53:2
Fifth [1] - 24:19
file [14] - 14:11, 20:3, 41:5, 41:11, 41:15,

41:18, 42:2, 42:5, 42:24, 46:13, 47:13, 48:11, 48:16, 60:5
filed [13] - 14:23, 15:2, 23:14, 23:17, 28:19, 34:18, 35:15, 41:4, 41:16, 41:17, 43:19, 54:2, 54:19
filing [3] - 9:7, 36:9, 47:20
filings [1] - 14:10
final [4] - 4:1, 57:22
First [13] - 8:1, 14:7, 23:19, 23:22, 23:24, 25:8, 26:7, 30:12, 30:14, 30:16, 30:17, 30:19, 52:3
first [11] - 3:8, 3:23, 6:3, 6:11, 8:19, 29:14, 29:22, 33:25, 38:1, 44:13, 54:15
first-access [1] - 6:3
fit [1] - 59:1
five [1] - 25:11
flawed [8] - 8:5, 8:6, 12:5, 15:1, 19:12, 25:22, 26:6, 26:24
flaws [1] - 11:15
Floor [2] - 2:5, 2:9
focus [1] - 28:20
focused [1] - 34:17
follow [3] - 5:12, 9:17, 39:10
FOR [2] - 2:3, 2:12
forced [1] - 36:15
foregoing [1] - 61:9
formal [2] - 21:5, 21:9
format [1] - 61:11
forth [4] - 23:20, 30:15, 30:20, 57:23
forum [4] - 29:7, 29:8, 32:2, 32:3
forward [2] - 27:8, 46:5
fourth [2] - 26:4, 57:13
frame [1] - 60:11
framed [1] - 56:20
fraud [7] - 5:9, 5:22, 5:23, 21:25, 22:24, 25:25, 26:25
fraudulent [4] - 10:1, 11:21, 53:15, 53:16
fraudulently [3] - 22:8, 22:16, 22:20
free [1] - 4:4
frequency [2] - 22:7, 22:15
FRIDAY [2] - 1:14, 3:1
front [1] - 45:18
fruits [1] - 26:20

fundamental [4] - 5:7, 5:10, 25:22, 26:18
fundamentally [1] - 56:23

## G

GAURAV [1] - 2:8
Gaurav [1] - 3:12
Gee [2] - 7:20, 48:7
generally [1] - 10:21
generate [1] - 39:1
gentleman [1] - 36:7
geolocation [2] - 20:4, 20:19
given [2] - 9:8, 36:21
grant [5] - 25:8, 41:10, 41:20, 42:4, 60:4
granted [4] - 24:12, 24:15, 26:23, 33:18
granting [2] - 24:17, 25:3
great [3] - 7:11, 60:16, 60:17
greddy@callahan [1] - 2:11
greddy@callahan-law.com [1] - 2:11
Gubernat [1] - 38:4
GUBERNAT [1] - 38:4
guess [4] - 5:16, 33:7, 41:8, 48:18

## H

handicap [1] - 48:4
happy [1] - 31:15
harassing [1] - 16:24
harassment [3] - 13:13, 16:20, 45:20
hard [1] - 35:19
hazard [1] - 31:8
health [1] - 58:12
hear [3] - 3:22, 35:25
heard [4] - 52:20, 53:1, 53:20, 60:9
hearing [5] - 20:25, 36:1, 40:7, 42:6, 60:3
HEARING [1] - 1:13
heart [1] - 10:2
Heck [1] - 49:16
height [1] - 54:3
held [2] - 8:16, 61:10
Helfant [1] - 10:8
helpful [4] - 4:16, 27:3, 29:5, 60:11
hereby [1] - 61:7
high [3] - 22:7, 22:15, 54:4

**high-frequency** [2] - 22:7, 22:15
**highly** [1] - 26:1
**hijacked** [1] - 42:8
**himself** [1] - 36:22
**HINO** [3] - 1:23, 61:5, 61:19
**Hino** [1] - 61:20
**HINO-SPAAN** [3] - 1:23, 61:5, 61:19
**Hino-Spaan** [1] - 61:20
**hinted** [2] - 29:6, 30:11
**history** [3] - 8:21, 25:24, 59:7
**hit** [1] - 11:14
**HOLCOMB** [1] - 1:3
**hold** [2] - 9:1, 16:2
**holding** [2] - 16:23, 17:12
**holds** [2] - 13:2, 13:5
**holes** [2] - 4:4, 21:21
**home** [1] - 37:1
**honestly** [2] - 33:11, 38:16
**Honor** [85] - 3:10, 3:14, 3:21, 4:15, 4:17, 5:19, 6:2, 6:21, 7:9, 7:24, 8:6, 8:13, 9:18, 10:4, 10:8, 10:22, 11:15, 11:24, 13:11, 13:15, 13:19, 15:9, 15:23, 16:12, 19:10, 19:15, 20:11, 21:19, 21:22, 22:11, 22:18, 23:14, 23:20, 24:6, 24:11, 25:15, 26:2, 29:9, 29:14, 30:2, 30:10, 31:1, 31:14, 32:6, 32:22, 32:25, 33:6, 33:17, 34:8, 34:23, 35:4, 36:12, 37:7, 37:11, 38:13, 38:16, 39:4, 39:22, 40:15, 41:6, 41:12, 41:16, 41:20, 42:11, 43:25, 44:15, 44:22, 45:6, 45:13, 47:24, 50:2, 50:13, 50:21, 51:3, 51:16, 53:4, 54:5, 57:6, 57:8, 57:21, 58:21, 59:15, 59:18, 60:8, 60:14
**HONORABLE** [1] - 1:3
**hope** [1] - 45:22
**Hospital** [3] - 6:2, 20:21, 54:2
**house** [2] - 37:17,

37:18
**housekeeping** [3] - 41:4, 42:9, 50:16
**huge** [1] - 51:11
**Humphrey** [1] - 49:16
**Hutton** [2] - 2:5, 2:9
**hypothetical** [4] - 27:4, 28:23, 47:25, 53:12

**I**

**identify** [1] - 48:15
**ignores** [1] - 11:18
**ii** [4] - 15:20, 15:24, 15:25, 16:4
**III** [1] - 32:10
**illegal** [2] - 10:25, 16:24
**illegitimate** [1] - 48:17
**impairment** [1] - 31:9
**implicate** [2] - 35:2, 35:5
**importance** [1] - 48:24
**important** [4] - 13:23, 35:2, 35:6, 46:2
**importantly** [1] - 30:4
**improper** [1] - 6:14
**improperly** [1] - 23:6
**inaccuracies** [1] - 40:3
**inaccurate** [2] - 39:25, 40:2
**inappropriate** [5] - 13:13, 55:10, 56:5, 56:23, 57:1
**included** [1] - 22:1
**includes** [1] - 20:19
**including** [5] - 21:11, 26:12, 54:8, 54:17, 58:12
**incorrect** [1] - 22:11
**incredible** [1] - 14:9
**indeed** [1] - 12:19
**independent** [1] - 57:1
**indicated** [1] - 15:16
**indication** [2] - 21:18, 40:3
**indicative** [1] - 40:1
**Indictment** [1] - 14:12
**influence** [2] - 29:3, 55:12
**information** [7] - 18:11, 20:13, 20:15, 20:18, 39:16, 40:10
**infringes** [1] - 14:7
**initial** [1] - 44:17
**initiated** [3] - 16:24, 20:9
**injunction** [18] - 3:19,

22:21, 24:15, 24:18, 24:24, 24:25, 25:8, 25:9, 25:14, 25:18, 33:18, 33:20, 34:3, 34:7, 52:7, 52:14, 56:9, 57:17
**injunctive** [10] - 24:2, 25:3, 25:5, 26:23, 30:13, 45:25, 56:10, 56:12, 57:7, 57:14
**injury** [1] - 45:24
**inside** [1] - 54:14
**inspection** [1] - 54:8
**instance** [1] - 17:2
**instruments** [1] - 36:15
**integral** [1] - 32:11
**intend** [3] - 6:16, 6:17, 9:24
**intended** [4] - 14:1, 44:4, 51:15, 56:1
**intent** [7] - 8:12, 11:22, 12:5, 14:25, 17:4, 26:6, 52:22
**interest** [21] - 9:7, 9:11, 9:18, 29:15, 29:17, 29:21, 29:25, 30:3, 30:4, 31:20, 35:2, 35:3, 35:6, 38:24, 39:1, 39:11, 48:24, 49:1, 49:6, 49:11
**interfere** [1] - 35:8
**interference** [1] - 24:4
**interfering** [1] - 26:5
**interior** [1] - 54:2
**interpretation** [2] - 17:12, 26:24
**interrupting** [1] - 57:9
**interruption** [1] - 48:22
**interview** [3] - 41:2, 44:16, 58:8
**invalidate** [1] - 49:17
**investigate** [1] - 44:12
**investigation** [2] - 26:21, 48:16
**invoke** [1] - 34:5
**involve** [1] - 14:4
**involved** [1] - 8:21
**involves** [1] - 33:17
**irreparable** [1] - 45:24
**issuance** [1] - 39:18
**issue** [41] - 3:25, 4:18, 5:7, 5:10, 5:23, 8:7, 8:13, 8:16, 8:17, 8:23, 9:12, 10:2, 11:19, 12:12, 17:19, 18:15, 22:20, 23:1, 27:2, 28:16, 28:20,

28:23, 29:10, 31:10, 32:7, 33:16, 34:7, 38:23, 42:9, 42:14, 42:20, 42:25, 43:6, 43:12, 49:13, 49:20, 51:16, 53:20, 53:22, 55:9, 59:6
**issued** [2] - 32:6
**issues** [14] - 8:4, 9:1, 12:6, 21:9, 30:24, 32:13, 32:17, 33:11, 33:14, 34:12, 55:10, 58:22, 60:9, 60:19
**issuing** [2] - 18:13, 39:12
**item** [2] - 25:20, 26:19
**itself** [2] - 12:10, 12:24

**J**

**job** [1] - 11:17
**JOHN** [1] - 1:3
**Johnny** [1] - 38:3
**JUDGE** [1] - 1:3
**judge** [9] - 8:18, 8:24, 12:16, 29:8, 34:12, 35:17, 39:7, 46:7, 59:24
**judged** [1] - 17:22
**judges** [2] - 8:15, 59:16
**judicata** [3] - 27:25, 28:6, 49:21
**Judicial** [1] - 61:12
**July** [3] - 21:1, 40:8, 61:15
**JULY** [2] - 1:14, 3:1
**jump** [1] - 35:25
**juries** [1] - 59:24
**juris** [2] - 8:10, 26:9
**jurisdiction** [3] - 28:2, 28:18, 32:11
**jurisdictional** [1] - 28:14
**jurors** [3] - 8:10, 8:23, 29:7, 32:14, 59:5
**jury** [1] - 46:7
**Justice** [1] - 12:20
**justify** [1] - 41:23

**K**

**kind** [7] - 4:12, 18:14, 30:22, 36:8, 36:21, 37:9, 55:23
**kinds** [1] - 19:3
**knowingly** [3] - 46:13, 46:14, 49:7
**knowledge** [1] - 19:4
**knows** [5] - 4:24,

10:18, 17:16, 51:5, 54:5
**Kugler** [4] - 10:8, 13:18, 16:17, 17:12

**L**

**lack** [1] - 34:16
**language** [2] - 17:14, 39:6
**large** [1] - 8:21
**last** [9] - 14:16, 26:19, 29:13, 30:10, 31:19, 40:18, 40:19, 48:21, 52:16
**LAW** [1] - 2:13
**law** [35] - 4:5, 4:22, 6:13, 6:19, 8:11, 8:21, 9:2, 9:16, 10:25, 11:1, 11:6, 11:7, 13:3, 14:15, 17:21, 18:4, 24:18, 25:22, 29:12, 30:1, 30:7, 31:2, 31:21, 36:23, 37:13, 42:16, 43:20, 52:23, 53:18, 54:10, 54:11, 56:15, 59:7
**law's** [1] - 37:17
**law.com** [2] - 2:7, 2:11
**lawful** [1] - 5:8
**lawsuit** [8] - 23:10, 23:14, 27:5, 27:17, 44:2, 49:23, 54:19, 57:7
**lawsuits** [8] - 5:2, 11:20, 14:22, 26:5, 34:18, 46:14, 47:7, 47:14
**lawyer** [15] - 14:6, 23:11, 44:21, 46:12, 47:12, 47:13, 47:19, 48:1, 48:5, 48:6, 48:11, 48:12, 52:25
**Lawyer** [1] - 48:10
**least** [3] - 36:3, 38:14
**leave** [4] - 41:5, 41:10, 41:18, 42:5
**Ledesma** [1] - 45:18
**leeway** [1] - 20:2
**legal** [17] - 8:5, 8:6, 8:13, 8:16, 8:17, 8:23, 9:1, 10:2, 10:20, 12:5, 15:1, 17:4, 17:5, 29:10, 32:7, 36:23, 53:20
**legitimate** [9] - 6:15, 11:5, 26:15, 44:17, 47:16, 48:13, 48:17, 54:17, 59:1

**UNITED STATES DISTRICT COURT**

less [1] - 36:25
less-than-pleasant [1] - 36:25
lied [1] - 19:17
likelihood [4] - 33:21, 58:23, 58:24, 59:1
likely [1] - 39:1
likewise [1] - 60:14
line [5] - 10:9, 15:21, 16:6, 30:2, 51:24
listed [2] - 5:5, 30:25
listened [1] - 33:10
litigants [2] - 22:7, 22:15
litigation [2] - 22:7, 35:3
LLP [1] - 2:13
lobby [1] - 54:2
Local [1] - 41:15
location [2] - 47:21, 48:16
locations [4] - 7:3, 19:19, 19:24, 20:5
logic [1] - 56:20
look [12] - 8:19, 9:23, 21:14, 24:5, 33:25, 48:8, 48:9, 49:10, 54:25, 58:22, 59:4
looked [3] - 19:6, 41:7, 55:1
looking [3] - 20:14, 23:25, 37:24
looks [1] - 51:11
LOS [1] - 61:3
lose [1] - 34:4
loss [2] - 31:8, 52:17

**M**

machine [1] - 52:9
main [1] - 50:13
maintained [1] - 58:2
major [1] - 31:19
malicious [1] - 28:25
manner [1] - 42:14
manufactured [2] - 5:3, 11:21
manufacturing [1] - 26:11
March [2] - 20:12, 20:19
material [1] - 14:10
matter [11] - 8:12, 8:18, 10:3, 11:1, 11:6, 11:7, 14:14, 32:11, 49:3, 52:23, 61:11
matters [1] - 39:11
mean [10] - 7:15, 17:2, 18:7, 27:14, 34:25,

35:3, 35:14, 38:25, 51:11, 52:17
meaningless [2] - 55:25, 56:4
means [5] - 8:10, 10:11, 11:25, 49:1, 55:24
meet [3] - 18:1, 48:10, 49:7
members [1] - 37:16
memorializing [2] - 42:6, 60:3
men [1] - 24:13
mention [1] - 53:21
mentioned [1] - 25:1
merit [2] - 21:9, 34:16
merit-based [1] - 21:9
meritless [5] - 9:7, 9:11, 9:19, 9:20, 27:10
merits [6] - 34:2, 34:11, 46:9, 46:11, 51:22, 58:24
messages [1] - 19:18
met [2] - 13:14, 33:16
microphone [1] - 59:17
middle [1] - 10:7
might [4] - 34:2, 44:19, 49:15, 51:24
mind [2] - 9:6, 38:18
minimize [1] - 38:25
minimum [1] - 25:18
minute [2] - 42:6, 60:3
minutes [3] - 20:21, 34:21, 53:2
misconduct [1] - 18:1
misguided [2] - 10:24, 11:2
misinformed [1] - 42:15
misspeak [1] - 33:24
misstate [1] - 21:4
mistakenly [1] - 17:5
misunderstanding [2] - 6:19, 25:22
misunderstands [1] - 42:15
money [5] - 4:3, 27:13, 27:17, 46:16
morning [5] - 3:10, 3:13, 3:14, 3:16, 37:16
most [3] - 21:23, 25:15, 46:9
MOTION [1] - 1:13
motion [7] - 3:19, 15:25, 31:5, 33:20, 56:9, 60:2, 60:4
motivated [1] - 26:1

motivation [4] - 6:14, 6:15, 9:25, 26:7
motive [1] - 14:25
motives [1] - 16:24
moves [1] - 27:8
moving [7] - 14:19, 15:10, 15:23, 16:13, 25:12, 36:21, 44:25
MR [121] - 3:10, 3:14, 3:17, 3:21, 4:13, 4:15, 5:19, 5:22, 6:11, 6:20, 6:23, 7:5, 7:7, 7:8, 7:14, 7:24, 8:1, 9:10, 9:17, 10:21, 11:12, 11:14, 11:18, 12:25, 13:18, 14:18, 15:6, 15:12, 15:14, 15:23, 16:4, 16:7, 16:9, 16:11, 16:16, 17:6, 17:8, 17:11, 17:25, 18:22, 18:25, 19:10, 20:11, 20:17, 21:2, 21:6, 21:7, 21:18, 21:22, 22:18, 22:22, 23:13, 23:19, 24:2, 24:11, 24:21, 24:24, 25:1, 25:11, 27:21, 28:12, 29:6, 32:1, 32:4, 32:22, 32:25, 33:2, 33:6, 34:8, 36:11, 37:6, 37:11, 37:22, 38:12, 38:16, 39:4, 39:15, 39:21, 39:25, 40:14, 41:6, 41:12, 41:14, 41:20, 41:25, 42:11, 42:21, 43:13, 43:18, 44:14, 45:13, 45:15, 47:17, 48:18, 48:23, 50:2, 50:18, 50:21, 50:24, 51:3, 51:9, 51:21, 53:10, 53:13, 55:6, 55:10, 55:19, 55:24, 56:10, 56:14, 56:19, 57:6, 57:8, 57:10, 57:11, 57:21, 58:20, 59:15, 59:18, 60:8, 60:14
multiple [3] - 5:5, 5:6, 36:18
musing [1] - 18:19

**N**

name [3] - 38:3, 38:6, 53:7
namely [1] - 30:14
narrative [1] - 38:9
nature [1] - 25:16
necessarily [4] -

11:10, 17:2, 43:1, 43:2
necessary [1] - 36:10
need [6] - 12:6, 17:22, 31:7, 33:25, 51:21, 60:6
needed [1] - 19:8
needs [4] - 10:14, 50:9, 58:22, 59:4
negative [1] - 3:23
neglected [1] - 37:14
never [18] - 5:23, 6:8, 6:12, 12:2, 13:2, 20:6, 28:10, 44:3, 44:4, 47:9, 47:20, 52:20, 53:17, 53:21, 54:13, 54:14
new [4] - 14:13, 15:2, 27:16, 41:22
next [2] - 9:14, 31:19
next-to-the-last [1] - 31:19
Ninth [27] - 6:20, 8:10, 8:16, 11:22, 13:10, 13:16, 13:25, 15:7, 15:16, 16:1, 16:8, 16:15, 16:17, 16:21, 22:25, 26:10, 26:12, 30:7, 41:25, 51:12, 52:24, 53:14, 54:6, 54:10, 59:2, 59:7, 59:9
nondisabled [1] - 49:6
nonwhite [1] - 24:14
note [1] - 28:24
noted [1] - 31:13
notes [3] - 10:4, 15:15, 31:3
nothing [8] - 12:1, 12:2, 12:3, 12:4, 32:15, 49:1, 54:20, 60:14
notice [1] - 36:22
notices [1] - 48:2
novel [1] - 53:18
nowhere [1] - 45:4
nuances [1] - 11:3
Number [2] - 3:6, 38:6
numeral [1] - 16:4
numerous [2] - 8:20, 29:9
nurse [1] - 37:13

**O**

o'clock [1] - 37:16
objections [2] - 19:6, 19:16
objective [8] - 10:22, 13:21, 17:1, 17:3,

objectively [11] - 9:22, 10:3, 10:23, 11:8, 11:9, 12:8, 12:9, 13:20, 18:22, 19:14, 58:25
observed [1] - 44:3
obtain [2] - 11:5, 27:12
obtaining [2] - 10:13, 45:22
obviously [10] - 4:19, 16:23, 19:24, 29:11, 33:7, 33:20, 35:9, 39:8, 48:24, 55:11
odd [2] - 12:16
OF [8] - 1:2, 1:7, 1:8, 1:13, 2:1, 61:1, 61:3, 61:4
offered [2] - 42:13
offering [1] - 36:15
OFFICE [1] - 1:7
Office [3] - 3:6, 26:19, 39:16
office [2] - 36:15, 39:16
officers [2] - 36:5
OFFICES [1] - 2:13
OFFICIAL [3] - 1:23, 61:1, 61:5
Official [1] - 61:20
officials [1] - 45:21
often [1] - 42:22
once [1] - 54:6
one [21] - 7:17, 9:4, 13:1, 13:9, 16:2, 18:16, 18:17, 28:9, 33:14, 33:16, 34:25, 37:5, 37:23, 44:19, 44:25, 47:15, 53:20, 54:7, 56:24, 57:22, 59:22
ongoing [3] - 35:1, 52:3, 52:7
oOo [1] - 60:19
operating [1] - 57:11
opinion [3] - 51:12, 52:24, 55:12
opportunities [1] - 35:12
opportunity [1] - 31:17
opposing [2] - 45:17, 52:17
opposition [9] - 5:5, 13:9, 15:8, 19:2, 20:1, 29:15, 37:25, 41:8, 42:2
order [4] - 24:17,

25:17, 42:6, 60:3
**ordered** [1] - 25:20
**organically** [1] - 4:12
**otherwise** [2] - 27:12, 27:23
**ought** [1] - 43:4
**outcome** [2] - 52:1, 52:13
**outlined** [1] - 43:24
**outright** [1] - 19:17
**outs** [1] - 10:24
**overbreadth** [2] - 12:15, 12:20
**overbroad** [1] - 31:8
**own** [7] - 8:14, 20:3, 20:6, 33:17, 33:21, 44:15
**owners** [2] - 44:6, 46:15

## P

**page** [18] - 5:5, 10:4, 10:7, 10:9, 11:25, 13:11, 15:10, 15:20, 15:25, 22:5, 23:20, 23:21, 29:16, 29:17, 38:1, 38:6, 61:11
**pages** [1] - 31:5
**paper** [1] - 36:9
**papers** [16] - 9:5, 14:20, 15:10, 15:19, 15:20, 15:23, 16:13, 18:7, 18:11, 25:12, 36:21, 38:1, 40:11, 44:11, 45:1, 45:17
**paperwork** [1] - 36:12
**paragraph** [13] - 23:23, 24:5, 24:6, 30:15, 30:21, 30:22, 30:25, 53:25
**paraphrasing** [2] - 31:20, 31:22
**paraplegic** [1] - 36:7
**parking** [3] - 6:4, 7:6, 54:15
**part** [7] - 14:16, 28:8, 32:9, 40:4, 42:18, 44:5, 49:24
**parte** [2] - 41:15, 41:18
**particular** [10] - 6:25, 8:13, 10:7, 24:5, 26:15, 31:3, 42:24, 45:12, 47:17, 48:19
**particularly** [7] - 4:22, 26:9, 29:25, 40:11, 44:11, 51:11, 58:9
**parties** [2] - 40:21, 57:24

**party** [2] - 42:2, 43:22
**past** [1] - 50:1
**patient** [2] - 37:14, 37:15
**pay** [2] - 44:7, 46:16
**Penal** [1] - 36:13
**penalty** [3] - 19:4, 19:22, 20:12
**pending** [4] - 26:5, 28:22, 29:4, 45:25
**people** [3] - 48:25, 49:6
**Perez** [1] - 45:17
**perhaps** [7] - 23:11, 26:1, 27:12, 29:18, 31:16, 45:23, 49:15
**perjury** [5] - 19:4, 19:22, 20:12, 44:25, 45:2
**permitted** [1] - 36:22
**permitting** [1] - 49:6
**person** [2] - 38:9, 49:4
**personal** [1] - 19:3
**perspective** [4] - 21:15, 48:20
**pertaining** [2] - 37:20, 56:13
**petition** [4] - 8:2, 14:8, 26:8, 30:15
**Pfister** [1] - 31:4
**phone** [1] - 20:20
**photograph** [4] - 6:1, 36:4, 54:1, 54:3
**photographs** [2] - 6:3, 20:2
**phrase** [1] - 22:22
**phrases** [1] - 26:22
**physically** [2] - 7:1, 7:3
**piece** [1] - 5:20
**place** [3] - 43:8, 44:13, 48:1
**plaintiff** [2] - 3:9, 54:6
**plaintiff's** [2] - 3:18, 3:23
**Plaintiffs** [1] - 1:5
**PLAINTIFFS** [1] - 2:3
**plaintiffs** [19] - 3:11, 18:5, 18:20, 23:5, 24:10, 25:9, 25:21, 26:15, 27:4, 27:10, 27:15, 38:19, 40:10, 42:23, 44:10, 57:24, 58:6, 58:10
**plaintiffs'** [2] - 35:21, 44:15
**play** [3] - 7:10, 56:6, 58:18
**pleadings** [1] - 29:23
**pleasant** [1] - 36:25

**plenty** [1] - 51:1
**plethora** [1] - 29:12
**podium** [1] - 4:13
**point** [28] - 6:18, 7:1, 9:9, 9:10, 9:18, 11:13, 11:15, 13:8, 19:15, 21:23, 25:14, 26:4, 30:10, 31:19, 32:19, 34:4, 35:20, 39:22, 43:5, 45:6, 45:9, 45:12, 46:2, 46:4, 48:21, 49:14, 52:16, 55:5
**pointed** [2] - 34:23, 35:7
**pointing** [3] - 6:8, 6:10, 18:23
**points** [8] - 4:17, 6:25, 8:6, 30:25, 33:12, 33:13, 50:13, 58:6
**poke** [2] - 4:4, 21:21
**police** [3] - 36:5, 37:4
**policy** [1] - 26:18
**politically** [1] - 26:1
**posed** [1] - 51:18
**posit** [1] - 27:4
**position** [9] - 5:15, 43:7, 43:16, 44:1, 44:2, 46:23, 47:23, 55:19, 59:22
**post** [1] - 51:19
**potential** [3] - 51:19, 51:24, 58:3
**power** [3] - 30:5, 30:6, 30:8
**precedent** [5] - 11:23, 22:25, 30:9, 31:10, 59:2
**precious** [1] - 31:9
**preliminary** [10] - 3:19, 9:1, 25:14, 25:16, 25:18, 28:14, 33:18, 33:20, 34:7, 56:9
**preparation** [1] - 60:1
**preparing** [1] - 4:16
**present** [4] - 3:11, 7:2, 7:3, 59:23
**presently** [1] - 29:4
**preside** [1] - 28:2
**presiding** [1] - 8:25
**press** [15] - 18:12, 18:13, 18:15, 25:21, 25:25, 38:22, 39:2, 39:4, 39:10, 39:12, 39:18, 39:23, 40:2, 42:13
**pressure** [2] - 44:6, 46:15
**pretty** [2] - 7:13, 13:22

**prevail** [1] - 7:17
**prevails** [1] - 28:24
**prevented** [1] - 54:15
**preventing** [1] - 9:7
**primary** [1] - 4:18
**principles** [1] - 26:17
**problem** [2] - 6:13, 52:12
**procedural** [1] - 55:13
**proceeding** [5] - 35:8, 35:13, 49:11, 50:5, 53:19
**Proceedings** [1] - 60:18
**proceedings** [5] - 35:1, 35:5, 35:9, 61:10
**PROCEEDINGS** [1] - 1:13
**process** [4] - 39:12, 40:23, 43:8, 48:15
**procuring** [1] - 36:14
**Professions** [2] - 36:17, 43:21
**prohibits** [2] - 36:17, 43:21
**proper** [2] - 31:11, 52:22
**properly** [2] - 9:24, 31:21
**proposition** [2] - 13:12, 17:10
**prosecute** [3] - 5:16, 25:9, 43:17
**prosecuted** [1] - 24:14
**prosecuting** [3] - 9:11, 9:19, 17:23
**prosecution** [66] - 4:21, 4:25, 7:12, 7:16, 7:18, 7:22, 9:22, 10:11, 10:19, 11:5, 11:7, 13:12, 14:1, 14:24, 16:20, 16:23, 18:6, 20:5, 20:8, 20:9, 20:10, 20:16, 20:25, 21:10, 21:16, 23:2, 23:7, 23:15, 24:18, 25:12, 25:13, 25:17, 25:19, 27:7, 27:8, 27:9, 28:25, 29:22, 29:25, 30:1, 30:18, 31:23, 31:25, 34:17, 35:1, 35:22, 40:5, 40:7, 40:12, 43:2, 43:3, 44:9, 44:14, 49:17, 51:14, 53:18, 54:12, 54:21, 56:13, 58:1, 58:2, 58:4, 58:16, 58:19, 59:23

**prosecution's** [7] - 14:5, 22:23, 24:3, 34:10, 43:1, 46:6, 48:20
**prosecutions** [4] - 31:7, 45:21, 46:1, 46:4
**prosecutor** [12] - 17:3, 18:3, 18:20, 37:2, 40:21, 42:12, 42:15, 42:18, 43:18, 46:22, 46:23, 47:4
**prosecutorial** [1] - 18:1
**protected** [3] - 14:2, 14:4, 51:15
**proven** [1] - 45:20
**provide** [1] - 21:10
**provided** [8] - 19:21, 21:12, 26:16, 38:3, 40:11, 40:15, 40:16, 56:21
**providing** [3] - 13:20, 38:10, 60:10
**provision** [1] - 24:8
**provisions** [4] - 8:3, 23:21, 24:4, 25:4
**proximity** [1] - 20:21
**prudence** [2] - 8:10, 26:9
**public** [7] - 25:25, 36:15, 38:24, 39:1, 39:11, 39:16, 56:2
**pulled** [1] - 39:6
**pulling** [1] - 7:16
**punishing** [1] - 9:7
**purely** [1] - 45:16
**purports** [1] - 19:3
**purposes** [1] - 51:22
**pursuant** [3] - 33:19, 36:13, 61:8
**pursue** [4] - 26:16, 46:18, 48:25, 49:19
**pursued** [1] - 35:8
**pursuing** [3] - 42:12, 49:7, 49:15
**pushing** [1] - 35:18
**put** [4] - 7:22, 31:11, 48:14, 56:24

## Q

**questions** [7] - 4:9, 4:11, 4:21, 31:16, 42:9, 44:17, 44:18
**quickly** [2] - 7:12, 7:13
**quite** [1] - 5:21
**quote** [4] - 10:9, 32:9, 45:18, 45:19
**quoting** [1] - 5:4

## R

**raise** [2] - 35:13, 50:6
**raised** [4] - 28:16, 31:24, 33:10, 49:12
**raises** [1] - 49:14
**raising** [1] - 31:23
**randomly** [1] - 47:11
**rather** [2] - 36:7, 42:17
**read** [1] - 41:7
**reading** [1] - 38:8
**really** [6] - 28:20, 34:1, 44:12, 46:24, 47:8, 59:25
**REALTIME** [1] - 61:5
**reason** [10] - 13:4, 15:15, 47:10, 55:15, 55:20, 56:5, 56:22, 58:22, 59:3, 59:4
**reasonable** [12] - 9:22, 10:4, 10:12, 12:8, 13:21, 17:12, 17:13, 17:17, 17:18, 18:2, 19:14, 58:25
**reasoning** [1] - 26:6
**reasons** [1] - 58:11
**rebuttal** [2] - 41:22, 50:22
**rebutted** [1] - 52:21
**rebutting** [1] - 42:1
**receive** [1] - 3:20
**recently** [2] - 21:10, 40:17
**recognize** [2] - 27:23, 55:13
**record** [7] - 16:10, 19:20, 39:20, 39:21, 51:2, 52:20, 53:3
**Reddy** [2] - 3:12, 60:7
**REDDY** [1] - 2:8
**redress** [1] - 14:8
**reference** [3] - 15:25, 25:5, 44:25
**referenced** [1] - 18:24
**referred** [1] - 26:13
**referring** [2] - 20:18, 24:1
**refresh** [1] - 12:11
**refusing** [2] - 17:21
**regarded** [1] - 28:10
**regulations** [1] - 61:12
**relate** [1] - 60:4
**relates** [4] - 4:23, 5:11, 12:7, 34:14
**relating** [2] - 28:3, 58:21
**release** [14] - 18:12, 18:13, 18:15, 25:21, 25:25, 38:22, 39:2, 39:4, 39:13, 39:18,

39:23, 40:2, 42:13
**released** [3] - 40:17, 40:20, 41:1
**releases** [1] - 39:10
**relevant** [2] - 14:25, 17:19
**relief** [13] - 24:1, 24:2, 25:3, 25:5, 26:23, 30:13, 45:25, 56:10, 56:12, 57:7, 57:14, 57:16
**remedies** [20] - 23:9, 24:9, 24:12, 24:23, 25:2, 27:11, 27:19, 27:22, 29:2, 29:4, 46:8, 49:12, 50:4, 50:10, 51:20, 51:24, 56:7, 56:8, 58:3
**remedy** [9] - 8:24, 8:25, 23:13, 33:19, 35:10, 56:10, 56:14, 57:7, 57:12
**remember** [1] - 44:20
**reminded** [1] - 15:6
**rendering** [1] - 56:4
**repeatedly** [1] - 26:13
**reply** [22] - 5:25, 14:20, 15:10, 15:19, 15:20, 19:25, 40:11, 40:16, 41:5, 41:7, 41:11, 41:15, 41:22, 42:3, 42:5, 44:11, 44:24, 45:1, 45:6, 53:23, 60:5
**report** [3] - 38:1, 38:2, 38:10
**reported** [1] - 61:10
**Reporter** [1] - 61:20
**REPORTER** [1] - 1:23, 61:1, 61:6
**REPORTER'S** [1] - 1:13
**represent** [1] - 37:8
**represented** [1] - 48:7
**request** [2] - 41:18, 60:5
**requested** [1] - 22:21
**required** [2] - 19:14, 40:22
**requirement** [4] - 13:21, 18:2, 32:10, 36:23
**requirements** [3] - 6:4, 11:3, 13:14
**requires** [2] - 9:22, 31:11
**res** [3] - 27:25, 28:6, 49:21
**resolution** [2] - 50:1, 51:19

**resolve** [2] - 34:12, 50:11
**resolved** [2] - 46:19, 59:21
**respect** [7] - 30:7, 35:11, 39:18, 45:2, 47:6, 47:23, 52:12
**respectfully** [1] - 29:19
**respond** [3] - 32:20, 33:4, 59:12
**response** [1] - 38:20
**rest** [3] - 36:1, 38:9, 60:16
**restrain** [1] - 28:2
**restrained** [2] - 26:5, 26:20
**result** [6] - 13:21, 29:24, 40:4, 49:21, 58:3, 58:16
**results** [2] - 14:9, 27:8
**retaliation** [14] - 8:3, 16:24, 23:14, 23:16, 23:21, 24:4, 24:7, 25:4, 26:22, 28:5, 28:22, 30:18, 30:24, 55:22
**rethought** [1] - 40:12
**retract** [1] - 15:20
**return** [1] - 42:10
**reviewed** [1] - 54:1
**revise** [1] - 30:5
**rewind** [1] - 52:9
**rights** [13] - 14:2, 14:4, 24:13, 26:14, 29:2, 29:3, 31:9, 51:15, 51:24, 52:4, 52:7, 52:8, 52:15
**ripe** [1] - 28:22
**rise** [2] - 34:2, 37:1
**Riverside** [10] - 2:14, 3:7, 5:14, 17:3, 32:15, 37:12, 37:17, 38:2, 39:9, 48:1
**RIVERSIDE** [1] - 1:8
**Riverside/District** [1] - 3:15
**road** [3] - 50:11, 52:2, 58:3
**robust** [1] - 60:1
**Roman** [1] - 16:4
**room** [2] - 11:19, 11:23
**ROOM** [1] - 1:24
**Ross** [1] - 3:6
**ROSS** [1] - 1:4
**rule** [2] - 14:17, 28:16
**ruled** [1] - 19:7
**Rules** [1] - 41:15
**ruling** [4] - 25:15,

27:24, 28:5, 49:22
**rulings** [3] - 8:14, 21:5, 21:9

## S

**S-y-n-d-i-c-a-l-i-s-m** [1] - 12:13
**SANTA** [3] - 1:15, 1:24, 3:1
**Santa** [2] - 2:6, 2:10
**saw** [2] - 41:24, 47:9
**scenario** [2] - 53:16, 53:17
**scheme** [1] - 44:6
**scrutinized** [1] - 31:7
**search** [11] - 18:9, 20:7, 20:11, 20:18, 21:11, 36:3, 36:6, 37:4, 37:20, 38:21, 42:14
**searching** [1] - 36:25
**Second** [5] - 15:13, 15:14, 15:17, 15:18, 16:12
**second** [4] - 6:12, 6:13, 16:2, 28:8
**secondary** [1] - 30:3
**section** [1] - 24:14
**Section** [6] - 23:10, 27:12, 51:16, 52:2, 57:18, 61:8
**see** [5] - 15:16, 21:22, 27:17, 39:9, 47:22
**seek** [2] - 49:17, 56:7
**seeking** [3] - 25:16, 27:2, 56:8
**segues** [1] - 52:5
**send** [1] - 19:18
**sense** [3] - 18:17, 34:6, 37:9
**separate** [1] - 33:17
**serve** [2] - 36:6
**services** [2] - 6:16, 6:17
**set** [6] - 13:6, 20:25, 23:20, 30:15, 30:20, 40:8
**sets** [1] - 13:5
**several** [1] - 36:14
**shop** [1] - 44:13
**short** [1] - 58:20
**show** [2] - 14:20, 44:11
**showed** [2] - 37:17, 54:3
**showing** [2] - 20:4, 20:20
**shown** [1] - 45:24
**shows** [1] - 53:3

**shy** [1] - 4:6
**sic** [1] - 36:18
**sign** [1] - 47:13
**signed** [2] - 20:11, 39:6
**significant** [2] - 13:24, 21:23
**similar** [2] - 26:6, 26:14
**simply** [2] - 17:4, 43:15
**single** [2] - 39:8, 39:9
**singular** [1] - 34:14
**sit** [1] - 24:13
**site** [1] - 10:8
**sites** [1] - 6:9
**sitting** [1] - 32:14
**six** [1] - 30:25
**slightly** [1] - 22:23
**small** [2] - 44:6, 46:15
**SMITH** [40] - 2:13, 2:13, 3:14, 3:17, 7:7, 21:6, 32:25, 33:2, 33:6, 34:8, 36:11, 37:6, 37:11, 37:22, 38:12, 38:16, 39:4, 39:15, 39:21, 39:25, 40:14, 41:6, 42:11, 42:21, 43:13, 43:18, 44:14, 45:13, 45:15, 47:17, 48:18, 48:23, 50:2, 50:18, 50:21, 57:6, 57:10, 59:15, 59:18, 60:14
**Smith** [11] - 3:14, 3:16, 32:21, 32:24, 42:8, 50:19, 51:18, 53:9, 57:3, 59:12, 60:13
**so-called** [1] - 50:15
**someone** [1] - 36:25
**soon** [2] - 14:11, 14:17
**sorry** [4] - 15:9, 42:8, 48:22, 59:18
**sought** [3] - 33:19, 35:10, 57:12
**sounds** [2] - 7:11, 7:19
**SPAAN** [3] - 1:23, 61:5, 61:19
**Spaan** [1] - 61:20
**space** [1] - 54:2
**specific** [2] - 19:18, 53:6
**specifically** [11] - 24:7, 25:3, 25:5, 26:9, 31:3, 32:6, 44:18, 52:19, 52:25, 53:22, 56:12
**spots** [1] - 48:5

**staff** [1] - 60:15
**stage** [2] - 25:18, 55:11
**stand** [2] - 28:20, 59:19
**standard** [13] - 10:14, 10:22, 10:23, 13:6, 17:1, 17:18, 17:23, 18:4, 35:4, 42:17, 42:18, 45:17
**standards** [1] - 48:10
**standing** [44] - 4:23, 4:25, 5:2, 5:4, 5:8, 5:9, 5:15, 5:16, 5:23, 8:11, 8:17, 8:21, 9:23, 11:3, 12:1, 12:5, 21:25, 25:23, 28:14, 29:10, 29:23, 30:7, 32:5, 32:6, 32:17, 34:17, 35:21, 42:14, 42:20, 42:24, 43:6, 43:12, 43:17, 44:1, 47:16, 47:18, 48:18, 53:17, 54:17, 59:6
**standpoint** [1] - 46:20
**stands** [2] - 17:9, 45:11
**start** [3] - 4:10, 33:7
**starts** [2] - 10:8, 29:16
**State** [5] - 9:6, 9:11, 9:18, 25:23, 25:24
**STATE** [1] - 61:4
**state** [22] - 3:8, 8:24, 23:2, 24:18, 29:1, 29:8, 29:25, 31:24, 35:2, 35:6, 35:13, 43:9, 45:21, 45:25, 46:14, 46:17, 49:11, 50:5, 58:19, 59:16, 59:20, 59:21
**state's** [4] - 12:13, 12:19, 29:15, 29:17
**State's** [1] - 23:15
**statement** [3] - 7:2, 19:22, 45:3
**statements** [7] - 5:18, 6:6, 9:19, 19:23, 29:22, 58:7, 58:11
**states** [2] - 44:16, 56:1
**STATES** [1] - 1:1
**States** [3] - 61:6, 61:8, 61:13
**status** [6] - 20:24, 21:1, 40:6, 40:13, 40:14, 55:13
**statute** [25] - 5:8, 8:5, 9:8, 9:12, 9:15, 14:5, 22:24, 23:16, 25:4, 26:18, 26:24, 27:1,

28:5, 30:3, 30:6, 30:19, 49:2, 55:22, 55:24, 56:1, 56:4, 56:11, 57:14, 57:17, 59:6
**statutes** [1] - 26:14
**statutory** [1] - 25:2
**stay** [2] - 25:12, 25:19
**stenographically** [1] - 61:10
**step** [2] - 43:8, 56:24
**stick** [4] - 19:8, 54:24, 55:1, 55:3
**sticks** [1] - 19:10
**still** [6] - 23:9, 27:10, 27:12, 34:6, 40:23, 52:17
**stipulate** [1] - 28:17
**stop** [3] - 7:22, 25:10, 52:7
**straight** [1] - 35:25
**street** [1] - 38:25
**Street** [1] - 2:14
**STREET** [1] - 1:24
**subject** [1] - 32:11
**subjective** [7] - 10:22, 11:4, 17:18, 17:23, 17:25, 18:7, 42:17
**subjectively** [2] - 18:2, 18:22
**submission** [1] - 60:3
**submit** [2] - 19:16, 29:19
**submitted** [8] - 14:10, 14:11, 36:12, 43:25, 44:10, 57:24, 57:25, 58:6
**subpoena** [1] - 36:6
**subsequent** [1] - 49:22
**substance** [2] - 18:17, 39:3
**substantial** [2] - 29:20, 31:9
**success** [1] - 58:23
**successful** [1] - 58:17
**sue** [4] - 5:4, 54:7, 54:17, 56:1
**sufficient** [2] - 9:6, 13:20
**suit** [1] - 54:3
**summary** [2] - 30:22, 38:8
**supplemental** [3] - 38:1, 38:2, 38:8
**support** [1] - 53:17
**suppose** [3] - 19:11, 46:18, 49:14
**Supreme** [8] - 12:17, 16:18, 17:13, 17:14,

26:13, 31:3, 31:6, 31:10
**sur** [9] - 41:5, 41:7, 41:11, 41:15, 42:3, 42:5, 44:24, 45:6, 60:5
**sur-reply** [9] - 41:5, 41:7, 41:11, 41:15, 42:3, 42:5, 44:24, 45:6, 60:5
**surrounded** [1] - 37:17
**Sus** [1] - 38:6
**Suspect** [2] - 38:5, 38:6
**SWAT** [3] - 36:4, 36:5, 37:16
**SWAT-like** [2] - 36:4, 36:5
**sweep** [1] - 31:8
**Syndicalism** [1] - 12:13

---

# T

**Table** [1] - 15:20
**tactics** [1] - 36:6
**team** [1] - 37:16
**technically** [1] - 57:12
**Tempe** [1] - 51:13
**tentative** [44] - 3:20, 3:24, 3:25, 4:1, 4:16, 4:18, 4:19, 10:9, 11:18, 11:25, 12:1, 13:12, 13:19, 15:9, 15:10, 15:17, 19:8, 19:9, 19:11, 19:12, 22:2, 22:5, 27:5, 30:10, 30:11, 31:1, 31:12, 31:13, 33:3, 33:8, 33:9, 33:23, 33:25, 34:5, 34:24, 35:4, 35:7, 35:20, 43:6, 43:9, 54:24, 55:1, 55:3, 60:10
**terms** [5] - 35:9, 36:12, 39:2, 40:23, 45:1
**tester** [4] - 26:11, 47:16, 47:18, 53:8
**testers** [2] - 26:13, 53:15
**text** [2] - 19:18
**texting** [3] - 45:3, 45:7, 45:8
**THE** [115] - 1:7, 3:5, 3:13, 3:16, 3:18, 3:22, 4:14, 5:12, 5:20, 6:5, 6:18, 6:22, 6:24, 7:10, 7:15,

7:25, 9:3, 9:14, 10:16, 11:9, 11:13, 11:16, 12:10, 13:16, 14:16, 15:5, 15:11, 15:13, 15:18, 16:2, 16:5, 16:8, 16:14, 16:25, 17:7, 17:9, 17:24, 18:5, 18:23, 19:5, 20:8, 20:13, 20:24, 21:14, 21:20, 22:14, 22:19, 23:4, 23:17, 23:25, 24:9, 24:19, 24:22, 24:25, 25:6, 27:3, 28:9, 29:5, 31:18, 32:3, 32:19, 32:23, 33:1, 33:3, 34:4, 35:18, 37:3, 37:9, 37:19, 37:23, 38:14, 38:18, 39:12, 39:19, 39:24, 40:6, 41:4, 41:7, 41:13, 41:17, 41:24, 42:4, 42:19, 42:22, 43:15, 44:9, 45:11, 45:14, 47:15, 47:25, 48:21, 49:24, 50:15, 50:19, 50:22, 50:25, 51:8, 51:17, 53:9, 53:11, 54:23, 55:8, 55:17, 55:23, 56:6, 56:12, 56:16, 57:2, 57:15, 57:22, 59:11, 59:17, 59:25, 60:12, 60:16
**themselves** [2] - 44:8, 46:12
**theory** [12] - 6:13, 6:14, 8:5, 8:6, 10:20, 14:14, 17:5, 18:5, 21:25, 22:24, 43:1
**therefore** [3] - 9:25, 34:19, 42:16
**thereto** [1] - 4:20
**they've** [1] - 25:23
**thinking** [1] - 58:13
**thinks** [2] - 10:25, 48:2
**third** [11] - 24:6, 24:10, 25:7, 25:20, 30:19, 30:20, 55:21, 56:7, 56:16, 56:20, 57:13
**thirds** [1] - 38:5
**thorough** [1] - 60:1
**three** [10] - 5:2, 5:17, 5:18, 6:8, 7:3, 12:16, 42:25, 43:17, 44:19, 52:9
**three-judge** [1] - 12:16
**threshold** [3] - 8:18, 29:10, 32:7

**throughout** [1] - 11:18
**tie** [1] - 32:17
**ties** [1] - 5:10
**Tim** [1] - 19:2
**Timothy** [1] - 44:24
**Title** [1] - 61:8
**today** [3] - 60:2, 60:6, 60:10
**tone** [2] - 18:17, 39:3
**took** [2] - 37:18, 41:18
**top** [1] - 29:16
**touched** [1] - 32:4
**tower** [1] - 20:20
**Toys** [1] - 41:25
**transcript** [5] - 19:21, 40:25, 45:5, 61:9, 61:11
**Transcript** [1] - 1:5
**TRANSCRIPT** [1] - 1:13
**transparent** [1] - 58:13
**treat** [1] - 37:14
**trial** [2] - 24:17, 46:5
**tried** [1] - 24:13
**triggers** [2] - 11:10, 18:15
**troubling** [1] - 36:1
**true** [5] - 5:17, 6:7, 27:10, 27:20, 61:9
**truly** [3] - 4:1, 25:13, 58:24
**truth** [1] - 4:7
**try** [2] - 15:1, 58:13
**trying** [1] - 12:10
**turn** [3] - 21:4, 36:22, 41:8
**two** [11] - 6:11, 6:25, 8:4, 13:22, 24:19, 27:21, 29:13, 33:13, 38:5, 45:8, 48:10
**two-thirds** [1] - 38:5
**type** [1] - 9:12
**typical** [3] - 18:16, 37:20, 38:23
**typically** [1] - 37:3

---

# U

**U.S** [11] - 1:3, 16:17, 17:13, 17:14, 23:2, 26:13, 29:20, 31:3, 31:4, 31:6, 31:10
**U.S.C** [1] - 57:18
**ultimate** [1] - 50:10
**ultimately** [7] - 12:8, 24:15, 25:6, 25:16, 28:16, 37:15, 46:7
**unchanging** [1] - 32:9
**unclear** [1] - 38:18

**under** [24] - 5:8, 6:21,
8:4, 8:6, 8:11, 9:16,
9:21, 10:25, 11:22,
11:24, 13:3, 19:4,
19:22, 20:12, 24:10,
27:11, 41:15, 49:16,
52:23, 54:16, 56:10,
56:22, 57:13, 60:3
**underlying** [16] - 4:25,
5:2, 12:12, 12:18,
14:3, 19:13, 29:18,
30:12, 31:11, 32:12,
34:2, 34:11, 37:21,
46:11, 47:5, 50:5
**undermined** [1] - 20:6
**undermines** [1] -
22:24
**understood** [2] -
35:22, 51:8
**undertaken** [1] - 45:21
**undoubtedly** [1] -
54:5
**unfortunately** [1] -
52:10
**uninformed** [1] - 11:2
**UNITED** [1] - 1:1
**United** [3] - 61:6, 61:8,
61:13
**unlawful** [2] - 26:21,
26:24
**unreasonable** [4] -
10:23, 11:8, 11:9,
12:9
**Unruh** [5] - 9:12, 9:15,
9:20, 29:17, 30:3
**untypical** [1] - 37:6
**unusual** [2] - 18:17,
26:1
**unverified** [1] - 29:23
**up** [9] - 5:12, 9:17,
22:13, 24:16, 37:17,
46:25, 47:13, 47:15,
50:9

**V**

**vagueness** [2] - 12:14,
12:19
**valid** [5] - 10:13,
13:22, 33:13, 45:22,
58:25
**various** [1] - 39:10
**verbatim** [1] - 39:5
**versed** [1] - 59:8
**versus** [1] - 3:6
**vet** [2] - 44:13, 44:20
**view** [3] - 19:8, 25:22,
40:9
**views** [3] - 4:24,
17:23, 26:6

**vindicated** [1] - 23:7
**violate** [7] - 6:4, 25:13,
36:16, 43:20, 56:2,
59:2
**violated** [1] - 24:18
**violates** [5] - 23:15,
27:1, 30:9, 30:18
**violation** [8] - 6:4,
24:3, 24:7, 26:17,
47:10, 52:3, 55:21,
58:1
**violations** [9] - 5:3,
14:22, 30:14, 30:24,
36:13, 46:17, 47:22,
48:25, 52:8
**violent** [1] - 36:8
**visited** [3] - 14:21,
19:24
**visiting** [1] - 12:2
**void** [2] - 12:14, 12:19
**vs** [7] - 1:6, 10:8, 31:4,
45:18, 51:13, 54:5,
54:16

**W**

**walk** [2] - 46:25, 47:1
**wants** [1] - 28:17
**warrant** [13] - 18:9,
20:7, 20:12, 20:19,
21:11, 34:2, 36:3,
36:6, 37:4, 37:20,
38:21, 39:5, 39:6
**warrants** [2] - 36:3,
39:10
**waste** [2] - 4:2
**week** [1] - 40:19
**weekend** [1] - 60:17
**weeks** [1] - 40:19
**well-versed** [1] - 59:8
**WEST** [1] - 1:24
**whatnot** [1] - 33:22
**whatsoever** [1] -
25:24
**wheelchair** [2] -
46:25, 47:3
**whole** [2] - 9:20, 58:18
**wife** [1] - 37:13
**win** [3] - 8:7, 34:6
**witnessed** [1] - 47:9
**word** [2] - 17:14,
20:14
**words** [1] - 34:10
**works** [1] - 37:13
**World** [6] - 13:9,
13:24, 16:19, 16:21,
51:12, 52:5
**world** [1] - 27:4
**wrapped** [1] - 22:13
**write** [1] - 30:5

**writing** [2] - 12:21,
53:18
**wrongful** [1] - 58:4

**Y**

**years** [1] - 52:9
**Younger** [59] - 4:20,
5:11, 9:21, 10:6,
10:10, 10:17, 11:11,
12:7, 12:10, 12:17,
12:20, 12:23, 13:1,
13:5, 13:14, 13:17,
13:25, 15:8, 22:2,
22:13, 27:24, 28:10,
28:13, 32:17, 33:14,
34:1, 34:5, 34:6,
34:16, 34:20, 34:22,
35:4, 35:12, 35:19,
35:24, 43:7, 43:10,
46:20, 49:9, 49:10,
49:22, 49:24, 50:3,
51:6, 51:7, 51:9,
51:14, 51:23, 52:6,
55:4, 55:15, 55:17,
56:3, 56:18, 57:4,
57:18, 59:14

**UNITED  STATES  DISTRICT  COURT**